## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 16-31928 |
| | § | |
| **ENERGY XXI LTD,** *et al.*, | § | (Chapter 11) |
| | § | |
| | § | **Jointly Administered** |
| Debtors.[1] | § | **Objection Deadline: June 17, 2016** |
| | § | **at 4:00 p.m. (Central Time)** |

## MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE DISCLOSURE STATEMENT AND THE FORM AND MANNER OF SERVICE RELATED THERETO, (B) SETTING DATES FOR THE OBJECTION DEADLINE AND HEARING RELATING TO CONFIRMATION OF THE PLAN, AND (C) GRANTING RELATED RELIEF

A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE 23, 2016 AT 1:00 P.M. IN COURTROOM 400, 4TH FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.  IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT BY JUNE 17, 2016 AT 4:00 P.M. (CENTRAL TIME).  YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THIS PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is:  1021 Main Street, Suite 2626, Houston, Texas 77002.

US 4084140

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") file this *Motion for Entry of an Order (A) Approving the Disclosure Statement and the Form and Manner of Service Related Thereto, (B) Setting Dates for the Objection Deadline and Hearing Relating to Confirmation of the Plan, and (C) Granting Related Relief* (the "**Motion**"),[2] and respectfully state as follows:

## JURISDICTION AND PROCEDURAL BACKGROUND

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 502, 1107, 1125, and 1126, and 1128 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 3016-1, 4002-1, and 9013-1(i) of the Local Bankruptcy Rules for the Southern District of Texas (the "**Local Rules**").

## BACKGROUND

4.      On April 14, 2016, the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are

---

[2]      Capitalized terms used herein but not otherwise defined shall have the meanings set forth in the *Disclosure Statement for the Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "***Disclosure Statement***") or the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (as may be amended, modified, and supplemented, the "***Plan***"), as applicable.

US 4084140

being jointly administered pursuant to Bankruptcy Rule 1015(b).  As of the date hereof, no request for the appointment of a trustee or examiner has been made.

5.     On April 11, 2016, the Debtors and an ad hoc committee of noteholders entered into a Restructuring Support Agreement (as may be amended, supplemented, or modified from time to time in accordance with its terms, the "**Restructuring Support Agreement**").  The Restructuring Support Agreement is the Debtors' roadmap to a successful and comprehensive restructuring that will enable the Debtors to emerge from chapter 11 with a substantially deleveraged balance sheet and a stronger, revitalized enterprise.  The Restructuring Support Agreement, among other things, contains milestones for the Debtors to consummate their proposed restructuring.  The dates and deadlines set forth in this Motion are consistent with the milestones established by the Restructuring Support Agreement.

6.     On April 18, 2016, the Court entered an order authorizing the Debtors to retain and employ Epiq Bankruptcy Solutions, LLC (the "**Solicitation Agent**") to serve as their claims, noticing, solicitation, and balloting agent [Docket No. 92].

7.     On April 26, 2016, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed an official committee of unsecured creditors [Docket No. 142] (the "**Committee**").[3]

## RELIEF REQUESTED

8.     By this Motion, the Debtors seek entry of an order (the "**Order**"), substantially in the form attached hereto as **Exhibit A**:  (a) approving (i) the Disclosure Statement, (ii) the form and manner of Disclosure Statement Hearing Notice (as defined below), (iii) the solicitation

---

[3]     Additional information regarding the Debtors and these chapter 11 cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these chapter 11 cases, is set forth in the *Declaration of Bruce W. Busmire in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 30].

US 4084140

materials (the "**Solicitation Package**") to be distributed to holders of Claims that are classified as Impaired under the Plan: Class 5 (First Lien Claims), Class 6 (Second Lien Notes Claims), Class 7 (EGC Unsecured Notes Claims), Class 8 (EPL Unsecured Notes Claims), Class 9 (EXXI Convertible Notes Claims), Class 10 (Trade Claims), and Class 11 (General Unsecured Claims) (each a "**Voting Class**" and collectively, the "**Voting Classes**"), (iv) a notice of relevant dates and deadlines to be distributed to holders of Claims that are designated as Unimpaired under the Plan: Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), and Class 4 (EXXI Holdings Promissory Note Claims) (the "**Notice of Unimpaired Status**"), substantially in the form attached hereto as **Exhibit B**, (v) a notice of relevant dates and deadlines to be distributed to holders of Claims and Interests that are designated as fully Impaired under the Plan: Class 12 (Section 510(b) Claims) and Class 15 (EXXI Interests) (the "**Notice of Fully Impaired Status**" and, together with the Notice of Unimpaired Status, the "**Non-Voting Notices**"), substantially in the form attached hereto as **Exhibit C**, and (vi) a Confirmation Hearing Notice of relevant dates and deadlines, including the Confirmation Hearing Date (as defined below), to be distributed to holders of Claims designated as Impaired under the Plan and entitled to vote to accept or reject the Plan (the "**Confirmation Hearing Notice**"), substantially in the form attached hereto as **Exhibit D**; (b) setting, among other things, (i) a date by which the Solicitation Package and Non-Voting Notices must be mailed to holders of Claims against and Interests in the Debtors' estates; (ii) a date by which objections, if any, to confirmation of the Plan must be filed and served upon the Debtors, the Committee, and the U.S. Trustee (the "**Objection Deadline**"); (iii) a date by which acceptances or rejections of the Plan must be delivered to the Solicitation Agent (the "**Voting Deadline**"); (c) setting the Confirmation Hearing Date (as defined below); and (d) granting related relief.

4

## BASIS FOR RELIEF

**I.      The Debtors Have Provided Adequate Notice of the Disclosure Statement Hearing.**

9.      Bankruptcy Rule 3017(a) requires the Debtors to provide not less than 28 days' notice of the hearing on the Disclosure Statement (the "***Disclosure Statement Hearing***") to creditors and other parties in interest in accordance with Bankruptcy Rule 2002.  FED. R. BANKR. P. 3017(a); *see also* FED. R. BANKR. P. 2002(b) (requiring not less than 28 days' notice by mail of the time for filing objections and the hearing to consider the approval of a disclosure statement).

10.      Contemporaneously herewith, the Debtors will file and serve all known creditors and interested parties with a notice of the Disclosure Statement Hearing (the "***Disclosure Statement Hearing Notice***"), substantially in the form attached hereto as **<u>Exhibit E</u>**, which identifies (a) the date, time, and place of the Disclosure Statement Hearing, (b) the manner in which a copy of the Disclosure Statement (and exhibits thereto, including the Plan) can be obtained, and (c) the deadline and procedures for filing objections to the approval of the Disclosure Statement.

11.      Thus, all parties in interest will have had at least 28 days' notice of the Disclosure Statement Hearing and the deadline to object to the Disclosure Statement in compliance with Bankruptcy Rules 2002(b) and 3017(a).  Accordingly, the Debtors request that the Court approve the Disclosure Statement Hearing Notice as appropriate and in compliance with the requirements of the Bankruptcy Rules.

## II.   The Disclosure Statement Contains Adequate Information and Should be Approved.

### A.   The "Adequate Information" Standard Under Section 1125 of the Bankruptcy Code.

12.     Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and interests entitled to vote with "adequate information" regarding the proposed plan of reorganization. 11 U.S.C. § 1125(b).  In that regard, section 1125(a)(1) of the Bankruptcy Code provides:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

13.     Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders to vote to accept or reject a plan of reorganization.  *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994); *see also In re A.H. Robins, Co.*, 880 F.2d 694, 696-97 (4th Cir. 1989) (affirming approval of a disclosure statement based on a finding that the statement used "terms that almost anyone could understand"); *In re Ferguson*, 474 B.R. 466, 470-71 (Bankr. D.S.C. 2012) (noting that a disclosure statement should contain "such information as will enable [a hypothetical reasonable investor] to evaluate for themselves what impact the information might have on their claims and the outcome of the case, and to decide for themselves what course of action to take") (internal citations omitted).  A disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution."  *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

6

14.    The bankruptcy court has broad discretion in examining the adequacy of the information contained in a disclosure statement. *See Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history of § 1125 indicates that, in determining what constitutes 'adequate information' with respect to a particular disclosure statement, 'both the kind and form of information are left essentially to the judicial discretion of the court' and that 'the information required will necessarily be governed by the circumstances of the case.'") (internal citations omitted), *cert. denied*, 526 U.S. 1144 (1999); *A.H. Robins*, 880 F.2d at 696 ("The determination of what is adequate information is subjective and made on a case by case basis.  This determination is largely within the discretion of the bankruptcy court.") (quoting *Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988)); *see also In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("[W]hat constitutes adequate information in any particular situation is determined on a case-by-case basis . . . with the determination being largely within the discretion of the bankruptcy court"); *In re Construction Supervisions Serv., Inc.*, 2012 WL 4681414 at *2 (Bankr. E.D.N.C. Oct. 1, 2012) ("In determining the adequacy of information under § 1125(a)(1), the bankruptcy court reviews the information on a case by case basis.").  In summary, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.[4]

---

[4]    The bankruptcy court's broad discretion is intended to facilitate effective reorganizations of debtors in a wide range of businesses and in the various circumstances that accompany chapter 11 cases. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408-09 (1977).  As Congress observed, "[i]n reorganization cases, there is frequently great uncertainty.  Therefore, the need for flexibility is greatest." *Id.* at 409.

US 4084140

15.     Bankruptcy courts generally examine whether disclosure statements contain information such as:

a.      the circumstances that gave rise to the filing of the bankruptcy petition;

b.      the available assets and their value;

c.      the anticipated future of the debtor;

d.      the sources of the information provided in the disclosure statement;

e.      the condition and performance of the debtor while in chapter 11;

f.      the claims against the estate;

g.      a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

h.      the accounting and valuation methods used to produce the final information in the disclosure statement;

i.      the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, or officers of the debtor;

j.      a summary of the plan of reorganization;

k.      financial information that would be relevant to creditors' determinations of whether to accept or reject the plan;

l.      the risks being taken by the creditors and interest holders;

m.      the tax consequences of the plan; and

n.      the relationship of the debtor with its affiliates.

*See, e.g.*, *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (using a similar list); *see also In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996) (same).  Such lists are not meant to be exhaustive, nor must a debtor include all of the information approved as sufficient in any prior case.  Rather, courts are instructed to decide what information is appropriate in each case.  *See Id.* (using a similar list, but stating that "[d]isclosure of all factors is not necessary in every case."); *see also Phoenix Petroleum*, 278 B.R. at 393

8

(using a similar list, but cautioning that "no one list of categories will apply in every case"); *In re Dakota Rail, Inc.*, 104 B.R. 138, 142 (Bankr. D. Minn. 1989) (using a similar list of information described as "nonexclusive and nonexhaustive").

        **B.**        **The Disclosure Statement Contains Adequate Information.**

        16.        The Debtors respectfully submit that the Disclosure Statement (including any updates, supplements, amendments, or other modifications contemplated thereby or by the Plan) addresses each of the salient types of information identified above and will provide holders of Impaired Claims entitled to vote to accept or reject the Plan with adequate information to allow each such holder to make an informed judgment about the Plan.  Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information" including:

        a.        a summary of the Plan (Article V);

        b.        a summary of the classifications and treatment of all classes of Claims and Interests (Article V.B);

        c.        provisions governing distributions under the Plan (Article V.F);

        d.        a description of the Debtors' prepetition indebtedness (Article II.G.2);

        e.        the history of the Debtors' businesses, including the events leading to the commencement of these chapter 11 cases (Articles II.B and III);

        f.        a description of the Debtors' projected financial information (Exhibit F);

        g.        a description of the solicitation procedures (Article IX);

        h.        a description of the voting procedures (Article IX);

        i.        certain risk factors to consider that may affect the Plan (Article VIII);

        j.        a description of settlements in the Plan (Article V.H);

        k.        the means for implementation of the Plan (Article V.D);

        l.        certain federal  income tax law and securities law consequences of the Plan (Articles VII and VIII.D);

m.      the value of the Debtors' assets (Article II.A);

n.      the Debtors' future management (Article V.D.9); and

o.      the relationship of the Debtors (Exhibit C).

17.     Accordingly, the Debtors submit that the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and, therefore, should be approved.

## III.     Solicitation and Notice Materials.

### A.      Solicitation Packages.

18.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests entitled to vote for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization. Specifically, Bankruptcy Rule 3017(d) provides that:

> Upon approval of a disclosure statement—except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (1)      the plan or a court-approved summary of the plan;
>
> (2)      the disclosure statement approved by the court;
>
> (3)      notice of the time within which acceptances and rejections of the plan may be filed; and
>
> (4)      any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with [Bankruptcy] Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

US 4084140

FED. R. BANKR. P. 3017(d).

19.     The Debtors propose that the Solicitation Package distributed in these chapter 11 cases include:

a.     a cover letter (the "***Cover Letter***") describing the contents of the Solicitation Package, the contents of the enclosed CD-ROM, and instructions for obtaining printed copies of any materials provided on the CD-ROM at no charge;

b.     a CD-ROM containing (i) the Disclosure Statement (with the Plan and other exhibits attached thereto) and (ii) the Order (without exhibits);

c.     the Confirmation Hearing Notice;

d.     a Ballot (as defined below), together with a pre-addressed postage-paid envelope; and

e.     such other materials as the Court may direct.

20.     The Debtors propose to distribute the Solicitation Packages (other than the Ballots, the Confirmation Hearing Notice, and the Cover Letter, which will be provided in paper format) to holders of Claims in the Voting Classes in CD-ROM format at their discretion given the significant cost savings to the Debtors' estates and the reduced production time.

21.     The Debtors expect that they will be able to complete the distribution of the Solicitation Packages no later than the date that is five business days after the entry of the Order (the "***Solicitation Date***").

**B.     Notices of Non-Voting Status.**

22.     Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), and Class 4 (EXXI Holdings Promissory Note Claims) are designated under the Plan as Unimpaired (collectively, the "***Unimpaired Claimants***") and, therefore, are conclusively presumed to accept the Plan.  *See* 11 U.S.C. § 1126(f).

23.     Class 12 (Section 510(b) Claims) and Class 15 (EXXI Interests) will not receive any distribution under the Plan and, therefore, are deemed to reject the Plan (collectively, the

US 4084140

"***Fully Impaired Claimants***").  *See* 11 U.S.C. § 1126(g); *see also In re Zenith Elec. Corp.*, 241 B.R. 92, 99 (Bankr. D. Del. 1999) (a class that would receive nothing under the debtor's proposed plan did not have the right to vote, as it was conclusively presumed to have rejected the plan pursuant to section 1126(g) of the Bankruptcy Code).

### i.  Notice of Unimpaired Status.

24.  A debtor's plan and disclosure statement need not be served on all creditors; rather, a court may authorize the debtor to serve on unimpaired creditors a notice in lieu of the disclosure statement and plan.  FED. R. BANKR. P. 3017(d).  Pursuant to Bankruptcy Rule 3017(d), a court may authorize a debtor to serve upon unimpaired creditors a notice informing such creditors "that the class is designated in the plan as unimpaired" and that the plan or summary of the plan and disclosure statement may be obtained upon request from the debtor. *Id.*  Notice to unimpaired creditors, however, must provide information regarding the "time fixed for filing objections to" the plan and the date of the hearing on the confirmation of the plan.  *Id.*

25.  Requiring the Debtors to serve the Plan and Disclosure Statement, which are voluminous, upon the Unimpaired Claimants would cause the Debtors to incur unnecessary and excessive costs, including reproduction and postage costs.  Accordingly, the Debtors request authority under Bankruptcy Rule 3017(d) to serve, in lieu of the Plan and Disclosure Statement, a Notice of Unimpaired Status, substantially in the form as attached hereto as **Exhibit B**, to the Unimpaired Claimants.

26.  The Notice of Unimpaired Status will, among other things, (a) provide the Unimpaired Claimants with a brief explanation of the Plan, including (i) classifications of Claims against and Interests in the Debtors, (ii) distributions to be made on account of Allowed Claims and Interests, and (iii) the release, exculpation and injunctive provisions, (b) set forth the

US 4084140

Objection Deadline and the Confirmation Hearing Date, and (c) state the means by which Unimpaired Claimants may obtain a copy of the Plan and Disclosure Statement free of charge.

### ii.   Notice of Fully Impaired Status.

27.    The Fully Impaired Claimants are fully Impaired under the Plan and will not receive or retain any property on account of such Claims or Interests.  Under section 1126(g) of the Bankruptcy Code, such Fully Impaired Claimants are deemed to have rejected the Plan and are not entitled to vote on the Plan.  *See* 11 U.S.C. § 1126(g).  Under these circumstances, the Debtors submit that service of the Plan and Disclosure Statement upon such Fully Impaired Claimants would result in the incurrence of unnecessary costs and expenses.  Accordingly, the Debtors request authority under Bankruptcy Rule 3017(d), to serve, in lieu of the Plan and Disclosure Statement, a Notice of Fully Impaired Status, substantially in the form attached hereto as **__Exhibit C__**, to the Fully Impaired Claimants.

28.    The Notice of Fully Impaired Status will (a) provide the Fully Impaired Claimants with a brief explanation of the Plan, including (i) classifications of Claims against and Interests in the Debtors, (ii) distributions to be made on account of Allowed Claims and Interests, and (iii) the release, exculpation, and injunctive provisions, (b) set forth the Objection Deadline and the Confirmation Hearing Date, and (c) state the means by which the Fully Impaired Claimants may obtain a copy of the Plan and Disclosure Statement free of charge.

29.    The Debtors submit that distributing the Notice of Fully Impaired Status to the Fully Impaired Claimants satisfies the requirements of the Bankruptcy Code and Bankruptcy Rules.

US 4084140

## IV.    Approving Forms of Ballots.

30.    Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot to "creditors and equity security holders entitled to vote on the plan."  FED. R. BANKR. P. 3017(d). The Voting Classes are: Class 5 (First Lien Claims), Class 6 (Second Lien Notes Claims), Class 7 (EGC Unsecured Notes Claims), Class 8 (EPL Unsecured Notes Claims), Class 9 (EXXI Convertible Notes Claims), Class 10 (Trade Claims), and Class 11 (General Unsecured Claims). The Debtors propose to distribute to holders of Claims in the Voting Classes one or more ballots substantially in the form attached hereto as **Exhibits F-1** through **F-11** (collectively, the "*Ballots*"), as appropriate.

31.    The Ballots are based upon the appropriate Official Form but have been modified based on circumstances particular to these chapter 11 cases.  For instance:  (a) each Ballot advises creditors in bold print that creditors who (i) vote to accept the Plan or (ii) abstain or vote to reject the Plan and do not elect to opt out of the release provisions contained in Article VIII of the Plan shall be deemed to have unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Causes of Action except as otherwise specifically provided in the Plan; (b) each Ballot advises creditors that if no votes to accept or reject the Plan are received for a particular class that is entitled to vote on the Plan, such class shall be deemed to have voted to accept the Plan; and (c) each Ballot reflects that voters must vote all of their Claims in each class consistently to either accept or reject the Plan.

US 4084140

V.   **Establishing Procedures for Distributing Solicitation and Notice Materials, Voting on the Plan, and Tabulating Votes, Including Allowing and Estimating Certain Claims for Voting Purposes.**

A.   **Distributing Solicitation Packages.**

32.   For holders of Claims in the Voting Classes, the Debtors propose to distribute or cause to be distributed Solicitation Packages to: (a) all persons and entities in the Debtors' schedules of liabilities filed pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 (as modified before the Voting Record Date, the "*Schedules*") as holding liquidated, noncontingent, and undisputed Claims in the Voting Classes in an amount greater than zero dollars, excluding scheduled Claims that have been paid in full, superseded by filed Proofs of Claim, or disallowed or expunged before the Voting Record Date;[5] (b) all persons and entities that filed Proofs of Claim in the Voting Classes before the Voting Record Date, as reflected on the Claims register maintained by the Solicitation Agent, that allege dollar amounts greater than zero or that are contingent or unliquidated, but, in each case, only to the extent that the Claims have not been disallowed or expunged before the Voting Record Date; and (c) transferees and assignees of any creditors described in subsections (a) or (b) above, but only to the extent that the relevant transfer or assignment is properly noted on the Court's docket and is effective pursuant to Bankruptcy Rule 3001(e) as of the close of business on the Voting Record Date and whose Claims have not been disallowed or expunged before the Voting Record Date. If a Claim has been temporarily disallowed for voting purposes pursuant to an order of the Court as of the Voting Record Date, the holder of such Claim shall not be entitled to receive a Solicitation Package.

---

[5]   Bankruptcy Rule 3003(c)(2) provides in relevant part that "any creditor . . . whose claim or interest is not scheduled or scheduled as disputed, contingent or unliquidated . . . who fails to [timely file a Proof of Claim] shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."   Fed. R. Bankr. P. 3003(c)(2).

33.     To facilitate distribution of Solicitation Packages to holders of Claims in the Voting Classes, the Debtors request that the Court order the applicable administrative agents for the Claims in the applicable Voting Classes to provide the Solicitation Agent with a Voting Record Date electronic list of each lender participant, which list shall include each lender participant's name, mailing address with a contact person, and claim amount as of the Voting Record Date, as soon as practicably possible, but in any event no later than one business day following entry of the Order.

### i.     Beneficial Owners

34.     A beneficial owner holding any Secured notes under the Second Lien Indenture (the "*Second Lien Notes*"), EGC Unsecured Notes, EPL 8.25% Senior Notes, or EXXI 3.0% Senior Convertible Notes ("*Beneficial Owner*") as a record holder in its own name may vote on the Plan by completing and signing the applicable Ballot and returning it directly to the Solicitation Agent on or before the Voting Deadline using the self-addressed, postage-paid envelope included in the Solicitation Package.

### ii.     Nominees

35.     A nominee that on the Voting Record Date is the record holder of Second Lien Notes, EGC Unsecured Notes, EPL 8.25% Senior Notes, or EXXI 3.0% Senior Convertible Notes for a Beneficial Owner (a "*Voting Nominee*") shall obtain the vote of such Beneficial Owner of such Second Lien Notes, EGC Unsecured Notes, EPL 8.25% Senior Notes, or EXXI 3.0% Senior Convertible Notes consistent with customary practices for obtaining the votes of securities held in "street name," in one of the following two ways (as determined by the Voting Nominee):

a.      **Pre-Validated Ballots.** A Voting Nominee may pre-validate a Ballot by: (i) signing the applicable Ballot; (ii) indicating on the Ballot the name of the

Beneficial Owner, the account number, and amount of Second Lien Notes, EGC Unsecured Notes, EPL 8.25% Senior Notes, or EXXI 3.0% Senior Convertible Notes held by the Voting Nominee; and (iii) forwarding such Ballot, together with the Solicitation Package and other materials requested to be forwarded, to the Beneficial Owner for voting. The Beneficial Owner may then complete the information requested in the Ballot, review the certifications contained in the Ballot, and return the Ballot directly to the Solicitation Agent in the pre-addressed, postage-paid envelope included with the Solicitation Package so that it is received by the Solicitation Agent before the Voting Deadline. A list of the Beneficial Owners to whom "pre-validated" Ballots were delivered should be maintained by the Voting Nominee for inspection for at least one year from the Voting Deadline.

b.   **Master Ballots.** A Voting Nominee may obtain the votes of Beneficial Owners by forwarding to the Beneficial Owners the applicable unsigned Ballots, together with the Disclosure Statement, a return envelope provided by, and addressed to, the Voting Nominee, and any other materials requested to be forwarded.[6] Each such Beneficial Owner may then indicate its vote on the Ballot, complete the information requested in the Ballot, review the certifications contained in the Ballot, execute the Ballot, and return the Ballot to the Voting Nominee. After collecting the Ballots, the Voting Nominee shall, in turn, complete the applicable master Ballot ("***Master Ballot***") compiling the votes and other information from the Beneficial Owner's Ballot, execute the Master Ballot, and deliver the Master Ballot to the Solicitation Agent so that it is received by the Solicitation Agent before the Voting Deadline. The Voting Nominees should either forward returned Ballots to the Solicitation Agent (along with the Master Ballot) or retain such returned Ballots for inspection for at least one year from the Voting Deadline.

36.   No fees, commissions, or other remuneration will be payable to any Voting Nominee for soliciting votes on the Plan. The Debtors will, however, reimburse any Voting Nominee for customary mailing and handling expenses incurred by such Voting Nominee in forwarding the Solicitation Package and other materials to the Beneficial Owners held by such Voting Nominee.

37.   Service of the Solicitation Package and all applicable notices shall be, at the Debtors' discretion, by first class mail or overnight delivery, and all documents will be addressed to the party at the most recent address contained in the Debtors' books and records.

---

[6]   In accordance with its customary practice, the Solicitation Agent shall distribute copies of Master Ballots to the Voting Nominees after the Solicitation Packages have been forwarded to the Beneficial Owners.

US 4084140

### B.     Distributing Other Notice Materials

38.     The Debtors believe that it would be wasteful to distribute Solicitation Packages, Ballots, Non-Voting Notices, copies of the Disclosure Statement or Plan, or any other materials or notices (including any updates, supplements, amendments, or modifications thereto) to addresses to which an undeliverable Disclosure Statement Hearing Notice was distributed. Therefore, the Debtors seek to be excused, without any further order of the Court, from distributing Solicitation Packages, Non-Voting Notices, or any other similar materials to those entities listed at such addresses unless the Debtors are provided with accurate addresses for such entities before the date on which the Debtors begin distributing the relevant materials.

39.     The Debtors further anticipate that some of the Solicitation Packages, Ballots, Non-Voting Notices, copies of the Disclosure Statement or Plan, or any other similar materials or notices may be returned by the United States Postal Service as undeliverable.  Therefore, the Debtors request a determination by the Court that they need not re-mail Solicitation Packages, Ballots, Non-Voting Notices, copy of the Disclosure Statement or Plan, or any other similar materials or notices that were returned as undeliverable by the United States Postal Service unless the Debtors are provided with accurate addresses for such entities at least seven calendar days prior to the Voting Deadline.

40.     The Debtors propose that they should be required to send, by first class mail, the Confirmation Hearing Notice (but no Solicitation Packages, Ballots, Non-Voting Notices, copies of the Disclosure Statement or Plan, or any similar materials or notices) to (a) those persons who have formally appeared and requested service pursuant to Bankruptcy Rule 2002, (b) parties to executory contracts and unexpired leases that have not been assumed or rejected as of the Voting Record Date, who are not included in the Schedules (other than Schedule G) and who have not timely filed a Proof of Claim, (c) holders of Claims against and Interests in the Debtors that have

not been classified in the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code, and (d) all other parties included in the Debtors' creditor matrix that do not fall within any of the categories described above.

41.     The Debtors submit that they have shown good cause for implementing the proposed notice procedures set forth herein and that such notice procedures would satisfy the requirements of Bankruptcy Rule 3017(d) and all other applicable requirements.

### C.     Establishing the Voting Record Date.

42.     Bankruptcy Rule 3017(d) provides, in relevant part, that, for purposes of soliciting votes in connection with the confirmation of a plan of reorganization, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  FED. R. BANKR. P. 3017(d).  Additionally, Bankruptcy Rule 3018(a) provides, in relevant part, that "an equity security holder or creditor whose claim is based on a security of record shall not be entitled to accept or reject a plan unless the equity security holder or creditor is the holder of record of the security on the date the order approving the disclosure statement is entered or on another date fixed by the court, for cause, after notice and a hearing."  FED. R. BANKR. P. 3018(a).

43.     Accordingly, the Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish June 17, 2016 as the record date (the "***Voting Record Date***") for purposes of determining which creditors are entitled to vote on the Plan and which non-voting holders of Claims and Interests are entitled to receive certain informational materials.[7]

---

[7]     The establishment of a Voting Record Date is for voting purposes *only* and has no effect on who is entitled to receive distributions under the Plan.

US 4084140

**D.**     **Establishing the Voting Deadline.**

44.     Bankruptcy Rule 3017(c) provides that, in connection with or before approval of a disclosure statement, a court shall fix a time within which the holders of claims or equity security interests may accept or reject the relevant plan of reorganization.   FED. R. BANKR. P. 3017(c). The Debtors anticipate completing the solicitation period within approximately 28 calendar days after entry of the Order.   Based on such schedule, the Debtors propose that in order to be counted as a vote to accept or reject the Plan, any Ballot must be properly executed and completed and delivered to the Solicitation Agent no later than 5:00 p.m. (Central Time) on July 27, 2016 (the "*Voting Deadline*").

45.     Although the Debtors submit that such solicitation period is a sufficient period within which holders of Claims in the Voting Classes can make an informed decision to accept or reject the Plan, they also request authority to extend the Voting Deadline, if necessary, without further order of the Court, to a date that is no later than one business day before the Confirmation Hearing by publishing an announcement of such extension electronically on the Debtors' case information website (located at http://dm.epiq11.com/EXL) and filing such announcement on the Court's docket.

**E.**     **Establishing Procedures for Tabulating Votes.**

46.     Section 1126(c) of the Bankruptcy Code provides:

A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under such subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).  Further, Bankruptcy Rule 3018(a) provides that "the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."  Fed. R. Bankr. P. 3018(a).

#### i.    Ballot Tabulation.

47.    The Debtors respectfully request that the Court approve the voting and tabulation procedures described herein in accordance with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a).  Except to the extent provided otherwise in subsection (c) of this paragraph, each holder of a Claim in a Voting Class shall be entitled to vote the amount of its Claim as of the Voting Record Date.  The Debtors propose, solely for purposes of voting to accept or reject the Plan and not for purposes of allowance or distribution on account of a Claim and without prejudice to the rights of the Debtors in any other context, that each holder of a Claim in the Voting Classes be entitled to vote the liquidated, non-contingent, undisputed amount of such Claim as set forth in the Schedules (as may be amended from time to time) unless such holder has timely filed a Proof of Claim, in which event such holder would instead be entitled to vote the amount of such claim as set forth in such Proof of Claim.  The foregoing general procedure will be subject to the following:

a.    if a Claim is deemed "Allowed" pursuant to an agreement with the Debtors or an order of the Court, the Debtors propose that such Claim be Allowed for voting purposes in the "Allowed" amount set forth in such agreement or in the Court's order;

b.    if a Claim for which a Proof of Claim has been timely filed is wholly contingent or unliquidated (as determined on the face of the Claim or after reasonable review of supporting documentation by the Solicitation Agent) or filed for unknown or undetermined amounts, or if a Claim is based on pending litigation not subject to a judgment against any of the Debtors, and (i) no objection to it has been filed by the Voting Deadline and (ii) no order pursuant to Bankruptcy Rule 3018(a) temporarily allowing it for voting purposes in an amount greater than $1.00 has been entered by the Court, in each case before the Voting Deadline, the Debtors propose that such Claim be temporarily Allowed for voting purposes only, and

US 4084140

not for purposes of allowance or distribution, at $1.00, and the Ballot mailed to the holder of such Claim shall be marked as voting at $1.00;

c.   if the Debtors have filed an objection to a Claim by two calendar days prior to the Voting Deadline, the Debtors propose that such Claim be Disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection;

d.   if a Claim has been "Disallowed" by agreement of the holder of such Claim or order of the Court at any time before the Voting Deadline, the Debtors propose that such Claim be Disallowed for voting purposes;

e.   if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, the Debtors propose that such Claim be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only;

f.   if a Claim is listed in the Schedules as contingent, unliquidated or disputed, or undetermined in amount or for $0.00, and a Proof of Claim was not (i) filed by the applicable bar date for the filing of Proofs of Claim established by the Court or (ii) deemed timely filed by an order of the Court before the Voting Deadline, then, unless the Debtors have consented in writing or the holder of such Claim obtains an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes, the Debtors propose that such Claim be Disallowed for voting purposes and for purposes of allowance and distribution pursuant to Bankruptcy Rule 3003(c); *provided, however*, if the applicable Claims bar date has not expired prior to the Voting Record Date, a Claim listed in the Schedules as contingent, unliquidated or disputed, or undetermined in amount shall vote at $1.00;

g.   Claims filed for $0.00 are not entitled to vote;

h.   Claims filed in a currency other than U.S. dollars shall vote at $1.00;

i.   if a Claim is partially liquidated and partially unliquidated and (i) no objection to it has been filed by the Voting Deadline and (ii) no order pursuant to Bankruptcy Rule 3018(a) temporarily allowing it for voting purposes in an amount greater than $1.00 has been entered by the Court, in each case before the Voting Deadline, the Debtors propose that such Claim be Allowed for voting purposes only in the liquidated amount;

j.   if a Proof of Claim has been amended by a later-filed Proof of Claim, the later-filed amending claim will be entitled to vote to the extent consistent with the tabulation rules set forth in this paragraph 48, and the earlier filed Claim will not be entitled to vote;

k.   if no votes to accept or reject the Plan are received for a particular Voting Class, such Voting Class shall be deemed to have voted to accept the Plan;

US 4084140

l.      for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code and based on a reasonable review by the Solicitation Agent, separate Claims held by a single creditor in a particular class may be aggregated, in the Debtors' discretion, as if such creditor held one Claim against the Debtors in such class, and the votes related to such Claims may be treated by the Debtors as a single vote to accept or reject the Plan; and

m.      notwithstanding anything to the contrary contained herein, the Debtors propose that any creditor who has filed or purchased duplicate Claims within a particular Voting Class (whether against the same or multiple Debtors), be provided with only one Solicitation Package and one Ballot and be permitted to vote only a single Claim, regardless of whether the Debtors have objected to such duplicate Claims.

48.      If any creditor seeks to challenge the allowance or disallowance of its Claim for voting purposes, the Debtors request that the Court direct such creditor to serve on the Debtors and file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for purposes of voting to accept or reject the Plan on or before the 14th calendar day after the later of (a) the Solicitation Date and (b) the date of service of an objection, if any, to such Claim in accordance with the solicitation procedures, but in no event later than the Voting Deadline.  The Debtors further propose, in accordance with Bankruptcy Rule 3018(a), that as to any creditor filing such a motion, such creditor's Ballot not be counted unless temporarily Allowed by the Court for voting purposes, after notice and a hearing.

49.      The Debtors request that:  (a) whenever a creditor casts more than one Ballot voting the same Claim before the Voting Deadline, the last properly completed Ballot received before the Voting Deadline be deemed to reflect the voter's intent and supersede any prior Ballots; (b) a creditor with multiple Claims within a particular Voting Class must vote all such Claims within such Voting Class either to accept or reject the Plan and may not split its votes, and (c) a creditor with Claims in multiple Voting Classes based on the same underlying obligation (e.g., a primary claim and a guarantee claim) may not split its votes with respect to such Claims, and thus (i) no Ballot (other than a Master Ballot) that partially rejects and partially

23

accepts the Plan, (ii) no Ballot filed by a creditor with multiple Claims within a particular Voting Class that votes inconsistently with respect to such Claims, and (iii) no Ballot filed by a creditor with multiple Claims based on the same underlying obligation that votes inconsistently with respect to such Claims, in each case, will be counted.

50. So as to avoid uncertainty and inconsistent results, the Debtors propose that, without further order of the Court, Ballots in the following categories not be considered for any purpose in determining whether the Plan has been accepted or rejected:

a. Ballots (other than Master Ballots) that partially reject and partially accept the Plan;

b. any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim;

c. Ballots that fail to indicate an acceptance or rejection of the Plan or that indicate both acceptance and rejection of the Plan;

d. unsigned Ballots, Ballots not bearing an original signature, or Ballots that are illegible;

e. Ballots received after the Voting Deadline;

f. facsimile Ballots or Ballots submitted via email or other electronic transmission, unless the holder receives the consent of the Debtors to submit the holder's Ballot by facsimile, email, or other electronic transmission; and

g. inconsistent Ballots cast simultaneously by a holder of a Claim.

51. The Debtors further propose, without further order of the Court, that any holder of a Claim entitled to vote that has delivered a valid Ballot may withdraw such Ballot solely in accordance with Bankruptcy Rule 3018(a).

52. None of the Debtors, the Solicitation Agent, or any other person or entity will be under any duty to provide notification of defects or irregularities in delivered Ballots, nor will any of them incur any liability for failure to provide such notification. Rather, the Solicitation Agent may disregard, without further notice, defective Ballots described in paragraph 50 above.

24

53.     The Debtors submit that the foregoing procedures will provide for a fair and equitable voting process.

> ### ii.     Master Ballot Tabulation

54.     To tabulate Ballots and Master Ballots and cast by Voting Nominees and Beneficial Owners, for purposes of voting, the Debtors propose that the amount that shall be used to tabulate acceptance or rejection of the Plan will be the principal amount held as of the Voting Record Date (the "***Record Amount***").  In addition, the Solicitation Agent may adjust any principal amount voted to reflect the corresponding Claim amount, including prepetition interest.

55.     The following additional rules shall apply to the tabulation of Ballots and Master Ballots cast by Voting Nominees and Beneficial Owners:

a.     Votes cast by Beneficial Owners through a Voting Nominee will be applied against the positions held by such entities in the applicable securities as of the Voting Record Date, as evidenced by the record and depository listings.  Votes submitted by a Voting Nominee, whether pursuant to a Master Ballot or pre-validated Ballot, will not be counted in excess of the Record Amount of such securities held by such Voting Nominee.

b.     To the extent that conflicting votes or "overvotes" are submitted by a Voting Nominee, whether pursuant to a Master Ballot or pre-validated Ballot, the Solicitation Agent will make a reasonable attempt to reconcile discrepancies with the Voting Nominees.

c.     To the extent that overvotes on a Master Ballot or pre-validated Ballot are not reconcilable, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Ballot that contained the overvote, but only to the extent of the Voting Nominee's position in the applicable security.

d.     A single Voting Nominee may complete and deliver to the Solicitation Agent multiple Master Ballots.  Votes reflected on multiple Master Ballots will be counted, except to the extent they are duplicative of other Master Ballots.  If two or more Master Ballots are inconsistent, the latest received properly completed Master Ballot received before the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior received Master Ballot.

e.     Ballots signed by agents shall be counted as long as the capacity of such agent is reflected on the Ballot.

56.     The Debtors and other parties in interest may seek further clarification from the Court on vote tabulation and the solicitation process, and retain the right to object or raise any issue with respect to any Ballot, including issues pertaining to impairment.

### F.     Waivers of Defects and Irregularities

57.     Unless otherwise directed by the Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots will be determined by the Solicitation Agent and the Debtors in their sole discretion, which determination the Debtors propose be final and binding.  Effective withdrawals of Ballots must be delivered to the Solicitation Agent prior to the Voting Deadline.

58.     The Debtors expressly reserve their right to (a) contest the validity of any withdrawal of a Ballot, (b) reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, be unlawful, and (c) waive any defects, irregularities, or conditions of delivery as to any particular Ballot.  The interpretation (including of the Ballot and the respective instructions thereto) by the Debtors, unless otherwise directed by the Court, will be final and binding on all parties.

59.     Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors or the Court determine.  Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will the Debtors or any other person incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been

US 4084140

cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

### G. Withdrawal of Ballots and Revocation

60. Any party who has delivered a valid Ballot to the Solicitation Agent for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Solicitation Agent at any time prior to the Voting Deadline. A notice of withdrawal, to be valid, must (a) contain the description of the Ballot to which it relates and the aggregate amount represented by such Claim, (b) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, (c) contain a certification that the withdrawing party owns the Claim and possesses the right to withdraw the vote sought to be withdrawn, and (d) be received by the Solicitation Agent no later than the Voting Deadline.

61. A purported notice of withdrawal of a Ballot that is not received by the Solicitation Agent by the Voting Deadline shall not be effective to withdraw a previously cast Ballot.

62. Any party who has previously submitted to the Solicitation Agent prior to the Voting Deadline a properly completed Ballot may change such vote by submitting to the Solicitation Agent prior to the Voting Deadline a subsequent properly completed Ballot for acceptance or rejection of the Plan. In the case where more than one timely, properly completed Ballot is received, only the Ballot which bears the latest date shall be counted.

### H. Miscellaneous.

63. Prior to mailing, the Debtors request authority to make final, non-substantive edits (consisting solely of correcting typographical and grammatical errors, making stylistic and formatting improvements, adding updates of information as may be helpful, and adding revisions announced on the record at the Disclosure Statement Hearing) to the Disclosure Statement, the

Plan, all notices to be served, and all versions of Ballots and all other notices, with such revisions

to be filed with the Court and deemed approved by this Order without further notice or hearing.

## VI.    Setting the Confirmation Hearing.

64.    Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

FED. R. BANKR. P. 3017(c).

65.    In accordance with Bankruptcy Rule 3017(c) and in view of the Debtors'

proposed solicitation schedule outlined herein, the Debtors request that a hearing on

confirmation of the Plan (the "***Confirmation Hearing***") be set for 9:00 a.m. (Central Time) on

August 3, 2016 (the "***Confirmation Hearing Date***"), subject to the Court's calendar.    The

Confirmation Hearing may be continued from time to time by the Court or the Debtors without

further notice other than adjournments announced in open court or through a filing on the

Court's docket.  The proposed Confirmation Hearing Date is in compliance with the Bankruptcy

Code and the Bankruptcy Rules and will enable the Debtors to pursue confirmation of the Plan in

a timely fashion and on a schedule within the milestones established under the Restructuring

Support Agreement.

## VII.    Establishing Notice and Objection Procedures for Plan Confirmation.

### A.    Notice of the Confirmation Hearing.

66.    Bankruptcy Rules 2002(b) and (d) require not less than 28 days' notice to all

creditors and equity security holders of the time fixed for filing objections and the hearing to

consider confirmation of a chapter 11 plan.  FED. R. BANKR. P. 2002(b) & (d).  In accordance

with Bankruptcy Rules 2002 and 3017(d), the Debtors propose to provide all holders of Claims

and Interests a copy of the Confirmation Hearing Notice, substantially in the form attached hereto as **Exhibit D**, setting forth (a) the date of approval of the Disclosure Statement, (b) the Voting Record Date, (c) the Voting Deadline, (d) the time fixed for filing objections to confirmation of the Plan and procedures with respect to the same, and (e) the time, date, and place of the Confirmation Hearing.[8]

67.     Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." FED. R. BANKR. P. 2002(l).  In addition to mailing the Confirmation Hearing Notice to all holders of Claims and Interests, the Debtors propose to publish the Confirmation Hearing Notice (or a notice substantially similar thereto) not less than 28 days before the Confirmation Hearing in *The Wall Street Journal, National Edition* and in the *Houston Chronicle*.  Additionally, the Debtors will publish the Confirmation Hearing Notice electronically on the Debtors' case information website (located at http://dm.epiq11.com/EXL) and file the same on the Court's docket.  The Debtors believe that publication of the Confirmation Hearing Notice will provide sufficient notice of the approval of the Disclosure Statement, the Voting Record Date, the Voting Deadline, the time fixed for filing objections to confirmation of the Plan, and the time, date, and place of the Confirmation Hearing to persons who do not otherwise receive notice by mail as provided for in the Order.

68.     The Debtors submit that the foregoing procedures will provide parties in interest adequate notice of the Confirmation Hearing and, accordingly, request that the Court approve such notice as adequate and sufficient.

---

[8]     As to holders of Claims in Voting Classes, the Confirmation Hearing Notice shall be transmitted as part of each such holder's Solicitation Package.

US 4084140

**B.      Procedures for the Filing of Objections to Confirmation of the Plan.**

69.      Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  FED. R. BANKR. P. 3020(b)(1).  The Debtors request that the Court direct that objections to confirmation of the Plan must:  (a) be in writing; (b) conform to the Bankruptcy Rules; (c) state the name and address of the objecting party and the amount and nature of such party's Claim or Interest; (d) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (e) be filed, together with proof of service, with the Court electronically and served on the Debtors, the Committee, and the U.S. Trustee, in each case so as to be actually received on or before 4:00 p.m. (Central Time) on July 27, 2016.

70.      The proposed timing for the filing and service of objections and proposed modifications will afford the Court, the Debtors, and other parties in interest sufficient time to consider any objections or proposed modifications to the Plan before the Confirmation Hearing.

## NOTICE

71.      Notice of this Motion has been provided by delivery to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the First Lien Agent; (c) counsel to the First Lien Agent; (d) the indenture trustee under the Second Lien Notes; (e) counsel to the ad hoc committee of Second Lien Noteholders; (f) the indenture trustee under the Debtors' EGC Unsecured Notes; (g) the indenture trustee under the Debtors' EPL Unsecured Notes; (h) the indenture trustee under the Convertible Notes; (i) proposed counsel to the Official Committee of Unsecured Creditors; (j) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; (k) the United States Securities and Exchange Commission; (l) the Internal Revenue Service; and (m) all other applicable

US 4084140

government agencies to the extent required by the Bankruptcy Rules or the Local Rules.  In light of the nature of the relief requested in this Application, the Debtors submit that no further notice is necessary.

## **NO PRIOR REQUEST**

72.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

31

## PRAYER

The Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, and grant such other and further relief to which the Debtors may be justly entitled.

Dated: May 20, 2016
Houston, Texas

**VINSON & ELKINS LLP**

By:     */s/ Reese A. O'Connor*
      Harry A. Perrin (TX 15796800)
      Bradley R. Foxman (TX 24065243)
      Reese A. O'Connor (TX 24092910)
      First City Tower
      1001 Fannin Street, Suite 2500
      Houston, TX 77002-6760
      Tel:  713.758.2222
      Fax:  713.758.2346
      hperrin@velaw.com; bfoxman@velaw.com;
      roconnor@velaw.com

      - and -

      Paul E. Heath (TX 09355050)
      Trammell Crow Center
      2001 Ross Avenue, Suite 3700
      Dallas, TX 75201
      Tel:  214.220.7700
      Fax: 214.999.7787
      pheath@velaw.com

      - and -

      David S. Meyer (admitted *pro hac vice*)
      Jessica C. Peet (admitted *pro hac vice*)
      Lauren R. Kanzer (admitted *pro hac vice*)
      666 Fifth Avenue, 26th Floor
      New York, NY 10103-0040
      Tel:  212.237.0000
      Fax: 212.237.0100
      dmeyer@velaw.com; jpeet@velaw.com;
      lkanzer@velaw.com

      **PROPOSED ATTORNEYS FOR THE DEBTORS**

US 4084140

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 20, 2016, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

 _/s/ Reese A. O'Connor_____
One of Counsel

33

**<u>Exhibit A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 16-31928** |
| | § | |
| **ENERGY XXI LTD,** *et al.,* | § | **(Chapter 11)** |
| | § | |
| | § | **Jointly Administered** |
| **Debtors.**[1] | § | **Related to Docket No. 328** |

**ORDER (A) APPROVING THE DISCLOSURE
STATEMENT AND THE FORM AND MANNER
OF SERVICE RELATED THERETO, (B) SETTING DATES
FOR THE OBJECTION DEADLINE AND HEARING RELATING TO
CONFIRMATION OF THE PLAN, AND (C) GRANTING RELATED RELIEF**

Upon the Motion[2] filed by the above-referenced debtors and debtors in possession (collectively, the "***Debtors***") for entry of an order (the "***Order***"): (a) approving the Disclosure Statement and the form and manner of service related thereto, (b) setting dates for the objection deadline and hearing relating to confirmation of the Plan, and (c) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 1021 Main Street, Suite 2626, Houston, Texas 77002.

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion, the *Disclosure Statement for the Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "***Disclosure Statement***"), or the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (as may be amended, modified, and supplemented, the "***Plan***"), as applicable.

1

consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that proper and adequate notice of the Motion, the Plan [Docket No. 327], the Disclosure Statement [Docket No. 328], and the hearing thereon has been given and that, except as set forth herein, no other or further notice is necessary; and the *Affidavit of Service of the Notice of Disclosure Statement Approval Hearing* having been sworn to on May __, 2016; and the Court having determined that the legal and factual bases set forth in the Motion and at the Disclosure Statement Hearing establish just cause for the relief granted herein; and that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY FOUND THAT:**

A.     The form of the Disclosure Statement Hearing Notice is approved;

B.     The Disclosure Statement Hearing Notice was previously served on all required parties and constitutes due and proper notice of the Disclosure Statement Hearing, the objection deadline, and the relief requested in the Motion, and no further notice need be provided;

C.     The Disclosure Statement (as the same may be updated, supplemented, amended, or otherwise modified from time to time, including in connection with the Disclosure Statement Hearing) contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code;

D.     The Ballots, attached as **Exhibits F-1** through **F-11** to the Motion, are substantially consistent with the applicable Official Form, adequately address the particular

needs of these chapter 11 cases, and are appropriate for the holders of Claims in the Voting Classes entitled to vote to accept or reject the Plan;

E.      The Ballots require the furnishing of sufficient information to assure that duplicate Ballots are not submitted and tabulated and that Master Ballots reflect the votes of the Beneficial Owners;

F.      Ballots need not be provided to the holders of Claims in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), and Class 4 (EXXI Holdings Promissory Note Claims) because the Plan provides that such classes are Unimpaired and, therefore, are conclusively presumed to accept the Plan;

G.      Ballots need not be provided to the holders of Claims and Interests in Class 12 (Section 510(b) Claims) and Class 15 (EXXI Interests) because the Plan provides that they will not receive or retain any property under the Plan in respect of such Claims or Interests and, therefore, are deemed to reject the Plan;

H.      The period, set forth below, during which the Debtors may solicit acceptances of the Plan is a reasonable and adequate period of time for creditors to make an informed decision to accept or reject the Plan;

I.      The procedures for the solicitation and tabulation of votes to accept or reject the Plan (as more fully set forth in the Motion and below) provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code; and

J.      The Confirmation Hearing Notice, substantially in the form attached to the Motion as **Exhibit D**, and the procedures set forth below for providing notice to all holders of Claims and Interests of the time, date, and place of the Confirmation Hearing and the contents of

the Solicitation Packages comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties.

**IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is **GRANTED**.

2.      The Disclosure Statement, substantially in the form attached hereto as **<u>Exhibit A</u>**, is **APPROVED**.

3.      To the extent not withdrawn, settled, or otherwise resolved, any objection to the Disclosure Statement is **OVERRULED**.

4.      June 17, 2016 is established as the Voting Record Date for purposes of this Order and determining (a) the holders of Claims who are entitled to vote on the Plan and (b) in the case of Non-Voting Classes, the holders of Claims and Interests that are to receive certain informational materials.

5.      The Solicitation Packages shall contain:  (a) a cover letter describing the contents of the Solicitation Package, the contents of the enclosed CD-ROM, and instructions for obtaining printed copies of any materials provided on the CD-ROM at no charge; (b) a CD-ROM containing (i) the Disclosure Statement (with the Plan attached thereto and other exhibits) and (ii) the Order (without exhibits); (c) the Confirmation Hearing Notice; and (d) one or more Ballots, as appropriate, together with a pre-addressed postage-paid envelope.

6.      The Debtors are directed to distribute or cause to be distributed Solicitation Packages to:  (a) all persons and entities identified in the Schedules as holding liquidated, noncontingent, and undisputed Claims in the Voting Classes in an amount greater than zero dollars, excluding scheduled Claims that have been paid in full, superseded by filed Proofs of Claim, or disallowed or expunged before the Voting Record Date; (b) all persons and entities that

4

timely filed Proofs of Claim in the Voting Classes, as reflected in the Claims register maintained by Epiq Bankruptcy Solutions, LLC (the "*Solicitation Agent*") that allege dollar amounts greater than zero or that are contingent or unliquidated but, in each case, only to the extent that Claims have not been disallowed or expunged before the Voting Record Date; and (c) transferees and assignees of any creditor described in (a) or (b) above, but only to the extent that the relevant transfer or assignment has been properly noted on the Court's docket and is effective pursuant to Bankruptcy Rule 3001(e) as of the close of business on the Voting Record Date and whose Claims have not been disallowed or expunged before the Voting Record Date.

7.      To facilitate distribution of the Solicitation Package to holders of Claims in Class 5 (First Lien Claims), Class 6 (Second Lien Notes Claims), Class 7 (EGC Unsecured Notes Claims), Class 8 (EPL Unsecured Notes Claims), Class 9 (EXXI Convertible Notes Claims), Class 10 (Trade Claims), and Class 11 (General Unsecured Claims) (collectively, the "*Voting Classes*"), the applicable administrative agents for the Claims in the Voting Classes shall provide the Solicitation Agent with a Voting Record Date electronic list of each lender participant, which list shall include each lender participant's name, mailing address with a contact person, and Claim amount as of the Voting Record Date, as soon as practicably possible, but in any event no later than one business day following entry of this Order.

8.      For beneficial owners holding any of the Second Lien Notes, EGC Unsecured Notes, EPL 8.25% Senior Notes, or EXXI 3.0% Senior Convertible Notes ("*Beneficial Owners*") as a record holder in their own name, (a) the Debtors shall deliver Solicitation Packages to the record holders of such securities as of the Voting Record Date, including, without limitation, brokers, banks, dealers, and other agents and nominees (collectively, the "*Voting Nominees*"), (b) each Voting Nominee shall be entitled to receive a Master Ballot and a

reasonably sufficient number of Ballots and Solicitation Packages to distribute to the Beneficial Owners of those securities for whom such Voting Nominee is the record holder, (c) the Debtors shall deliver Master Ballots to each Voting Nominee after the initial distribution of Solicitation Packages, and (d) the Debtors are authorized, without further order of this Court, to reimburse each Voting Nominee for its reasonable, customary, and documented out-of-pocket expenses associated with the (i) distribution of Ballots and Solicitation Packages to the Beneficial Owners, (ii) tabulation of the Ballots for the Beneficial Owners, and (iii) completion of Master Ballots.

9.      As soon as practicably possible, but in any event no later than two business days following entry of this Order, the indenture trustee for the Second Lien Notes, EGC Unsecured Notes, EPL 8.25% Senior Notes, and EXXI 3.0% Senior Convertible Notes shall provide the Solicitation Agent with a Voting Record Date electronic list of directly registered holders of such Second Lien Notes, EGC Unsecured Notes, EPL 8.25% Senior Notes, and EXXI 3.0% Senior Convertible Notes, as applicable, which list shall include each holder's name, mailing address, and principal amount held as of the Voting Record Date.

10.     The Debtors are authorized to distribute or cause to be distributed Master Ballots to the Voting Nominees after the Solicitation Packages have been forwarded to the Beneficial Owners in accordance with any applicable customary procedures.

11.     Each Voting Nominee shall forward a Solicitation Package and return envelope to each of its respective Beneficial Owners within five business days of receipt of such Solicitation Packages by such Voting Nominee.

12.     The appropriate Non-Voting Notices, substantially in the forms attached to the Motion as **Exhibits B** and **C**, shall be distributed to (a) holders of Claims, as of the Voting Record Date, in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3

(Secured Tax Claims), and Class 4 (EXXI Holdings Promissory Note Claims), which classes are conclusively presumed to accept the Plan and (b) holders of Claims and Interests, as of the Voting Record Date, in Class 12 (Section 510(b) Claims) and Class 15 (EXXI Interests), which classes are deemed to reject the Plan.

13.     For addresses for which Disclosure Statement Hearing Notices were returned as undeliverable by the United States Postal Service, the Debtors are excused from distributing Solicitation Packages, Ballots, Non-Voting Notices, copies of the Disclosure Statement or Plan or any other materials or notices (including any updates, supplements, amendments, or modifications thereto) to those entities listed at such addresses unless the Debtors are provided with accurate addresses for such entities before the date (the "**_Solicitation Date_**") that is five business days after entry of this Order, and failure to distribute Solicitation Packages to such entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline (as defined below) or violation of Bankruptcy Rule 3017(d).

14.     The Debtors need not re-mail undelivered Solicitation Packages or other undeliverable solicitation-related notices that were returned as undeliverable by the United States Postal Service unless the Debtors are provided with accurate addresses for such entities at least seven calendar days prior to the Voting Deadline.

15.     The Debtors shall send, by first class mail, the Confirmation Hearing Notice (but no Solicitation Packages, Ballots, Non-Voting Notices, copies of the Disclosure Statement or Plan, or any other similar materials or notices) to (a) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002, (b) parties to executory contracts and unexpired leases that have not been assumed or rejected as of the Voting Record Date, who are not included in the Schedules (other than Schedule G) and who have not

7

timely filed a Proof of Claim, (c) holders of Claims against the Debtors that have not been classified in the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code, and (d) all other parties included in the Debtors' creditor matrix that do not fall within any of the categories described above.

16.     After receipt of returned Ballots, each Voting Nominee shall tabulate the results according to instructions set forth in the Master Ballots and return such results to the Solicitation Agent in a Master Ballot by the Voting Deadline or arrange for Beneficial Owners to receive pre-validated Ballots for direct return to the Solicitation Agent by the Voting Deadline.

17.     To the extent a Voting Nominee elects to arrange for Beneficial Owners to receive pre-validated Ballots or direct return to the Solicitation Agent:  (a) the Voting Nominee shall (i) complete and execute the Ballot (other than Items 2, 3, and 4) and indicate on the Ballot the name and The Depository Trust Company participant number of the Voting Nominee, the amount of securities held by the Voting Nominee for the Beneficial Owner and the account numbers for the accounts in which such securities are held by the Voting Nominee and, thereafter, (ii) forward the Solicitation Packages (with the pre-validated Ballots) or copies thereof, along with a return envelope, to the Beneficial Owners within five business days of the receipt by such Voting Nominee of the Solicitation Package; and (b) the Beneficial Owner shall return the pre-validated Ballot to the Solicitation Agent by the Voting Deadline.

18.     To be counted as a vote to accept or reject the Plan, each Ballot or Master Ballot must be properly executed, completed, and the original thereof delivered to the Solicitation Agent so as to be actually received by the Solicitation Agent no later than 5:00 p.m. (Central Time) on July 27, 2016 (the "***Voting Deadline***").  Ballots must be received by the Solicitation

8

Agent, on or prior to the Voting Deadline, by (a) mail, (b) overnight delivery, or (c) hand delivery, as follows:

**By First Class Mail**

EXXI Ballot Processing
c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 4422
Beaverton, OR 97076-4422

**By Overnight Courier or Hand Delivery**

Exxi Ballot Processing
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Boulevard
Beaverton, OR 97005

19.     Except as otherwise provided herein, a Ballot will not be counted if it is received by the Solicitation Agent after the Voting Deadline.  Votes cast will be irrevocable after the Voting Deadline, unless the Court, after application, notice, and hearing, permits a change of vote.

20.     Any member of a Class entitled to vote on the Plan that did not receive a Ballot for such Class, or if a Ballot is damaged or lost, or if any member of a Class entitled to vote should have any questions regarding the procedures for voting on the Plan, such Person should contact the Solicitation Agent by email at tabulation@epiqsystems.com and including "EXXI" in the subject line or by phone at (646) 282-2500 or (866) 734-9393 (Toll Free).

21.     By enclosing a Ballot with the Solicitation Package, the Debtors do not make any representation or admission that a holder of a Claim or Interest is entitled to vote on the Plan or that such Claim or Interest is an Allowed Claim or an Allowed Interest.  The Debtors' right to object to any Ballot submitted and such objection, if any, is specifically reserved for the Confirmation Hearing.

US 4084140

22.     Any person requiring assistance in voting should contact the Solicitation Agent at the address or phone number set forth hereinabove.

23.     The Debtors may extend the Voting Deadline, if necessary, without further order of this Court, to a date that is no later than three business days before the Confirmation Hearing by publishing on the Debtors' case information website (located at http://dm.epiq11.com/EXL) an announcement of such extension and shall file the same on this Court's docket.

24.     Solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance of or distribution on account of a Claim and without prejudice to the rights of the Debtors in any other context, each holder of a Claim in the Voting Classes shall be entitled to vote the amount of such Claim as set forth in the Schedules (as may be amended from time to time) unless such holder has timely filed a Proof of Claim, in which event such holder would be entitled to vote the amount of such Claim as set forth in such Proof of Claim; *provided* that:

a.      if a Claim is deemed "allowed" pursuant to an agreement with the Debtors or an order of the Court, the Debtors propose that such Claim be allowed for voting purposes in the "allowed" amount set forth in such agreement or in the Court's order;

b.      if a Claim for which a Proof of Claim has been timely filed is wholly contingent or unliquidated or filed for unknown or undetermined amounts, or if a Claim is based on pending litigation not subject to a judgment against any of the Debtors, and (i) no objection to it has been filed by the Voting Deadline and (ii) no order pursuant to Bankruptcy Rule 3018(a) temporarily allowing it for voting purposes in an amount greater than $1.00 has been entered by the Court, in each case before the Voting Deadline, the Debtors propose that such Claim be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00, and the Ballot mailed to the holder of such Claim shall be marked as voting at $1.00;

c.      if the Debtors have filed an objection to a Claim by two calendar days prior to the Voting Deadline, the Debtors propose that such Claim be disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection;

10

d.    if a Claim has been "disallowed" by agreement of the holder of such Claim or order of the Court at any time before the Voting Deadline, the Debtors propose that such Claim be disallowed for voting purposes;

e.    if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, the Debtors propose that such Claim be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only;

f.    if a Claim is listed in the Schedules as contingent, unliquidated or disputed, or undetermined in amount or for $0.00, and a Proof of Claim was not (i) filed by the applicable bar date for the filing of Proofs of Claim established by the Court or (ii) deemed timely filed by an order of the Court before the Voting Deadline, then, unless the Debtors have consented in writing or the holder of such Claim obtains an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes, the Debtors propose that such Claim be disallowed for voting purposes and for purposes of allowance and distribution pursuant to Bankruptcy Rule 3003(c); *provided, however*, if the applicable Claims bar date has not expired prior to the Voting Record Date, a Claim listed in the Schedules as contingent, unliquidated or disputed, or undetermined in amount shall vote at $1.00;

g.    Claims filed for $0.00 are not entitled to vote;

h.    Claims filed in a currency other than U.S. dollars shall vote at $1.00;

i.    if a Claim is partially liquidated and partially unliquidated and (i) no objection to it has been filed by the Voting Deadline and (ii) no order pursuant to Bankruptcy Rule 3018(a) temporarily allowing it for voting purposes in an amount greater than $1.00 has been entered by the Court, in each case before the Voting Deadline, the Debtors propose that such Claim be allowed for voting purposes only in the liquidated amount;

j.    if a Proof of Claim has been amended by a later-filed Proof of Claim, the later-filed amending Claim will be entitled to vote to the extent consistent with the tabulation rules set forth in this Order, and the earlier filed Claim will not be entitled to vote;

k.    if no votes to accept or reject the Plan are received for a particular Voting Class, such Voting Class shall be deemed to have voted to accept the Plan;

l.    for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code and based on a reasonable review by the Solicitation Agent, separate Claims held by a single creditor in a particular class may be aggregated, in the Debtors' discretion, as if such creditor held one Claim against the Debtors in such class, and the votes related to such Claims may be treated by the Debtors as a single vote to accept or reject the Plan; and

11

m.    notwithstanding anything to the contrary contained herein, the Debtors propose that any creditor who has filed or purchased duplicate Claims within a particular Voting Class (whether against the same or multiple Debtors), be provided with only one Solicitation Package and one Ballot and be permitted to vote only a single Claim, regardless of whether the Debtors have objected to such duplicate Claims.

25.    If any holder of a Claim seeks to challenge the allowance or disallowance of its Claim for voting purposes, such holder is directed to serve on the Debtors and file with the Court on or before the 14th calendar day after the later of (a) the Solicitation Date and (b) the date of service of an objection, if any, to such Claim, in accordance with the solicitation procedures, but in no event later than the Voting Deadline, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for purposes of voting to accept or reject the Plan.

26.    As to any creditor filing a motion pursuant to Bankruptcy Rule 3018(a), such creditor's Ballot shall not be counted unless temporarily allowed by the Court for voting purposes after notice and a hearing.

27.    If a creditor casts more than one Ballot voting the same Claim before the Voting Deadline, the properly completed Ballot received before the Voting Deadline is deemed to reflect the voter's intent and to supersede any prior Ballots.

28.    A creditor with multiple Claims in a particular Voting Class must vote all of its Claims within such Voting Class either to accept or reject the Plan and may not split its votes.  A creditor with Claims in multiple Voting Classes based on the same underlying obligation (*e.g.*, a primary Claim and a guarantee Claim) may not split its votes with respect to such Claims, and thus (a) no Ballot (other than a Master Ballot) that partially rejects and partially accepts the Plan, (b) no Ballot filed by a creditor with multiple Claims within a particular Voting Class that votes inconsistently with respect to such Claims, and (c) no Ballot filed by a creditor with Claims in

12

multiple Voting Classes based on the same underlying obligation that votes inconsistently with respect to such Claims, in each case, will be counted, except as otherwise set forth herein.

29.     If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or another acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, unless otherwise determined by the Debtors, must submit proper evidence satisfactory to the Debtors of authority to so act. Authorized signatories should submit the separate Ballot of each Beneficial Owner for whom they are voting.

30.     Without further order of this Court, except as otherwise set forth herein, any Ballot that is properly completed, executed, and timely returned to the Solicitation Agent but does not indicate an acceptance or rejection of the Plan or indicates both an acceptance and rejection of the Plan, shall not be counted.

31.     Without further order of this Court, any Ballot actually received by the Solicitation Agent after the Voting Deadline shall not be counted unless the Debtors granted a Voting Deadline extension for such Ballot.

32.     Without further order of this Court, any Ballot that is illegible or contains insufficient information to permit the identification of the Claim or Interest holder shall not be counted, except as otherwise set forth herein.

33.     Without further order of this Court, any Ballot cast by a person or entity that does not hold a Claim in a Voting Class shall not be counted.

34.     Without further order of this Court, any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed shall not be counted.

13

US 4084140

35.     Without further order of this Court, any unsigned Ballot or non-originally signed Ballot shall not be counted, except as otherwise set forth herein.

36.     Without further order of this Court, except as otherwise set forth herein, any Ballot sent directly to any of the Debtors, their agents (other than the Solicitation Agent), the Debtors' financial or legal advisors, or to any party other than the Solicitation Agent shall not be counted.

37.     Without further order of this Court, any Ballot cast for a Claim that has been disallowed (for voting purposes or otherwise) shall not be counted.

38.     Without further order of this Court, except as otherwise set forth herein, any Ballot transmitted to the Solicitation Agent by facsimile or other electronic means shall not be counted.

39.     A holder of a Claim entitled to vote that has delivered a valid Ballot may withdraw such Ballot solely in accordance with Bankruptcy Rule 3018(a) by delivering a written notice of withdrawal to the Solicitation Agent at any time prior to the Voting Deadline.  A notice of withdrawal, to be valid, must: (a) contain the description of the Ballot to which it relates and the aggregate amount represented by such Claim or Interest; (b) be signed by the withdrawing party in the same manner as the Ballot being withdrawn; (c) contain a certification that the withdrawing party owns the Claim or Interest and possesses the right to withdraw the vote sought to be withdrawn; and (d) be received by the Solicitation Agent in a timely manner at the address set forth hereinabove.  A purported notice of withdrawal of a Ballot that is not received in a timely manner by the Solicitation Agent shall not be effective to withdraw a previously cast Ballot.

14

40.     Any party who has previously submitted to the Solicitation Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Solicitation Agent, prior to the Voting Deadline, a subsequent properly completed Ballot for acceptance or rejection of the Plan.  In the case where more than one timely, properly completed Ballot is received, only the Ballot that bears the latest date shall be counted for purposes of determining whether the requisite acceptances have been received.

41.     Subject to any contrary order of this Court, the Debtors may reject any and all Ballots the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules.

42.     Subject to any contrary order of this Court, the Debtors may waive any defect in any Ballot at any time, whether before or after the Voting Deadline, and without notice.

43.     Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors or the Court determine.  Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will they incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

44.     None of the Debtors, the Solicitation Agent, or any other person or entity shall be under any duty to provide notification of defects or irregularities in delivered Ballots, nor shall the Debtors, the Solicitation Agent, or any other person or entity incur any liability for failure to provide such notification.

15

45.     The Solicitation Agent may disregard any and all defective Ballots with no further notice to any other person or entity.

46.     To tabulate pre-validated Ballots and Master Ballots cast by Voting Nominees and Beneficial Owners, for purposes of voting, the amount that will be used to tabulate acceptance or rejection of the Plan will be the Record Amount and the following additional rules shall apply:

a.      Votes cast by Beneficial Owners through a Voting Nominee will be applied against the positions held by such entities in the applicable securities as of the Voting Record Date, as evidenced by the record and depository listings.  Votes submitted by a Voting Nominee, whether pursuant to a Master Ballot or pre-validated Ballot, will not be counted in excess of the Record Amount of such securities held by such Voting Nominee.

b.      To the extent that conflicting votes or "overvotes" are submitted by a Voting Nominee, whether pursuant to a Master Ballot or pre-validated Ballot, the Solicitation Agent will make a reasonable attempt to reconcile discrepancies with the Voting Nominees.

c.      To the extent that overvotes on a Master Ballot or pre-validated Ballot are not reconcilable, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Ballot that contained the overvote, but only to the extent of the Voting Nominee's position in the applicable security.

d.      A single Voting Nominee may complete and deliver to the Solicitation Agent multiple Master Ballots.  Votes reflected on multiple Master Ballots will be counted, except to the extent they are duplicative of other Master Ballots.  If two or more Master Ballots are inconsistent, the latest received properly completed Master Ballot received before the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior received Master Ballot.

e.      Ballots signed by agents shall be counted as long as the capacity of such agent is reflected on the Ballot.

47.     All Voting Nominees shall keep the original Ballots received from Beneficial Owners for a period of at least one year after the Voting Deadline.

48.     The Confirmation Hearing Notice, substantially in the form attached to the Motion as **Exhibit D**, shall be transmitted to all creditors and equity security holders.

49.     The Confirmation Hearing will be held before the Honorable David R. Jones, Chief United States Bankruptcy Judge for the Southern District of Texas, Houston Division at the United States Courthouse, Room 400, 515 Rusk, Houston, Texas 77002 at 9:00 a.m. (Central Time) on August 3, 2016; *provided, however*, that the Confirmation Hearing may be adjourned from time to time by the Court or the Debtors without further notice to parties other than a notice filed on the Court's docket or an announcement in Court at the Confirmation Hearing or any adjourned Confirmation Hearing.

50.     The Debtors shall publish the Confirmation Hearing Notice on or before the date that is 28 days before the Confirmation Hearing in *The Wall Street Journal, National Edition* and the *Houston Chronicle* and electronically on the Debtors' case information website (located at http://dm.epiq11.com/EXL) and shall file the same on this Court's docket.

51.     Objections to confirmation of the Plan or proposed modifications to the Plan, if any, must (a) be in writing, (b) conform to the Bankruptcy Rules, (c) state the name and address of the objecting party and the amount and nature of such party's Claim or Interest, (d) state with particularity the basis and nature of any objection to the Plan, and (e) be filed, together with proof of service, on this Court's docket and served on the Debtors, the Committee, and the U.S. Trustee, in each case so as to be actually received on or before 4:00 p.m. (Central Time) on July 27, 2016.

52.     Objections to confirmation of the Plan not timely filed and served in the manner set forth above shall not be considered and shall be overruled.

53.     The Debtors are authorized to take or refrain from taking any action necessary and appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court.

17

54.     The Debtors are authorized to make final, non-substantive changes (consisting solely of correcting typographical and grammatical errors, making stylistic and formatting improvements, adding updates of information as may be helpful, and making revisions announced on the record at the Disclosure Statement Hearing) to the Disclosure Statement, the Plan, the Ballots, the Non-Voting Notices, the Confirmation Hearing Notice, and all exhibits to any of the foregoing without further order of the Court, prior to mailing, with such revisions deemed approved by this Order without further notice or hearing.

55.     No other or further notice of the Motion or the entry of this Order shall be required.

56.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: June ___, 2016
Houston, Texas

_____
**UNITED STATES BANKRUPTCY JUDGE**

18

**<u>Exhibit B</u>**

**Notice of Unimpaired Status**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 16-31928** |
| | § | |
| **ENERGY XXI LTD,** *et al.*, | § | **(Chapter 11)** |
| | § | |
| | § | **Jointly Administered** |
| **Debtors.**[1] | § | |

## NOTICE OF UNIMPAIRED STATUS
## AND SCHEDULING OF CONFIRMATION HEARING

On June __, 2016, the Honorable David R. Jones, Chief United States Bankruptcy Judge for the Southern District of Texas, Houston Division at the United States Courthouse, Room 400, 515 Rusk, Houston, Texas 77002 (the "***Court***") entered the *Order (A) Approving Disclosure Statement and the Form and Manner of Service Related Thereto, (B) Setting Dates for the Objection Deadline and Hearing Relating to Confirmation of the Plan, and (C) Granting Related Relief* [Docket No. __] (the "***Order***").  Among other things, the Order approved the *Disclosure Statement for the Debtors' Proposed Joint Chapter 11 Plan of Reorganization* [Docket No. 328] (the "***Disclosure Statement***") filed by the above-captioned debtors and debtors in possession (the "***Debtors***") in these chapter 11 cases.  In the Order, the Court found that the Disclosure Statement contains adequate information within the meaning of section 1125 of the title 11 of the United States Code (the "***Bankruptcy Code***").  You are being provided this *Notice of Unimpaired Status and Scheduling of Confirmation Hearing* (the "***Notice***") with respect to the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* [Docket No. 327] (the "***Plan***").[2]

> **UNDER THE TERMS OF THE PLAN, YOUR ALLOWED CLAIMS AGAINST THE DEBTORS WILL BE <u>SATISFIED IN FULL</u>. THEREFORE, YOUR CLAIMS ARE CONSIDERED UNIMPAIRED AND WILL BE UNAFFECTED BY THESE CHAPTER 11 CASES.  IN ACCORDANCE WITH SECTION 1126(f) OF THE BANKRUPTCY CODE, YOU ARE CONCLUSIVELY PRESUMED TO HAVE ACCEPTED THE PLAN AND ARE NOT ENTITLED TO VOTE ON THE PLAN.**

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 1021 Main Street, Suite 2626, Houston, Texas 77002.

[2]    Capitalized terms used in this Notice that are not otherwise defined herein shall  have  the  meanings  given
to    them in the Plan or the Disclosure Statement.

US 4084140

## Plan Summary

The following is an overview of the treatment to be afforded to each class of Claims or Interests as provided under the Plan.  It is provided for convenience only and is specifically qualified by the Plan itself.

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept | Each holder of an Allowed Other Priority Claim shall receive (a) payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim or (b) such other treatment as may otherwise be agreed to by such holder, the Debtors, and the Majority Restructuring Support Parties. |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept | Each holder of an Allowed Other Secured Claim shall receive, at the Debtors' election (with the consent of the Majority Restructuring Support Parties), either (a) Cash equal to the full Allowed amount of its Claim, (b) Reinstatement of such holder's Allowed Other Secured Claim, (c) the return or abandonment of the collateral securing such Allowed Other Secured Claim to such holder, or (d) such other treatment as may otherwise be agreed to by such holder, the Debtors, and the Majority Restructuring Support Parties. |
| 3 | Secured Tax Claims | Unimpaired | Presumed to Accept | Each holder of an Allowed Secured Tax Claim shall receive, at the Debtors' election (with the consent of the Majority Restructuring Support Parties), either (a) Cash equal to the full Allowed amount of its Claim, (b) Reinstatement of such holder's Allowed Secured Tax Claim, (c) the return or abandonment of the collateral securing such Allowed Secured Tax Claim to such holder, or (d) such other treatment as may otherwise be agreed to by such holder, the Debtors, and the Majority Restructuring Support Parties. |

2

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|-------|-------------|--------|---------------|------------------------------------------|
| 4 | EXXI Holdings Promissory Note Claims | Unimpaired | Presumed to Accept | On the Effective Date, the EXXI Holdings Promissory Note Claims shall be Reinstated. |
| 5 | First Lien Claims | Impaired | Entitled to Vote | Each holder of an Allowed First Lien Claim shall receive its *Pro Rata* share of (a) the Restricted Cash and (b) the Reorganized Debtors' obligations under the Exit Facility. |
| 6 | Second Lien Notes Claims | Impaired | Entitled to Vote | Each holder of an Allowed Second Lien Notes Claim shall receive its *Pro Rata* share of 100% of the New Equity, subject to dilution from New Equity issued in connection with the Management Incentive Plan and the Warrant Package. |
| 7 | EGC Unsecured Notes Claims | Impaired | Entitled to Vote | Each holder of an Allowed EGC Unsecured Notes Claim shall receive its *Pro Rata* share of the EGC Warrant Package Allocation; *provided, however* that if Class 7 votes to reject the Plan, holders of EGC Unsecured Notes Claims will not receive a distribution under the Plan. |
| 8 | EPL Unsecured Notes Claims | Impaired | Entitled to Vote | Each holder of an Allowed EPL Unsecured Notes Claim shall receive its *Pro Rata* share of the EPL Warrant Package Allocation; *provided, however* that if Class 8 votes to reject the Plan, holders of EPL Unsecured Notes Claims will not receive a distribution under the Plan. |
| 9 | EXXI Convertible Notes Claims | Impaired | Entitled to Vote | Each holder of an Allowed EXXI Convertible Notes Claims shall receive its *Pro Rata* share of the EXXI Warrant Package Allocation; *provided, however* that if Class 9 votes to reject the Plan, holders of EXXI Convertible Notes Claims will not receive a distribution under the Plan. |

3

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|-------|-------------|--------|---------------|------------------------------------------|
| 10 | Trade Claims | Impaired | Entitled to Vote | Each holder of an Allowed Trade Claim shall, at its election, either (a) receive such holder's Trade Claim Settlement Distribution or (b) to the extent the Bankruptcy Court or another court of competent jurisdiction enters a Final Order finding that such Allowed Trade Claim is Secured, Cash in the amount of such Secured Allowed Trade Claim.<br><br>If the holder of a Trade Claim elects to receive such holder's Trade Claim Settlement Distribution, (a) such election shall constitute the Trade Claim Settlement Release, (b) such holder shall be deemed to assign its Trade Claim and any liens or security interests securing such Trade Claims to the Reorganized Debtors, and (c) the Trade Claim Settlement Distribution on account of such Trade Claim shall be made on or about the later of (i) the Effective Date and (ii) the date such Trade Claim becomes Allowed.<br><br>If the holder of a Trade Claim elects not to receive the Trade Claim Settlement Distribution, the first payment on account of its Trade Claim shall be made on or about the date such Trade Claim is determined to be Secured pursuant to a Final Order, on which date such Trade Claim shall become Allowed. Thereafter, the holder of such Secured Allowed Trade Claim shall receive a second and final payment for the remainder of such Secured Allowed Trade Claim on the last Business Day of the following calendar quarter. If the holder of a Trade Claim elects not to receive the Trade Claim Settlement Distribution and any portion of its Claim is determined to be Unsecured pursuant to a Final Order, such Unsecured Claim will be treated as a General Unsecured Claim. |

4

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|-------|-------------|--------|---------------|------------------------------------------|
| 11 | General Unsecured Claims | Impaired | Entitled to Vote | Each holder of an Allowed General Unsecured Claim shall receive [●]. |
| 12 | Section 510(b) Claims | Impaired | Not Entitled to Vote | Class 12 Claims, if any, shall be discharged, canceled, released, and extinguished as of the Effective Date, and shall be of no further force or effect, and holders of Section 510(b) Claims shall not receive any distribution on account of such Section 510(b) Claims. |
| 13 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote | Intercompany Claims shall be Reinstated as of the Effective Date or, at the Reorganized Debtors' option, shall be cancelled.   No distribution shall be made on account of any Intercompany Claims other than in the ordinary course of business of the Reorganized Debtors, as applicable. |

5

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|---|---|---|---|---|
| 14 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote | Intercompany Interests shall be Reinstated as of the Effective Date or, at the Reorganized Debtors' option, shall be cancelled. No distribution shall be made on account of any Intercompany Interests.<br><br>No distributions on account of Intercompany Interests are being made to the holders of such Intercompany Interests. Instead, to the extent Intercompany Interests are Reinstated under the Plan, such Reinstatement is solely for the purposes of administrative convenience, for the ultimate benefit of the holders of the New Equity, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims. For the avoidance of doubt: (a) to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall continue to be owned by the Reorganized Debtor that corresponds to the Debtor that owned such Intercompany Interests prior to the Effective Date; and (b) except as set forth in the Description of the Transaction Steps, no Interests in a Debtor or Non-Debtor Subsidiary, or Affiliate of a Debtor or Non-Debtor Subsidiary, held by a Non-Debtor Subsidiary or a Non-Debtor Affiliate of a Debtor will be affected by the Plan. |
| 15 | EXXI Interests | Impaired | Deemed to Reject | On the Effective Date, or as soon thereafter as reasonably practicable, all EXXI Interests will be extinguished in accordance with the Description of the Transaction Steps and the holders of EXXI Interests shall not receive or retain any distribution, property, or other value on account of their EXXI Interests. |

6

US 4084140

## Executory Contracts and Unexpired Leases

As of the Plan's effective date, the Debtors will reject only those executory contracts and unexpired leases specifically identified by the Debtors on a schedule to be filed with the Court as part of the Plan Supplement no later than ten (10) business days prior to the hearing on the confirmation of the Plan (or such later date as may be approved by the Court). All executory contracts and unexpired leases not specifically rejected by the Debtors shall be assumed. As to executory contracts and unexpired leases to be assumed or rejected pursuant to the Plan, the confirmation order will constitute an order of the Court under section 365 of the Bankruptcy Code approving the assumption or rejection of such contracts and leases.

## Relevant Deadlines

The Court has set **August 3, 2016 at 9:00 a.m. (Central Time)** as the date and time for hearing on confirmation of the Plan and to consider any objections to the Plan. The confirmation hearing will be held at the **United States Bankruptcy Court, Southern District of Texas, Houston Division, Courtroom 400, 515 Rusk Street, Houston, Texas, 77002.** The hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date(s) at the hearing, and, thereafter, at any adjourned hearing(s). In addition, the Plan may be modified without further notice prior to or as a result of the confirmation hearing, and, thereafter, as otherwise provided in the Bankruptcy Code.

Any objection to confirmation of the Plan must be filed on the docket of these chapter 11 cases on or before **July 27, 2016 at 4:00 p.m. (Central Time)**. Objections to confirmation of the Plan or proposed modifications to the Plan, if any, must (a) be in writing, (b) conform to the Bankruptcy Rules, (c) state the name and address of the objecting party and the amount and nature of such party's Claim or Interest, (d) state with particularity the basis and nature of any objection to the Plan, and (e) be filed, together with proof of service, on this Court's docket and served on counsel to the Debtors, proposed counsel to the official committee of unsecured creditors, counsel to the First Lien Administrative Agent, counsel to the Second Lien Trustee, and the United States Trustee for the Southern District of Texas, in each case so as to be actually received on or before 4:00 p.m. (Central Time) on July 27, 2016. **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

To the extent you also hold an Impaired Claim and therefore are entitled to vote on the Plan, the Court has fixed **July 27, 2016 at 5:00 p.m. (Central Time)** as the deadline for the receipt of Ballots evidencing the votes accepting or rejecting the Plan. Holders of Claims entitled to vote will receive solicitation materials separately.

## Plan Injunction, Releases, and Exculpation

If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and

US 4084140

exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan

A.    *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.**

**Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement**

8

and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any claim or cause of action released pursuant to such releases.

B.     *Releases by Holders of Claims and Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, its Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a

good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

C.   *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Bermuda Proceeding, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

D.   *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other

10

**proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.**

## <u>Obtaining Disclosure Statement and Plan</u>

You may obtain copies of pleadings filed in these chapter 11 cases without charge at the Debtors' case information website, located at http://dm.epiq11.com/EXL.

Dated: June \_\_, 2016
Houston, Texas

**VINSON & ELKINS LLP**

By:     _/s/_____
Harry A. Perrin (TX 15796800)
Bradley R. Foxman (TX 24065243)
Reese A. O'Connor (TX 24092910)
First City Tower
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Tel:  713.758.2222
Fax:  713.758.2346
hperrin@velaw.com; bfoxman@velaw.com;
roconnor@velaw.com

- and –

Paul E. Heath (TX 09355050)
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
pheath@velaw.com

- and –

David S. Meyer (admitted _pro hac vice_)
Jessica C. Peet (admitted _pro hac vice_)
Lauren R. Kanzer (admitted _pro hac vice_)
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; jpeet@velaw.com;
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS**

## Exhibit C

**Notice of Fully Impaired Status**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 16-31928 |
| | § | |
| ENERGY XXI LTD, *et al.*, | § | (Chapter 11) |
| | § | |
| | § | Jointly Administered |
| Debtors.[1] | § | |

## NOTICE OF FULLY IMPAIRED STATUS
## AND SCHEDULING OF CONFIRMATION HEARING

On June __, 2016, the Honorable David R. Jones, Chief United States Bankruptcy Judge for the Southern District of Texas, Houston Division at the United States Courthouse, Room 400, 515 Rusk, Houston, Texas 77002 (the "***Court***") entered the *Order (A) Approving Disclosure Statement and the Form and Manner of Service Related Thereto, (B) Setting Dates for the Objection Deadline and Hearing Relating to Confirmation of the Plan, and (C) Granting Related Relief* [Docket No. __] (the "***Order***"). Among other things, the Order approved the *Disclosure Statement for the Debtors' Proposed Joint Chapter 11 Plan of Reorganization* [Docket No. 328] (the "***Disclosure Statement***") filed by the above-captioned debtors and debtors in possession (the "***Debtors***") in these chapter 11 cases. In the Order, the Court found that the Disclosure Statement contains adequate information within the meaning of section 1125 of the title 11 of the United States Code (the "***Bankruptcy Code***"). You are being provided this *Notice of Fully Impaired Status and Scheduling of Confirmation Hearing* (the "***Notice***") with respect to the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* [Docket No. 327] (the "***Plan***").[2]

> **YOU ARE RECEIVING THIS NOTICE BECAUSE UNDER THE TERMS OF THE PLAN YOU ARE THE HOLDER OF A CLAIM AGAINST, OR INTEREST IN, THE DEBTORS AND ARE NOT ENTITLED TO RECEIVE OR RETAIN ANY PROPERTY ON ACCOUNT OF YOUR CLAIM OR INTEREST. IF THE PLAN IS CONFIRMED BY THE COURT, YOUR CLAIMS OR INTERESTS WILL BE CANCELED OR OTHERWISE TERMINATED IN ACCORDANCE WITH THE PLAN AS TO THE DEBTORS AND IN ACCORDANCE WITH SECTION 1126(g) OF THE BANKRUPTCY CODE YOU ARE DEEMED TO HAVE REJECTED THE PLAN AND ARE NOT ENTITLED TO VOTE ON THE PLAN.**

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 1021 Main Street, Suite 2626, Houston, Texas 77002.

[2]     Capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings given to   them in the Plan or the Disclosure Statement.

**Plan Summary**

The following is an overview of the treatment to be afforded to each class of Claims or Interests as provided under the Plan.  It is provided for convenience only and is specifically qualified by the Plan itself.

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept | Each holder of an Allowed Other Priority Claim shall receive (a) payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim or (b) such other treatment as may otherwise be agreed to by such holder, the Debtors, and the Majority Restructuring Support Parties. |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept | Each holder of an Allowed Other Secured Claim shall receive, at the Debtors' election (with the consent of the Majority Restructuring Support Parties), either (a) Cash equal to the full Allowed amount of its Claim, (b) Reinstatement of such holder's Allowed Other Secured Claim, (c) the return or abandonment of the collateral securing such Allowed Other Secured Claim to such holder, or (d) such other treatment as may otherwise be agreed to by such holder, the Debtors, and the Majority Restructuring Support Parties. |
| 3 | Secured Tax Claims | Unimpaired | Presumed to Accept | Each holder of an Allowed Secured Tax Claim shall receive, at the Debtors' election (with the consent of the Majority Restructuring Support Parties), either (a) Cash equal to the full Allowed amount of its Claim, (b) Reinstatement of such holder's Allowed Secured Tax Claim, (c) the return or abandonment of the collateral securing such Allowed Secured Tax Claim to such holder, or (d) such other treatment as may otherwise be agreed to by such holder, the Debtors, and the Majority Restructuring |

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|---|---|---|---|---|
| | | | | Support Parties. |
| 4 | EXXI Holdings Promissory Note Claims | Unimpaired | Presumed to Accept | On the Effective Date, the EXXI Holdings Promissory Note Claims shall be Reinstated. |
| 5 | First Lien Claims | Impaired | Entitled to Vote | Each holder of an Allowed First Lien Claim shall receive its *Pro Rata* share of (a) the Restricted Cash and (b) the Reorganized Debtors' obligations under the Exit Facility. |
| 6 | Second Lien Notes Claims | Impaired | Entitled to Vote | Each holder of an Allowed Second Lien Notes Claim shall receive its *Pro Rata* share of 100% of the New Equity, subject to dilution from New Equity issued in connection with the Management Incentive Plan and the Warrant Package. |
| 7 | EGC Unsecured Notes Claims | Impaired | Entitled to Vote | Each holder of an Allowed EGC Unsecured Notes Claim shall receive its *Pro Rata* share of the EGC Warrant Package Allocation; *provided, however* that if Class 7 votes to reject the Plan, holders of EGC Unsecured Notes Claims will not receive a distribution under the Plan. |
| 8 | EPL Unsecured Notes Claims | Impaired | Entitled to Vote | Each holder of an Allowed EPL Unsecured Notes Claim shall receive its *Pro Rata* share of the EPL Warrant Package Allocation; *provided, however* that if Class 8 votes to reject the Plan, holders of EPL Unsecured Notes Claims will not receive a distribution under the Plan. |
| 9 | EXXI Convertible Notes Claims | Impaired | Entitled to Vote | Each holder of an Allowed EXXI Convertible Notes Claims shall receive its *Pro Rata* share of the EXXI Warrant Package Allocation; *provided, however* that if Class 9 votes to reject the Plan, holders of EXXI Convertible Notes Claims will not receive a distribution under the Plan. |

3

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|-------|-------------|--------|---------------|------------------------------------------|
| 10 | Trade Claims | Impaired | Entitled to Vote | Each holder of an Allowed Trade Claim shall, at its election, either (a) receive such holder's Trade Claim Settlement Distribution or (b) to the extent the Bankruptcy Court or another court of competent jurisdiction enters a Final Order finding that such Allowed Trade Claim is Secured, Cash in the amount of such Secured Allowed Trade Claim. If the holder of a Trade Claim elects to receive such holder's Trade Claim Settlement Distribution, (a) such election shall constitute the Trade Claim Settlement Release, (b) such holder shall be deemed to assign its Trade Claim and any liens or security interests securing such Trade Claims to the Reorganized Debtors, and (c) the Trade Claim Settlement Distribution on account of such Trade Claim shall be made on or about the later of (i) the Effective Date and (ii) the date such Trade Claim becomes Allowed. If the holder of a Trade Claim elects not to receive the Trade Claim Settlement Distribution, the first payment on account of its Trade Claim shall be made on or about the date such Trade Claim is determined to be Secured pursuant to a Final Order, on which date such Trade Claim shall become Allowed. Thereafter, the holder of such Secured Allowed Trade Claim shall receive a second and final payment for the remainder of such Secured Allowed Trade Claim on the last Business Day of the following calendar quarter. If the holder of a Trade Claim elects not to receive the Trade Claim Settlement Distribution and any portion of its Claim is determined to be Unsecured pursuant to a Final Order, such Unsecured Claim will be treated as a General Unsecured Claim. |

4

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|---|---|---|---|---|
| 11 | General Unsecured Claims | Impaired | Entitled to Vote | Each holder of an Allowed General Unsecured Claim shall receive [●]. |
| 12 | Section 510(b) Claims | Impaired | Not Entitled to Vote | Class 12 Claims, if any, shall be discharged, canceled, released, and extinguished as of the Effective Date, and shall be of no further force or effect, and holders of Section 510(b) Claims shall not receive any distribution on account of such Section 510(b) Claims. |
| 13 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote | Intercompany Claims shall be Reinstated as of the Effective Date or, at the Reorganized Debtors' option, shall be cancelled. No distribution shall be made on account of any Intercompany Claims other than in the ordinary course of business of the Reorganized Debtors, as applicable. |

5

US 4084140

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|-------|-------------|--------|---------------|------------------------------------------|
| 14 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote | Intercompany Interests shall be Reinstated as of the Effective Date or, at the Reorganized Debtors' option, shall be cancelled. No distribution shall be made on account of any Intercompany Interests.<br><br>No distributions on account of Intercompany Interests are being made to the holders of such Intercompany Interests. Instead, to the extent Intercompany Interests are Reinstated under the Plan, such Reinstatement is solely for the purposes of administrative convenience, for the ultimate benefit of the holders of the New Equity, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims. For the avoidance of doubt: (a) to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall continue to be owned by the Reorganized Debtor that corresponds to the Debtor that owned such Intercompany Interests prior to the Effective Date; and (b) except as set forth in the Description of the Transaction Steps, no Interests in a Debtor or Non-Debtor Subsidiary, or Affiliate of a Debtor or Non-Debtor Subsidiary, held by a Non-Debtor Subsidiary or a Non-Debtor Affiliate of a Debtor will be affected by the Plan. |
| 15 | EXXI Interests | Impaired | Deemed to Reject | On the Effective Date, or as soon thereafter as reasonably practicable, all EXXI Interests will be extinguished in accordance with the Description of the Transaction Steps and the holders of EXXI Interests shall not receive or retain any distribution, property, or other value on account of their EXXI Interests. |

6

## Executory Contracts and Unexpired Leases

As of the Plan's effective date, the Debtors will reject only those executory contracts and unexpired leases specifically identified by the Debtors on a schedule to be filed with the Court as part of the Plan Supplement no later than ten (10) business days prior to the hearing on the confirmation of the Plan (or such later date as may be approved by the Court). All executory contracts and unexpired leases not specifically rejected by the Debtors shall be assumed. As to executory contracts and unexpired leases to be assumed or rejected pursuant to the Plan, the confirmation order will constitute an order of the Court under section 365 of the Bankruptcy Code approving the assumption or rejection of such contracts and leases.

## Relevant Deadlines

The Court has set **August 3, 2016 at 9:00 a.m. (Central Time)** as the date and time for hearing on confirmation of the Plan and to consider any objections to the Plan. The confirmation hearing will be held at the **United States Bankruptcy Court, Southern District of Texas, Houston Division, Courtroom 400, 515 Rusk Street, Houston, Texas 77002.** The hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date(s) at the hearing, and, thereafter, at any adjourned hearing(s). In addition, the Plan may be modified without further notice prior to or as a result of the confirmation hearing, and, thereafter, as otherwise provided in the Bankruptcy Code.

Any objection to confirmation of the Plan must be filed on the docket of these chapter 11 cases on or before **July 27, 2016 at 4:00 p.m. (Central Time)**. Objections to confirmation of the Plan or proposed modifications to the Plan, if any, must (a) be in writing, (b) conform to the Bankruptcy Rules, (c) state the name and address of the objecting party and the amount and nature of such party's Claim or Interest, (d) state with particularity the basis and nature of any objection to the Plan, and (e) be filed, together with proof of service, on this Court's docket and served on counsel to the Debtors, proposed counsel to the official committee of unsecured creditors, counsel to the First Lien Administrative Agent, counsel to the Second Lien Trustee, and the United States Trustee for the Southern District of Texas, in each case so as to be actually received on or before 4:00 p.m. (Central Time) on July 27, 2016. **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

To the extent you also hold an Impaired Claim and therefore are entitled to vote on the Plan, the Court has fixed **July 27, 2016 at 5:00 p.m. (Central Time)** as the deadline for the receipt of Ballots evidencing the votes accepting or rejecting the Plan. Holders of Claims entitled to vote will receive solicitation materials separately.

## Plan Injunction, Releases, and Exculpation

If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and

7

exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan

A.      *Releases by the Debtors*

      **Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.**

      **Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement**

8

and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any claim or cause of action released pursuant to such releases.

B.    *Releases by Holders of Claims and Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, its Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a

9

good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

C. *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Bermuda Proceeding, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

D. *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other

10

**proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.**

## Obtaining Disclosure Statement and Plan

You may obtain copies of pleadings filed in these chapter 11 cases without charge at the Debtors' case information website, located at http://dm.epiq11.com/EXL.

US 4084140

Dated: June __, 2016
Houston, Texas

**VINSON & ELKINS LLP**

By:    */s/*_____

Harry A. Perrin (TX 15796800)
Bradley R. Foxman (TX 24065243)
Reese A. O'Connor (TX 24092910)
First City Tower
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Tel:  713.758.2222
Fax:  713.758.2346
hperrin@velaw.com; bfoxman@velaw.com;
roconnor@velaw.com

- and –

Paul E. Heath (TX 09355050)
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
pheath@velaw.com

- and –

David S. Meyer (admitted *pro hac vice*)
Jessica C. Peet (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; jpeet@velaw.com;
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS**

US 4084140

**<u>Exhibit D</u>**

**Confirmation Hearing Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 16-31928** |
| | § | |
| **ENERGY XXI LTD**, *et al.*, | § | **(Chapter 11)** |
| | § | |
| | § | **Jointly Administered** |
| **Debtors.**[1] | § | |

## NOTICE AND SCHEDULING OF CONFIRMATION HEARING

On June __, 2016, the Honorable David R. Jones, Chief United States Bankruptcy Judge for the Southern District of Texas, Houston Division at the United States Courthouse, Room 400, 515 Rusk, Houston, Texas 77002 (the "***Court***") entered the *Order (A) Approving Disclosure Statement and the Form and Manner of Service Related Thereto, (B) Setting Dates for the Objection Deadline and Hearing Relating to Confirmation of the Plan, and (C) Granting Related Relief* [Docket No. ___] (the "***Order***").   Among other things, the Order approved the *Disclosure Statement for the Debtors' Proposed Joint Chapter 11 Plan of Reorganization* [Docket No. 328] (the "***Disclosure Statement***") filed by the above-captioned debtors and debtors in possession (the "***Debtors***") in these chapter 11 cases.   In the Order, the Court found that the Disclosure Statement contains adequate information within the meaning of section 1125 of the title 11 of the United States Code (the "***Bankruptcy Code***").   You are being provided this *Notice and Scheduling of Confirmation Hearing* (the "***Notice***") with respect to the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* [Docket No. 327] (the "***Plan***").[2]

## Plan Summary

The following is an overview of the treatment to be afforded to each class of Claims or Interests as provided under the Plan.   It is provided for convenience only and is specifically qualified by the Plan itself.

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767).   The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is:   1021 Main Street, Suite 2626, Houston, Texas 77002.

[2]     Capitalized terms used in this Notice that are not otherwise defined herein  shall  have  the  meanings  given
to     them in the Plan or the Disclosure Statement.

1

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|-------|-------------|--------|---------------|------------------------------------------|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept | Each holder of an Allowed Other Priority Claim shall receive (a) payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim or (b) such other treatment as may otherwise be agreed to by such holder, the Debtors, and the Majority Restructuring Support Parties. |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept | Each holder of an Allowed Other Secured Claim shall receive, at the Debtors' election (with the consent of the Majority Restructuring Support Parties), either (a) Cash equal to the full Allowed amount of its Claim, (b) Reinstatement of such holder's Allowed Other Secured Claim, (c) the return or abandonment of the collateral securing such Allowed Other Secured Claim to such holder, or (d) such other treatment as may otherwise be agreed to by such holder, the Debtors, and the Majority Restructuring Support Parties. |
| 3 | Secured Tax Claims | Unimpaired | Presumed to Accept | Each holder of an Allowed Secured Tax Claim shall receive, at the Debtors' election (with the consent of the Majority Restructuring Support Parties), either (a) Cash equal to the full Allowed amount of its Claim, (b) Reinstatement of such holder's Allowed Secured Tax Claim, (c) the return or abandonment of the collateral securing such Allowed Secured Tax Claim to such holder, or (d) such other treatment as may otherwise be agreed to by such holder, the Debtors, and the Majority Restructuring Support Parties. |
| 4 | EXXI Holdings Promissory Note Claims | Unimpaired | Presumed to Accept | On the Effective Date, the EXXI Holdings Promissory Note Claims shall be Reinstated. |

US 4084140

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|---|---|---|---|---|
| 5 | First Lien Claims | Impaired | Entitled to Vote | Each holder of an Allowed First Lien Claim shall receive its *Pro Rata* share of (a) the Restricted Cash and (b) the Reorganized Debtors' obligations under the Exit Facility. |
| 6 | Second Lien Notes Claims | Impaired | Entitled to Vote | Each holder of an Allowed Second Lien Notes Claim shall receive its *Pro Rata* share of 100% of the New Equity, subject to dilution from New Equity issued in connection with the Management Incentive Plan and the Warrant Package. |
| 7 | EGC Unsecured Notes Claims | Impaired | Entitled to Vote | Each holder of an Allowed EGC Unsecured Notes Claim shall receive its *Pro Rata* share of the EGC Warrant Package Allocation; *provided, however* that if Class 7 votes to reject the Plan, holders of EGC Unsecured Notes Claims will not receive a distribution under the Plan. |
| 8 | EPL Unsecured Notes Claims | Impaired | Entitled to Vote | Each holder of an Allowed EPL Unsecured Notes Claim shall receive its *Pro Rata* share of the EPL Warrant Package Allocation; *provided, however* that if Class 8 votes to reject the Plan, holders of EPL Unsecured Notes Claims will not receive a distribution under the Plan. |
| 9 | EXXI Convertible Notes Claims | Impaired | Entitled to Vote | Each holder of an Allowed EXXI Convertible Notes Claims shall receive its *Pro Rata* share of the EXXI Warrant Package Allocation; *provided, however* that if Class 9 votes to reject the Plan, holders of EXXI Convertible Notes Claims will not receive a distribution under the Plan. |
| 10 | Trade Claims | Impaired | Entitled to Vote | Each holder of an Allowed Trade Claim shall, at its election, either (a) receive such holder's Trade Claim Settlement Distribution or (b) to the extent the Bankruptcy Court or another court of competent jurisdiction enters a Final Order finding that such Allowed Trade Claim is |

3

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|---|---|---|---|---|
| | | | | Secured, Cash in the amount of such Secured Allowed Trade Claim. |
| | | | | If the holder of a Trade Claim elects to receive such holder's Trade Claim Settlement Distribution, (a) such election shall constitute the Trade Claim Settlement Release, (b) such holder shall be deemed to assign its Trade Claim and any liens or security interests securing such Trade Claims to the Reorganized Debtors, and (c) the Trade Claim Settlement Distribution on account of such Trade Claim shall be made on or about the later of (i) the Effective Date and (ii) the date such Trade Claim becomes Allowed. |
| | | | | If the holder of a Trade Claim elects not to receive the Trade Claim Settlement Distribution, the first payment on account of its Trade Claim shall be made on or about the date such Trade Claim is determined to be Secured pursuant to a Final Order, on which date such Trade Claim shall become Allowed. Thereafter, the holder of such Secured Allowed Trade Claim shall receive a second and final payment for the remainder of such Secured Allowed Trade Claim on the last Business Day of the following calendar quarter. If the holder of a Trade Claim elects not to receive the Trade Claim Settlement Distribution and any portion of its Claim is determined to be Unsecured pursuant to a Final Order, such Unsecured Claim will be treated as a General Unsecured Claim. |
| 11 | General Unsecured Claims | Impaired | Entitled to Vote | Each holder of an Allowed General Unsecured Claim shall receive [●]. |

4

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|---|---|---|---|---|
| 12 | Section 510(b) Claims | Impaired | Not Entitled to Vote | Class 12 Claims, if any, shall be discharged, canceled, released, and extinguished as of the Effective Date, and shall be of no further force or effect, and holders of Section 510(b) Claims shall not receive any distribution on account of such Section 510(b) Claims. |
| 13 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote | Intercompany Claims shall be Reinstated as of the Effective Date or, at the Reorganized Debtors' option, shall be cancelled. No distribution shall be made on account of any Intercompany Claims other than in the ordinary course of business of the Reorganized Debtors, as applicable. |

5

| Class | Designation | Status | Voting Rights | Treatment of Allowed Claims or Interests |
|---|---|---|---|---|
| 14 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote | Intercompany Interests shall be Reinstated as of the Effective Date or, at the Reorganized Debtors' option, shall be cancelled. No distribution shall be made on account of any Intercompany Interests.<br><br>No distributions on account of Intercompany Interests are being made to the holders of such Intercompany Interests. Instead, to the extent Intercompany Interests are Reinstated under the Plan, such Reinstatement is solely for the purposes of administrative convenience, for the ultimate benefit of the holders of the New Equity, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims. For the avoidance of doubt: (a) to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall continue to be owned by the Reorganized Debtor that corresponds to the Debtor that owned such Intercompany Interests prior to the Effective Date; and (b) except as set forth in the Description of the Transaction Steps, no Interests in a Debtor or Non-Debtor Subsidiary, or Affiliate of a Debtor or Non-Debtor Subsidiary, held by a Non-Debtor Subsidiary or a Non-Debtor Affiliate of a Debtor will be affected by the Plan. |
| 15 | EXXI Interests | Impaired | Deemed to Reject | On the Effective Date, or as soon thereafter as reasonably practicable, all EXXI Interests will be extinguished in accordance with the Description of the Transaction Steps and the holders of EXXI Interests shall not receive or retain any distribution, property, or other value on account of their EXXI Interests. |

6

## Executory Contracts and Unexpired Leases

As of the Plan's effective date, the Debtors will reject only those executory contracts and unexpired leases specifically identified by the Debtors on a schedule to be filed with the Court as part of the Plan Supplement no later than ten (10) business days prior to the hearing on the confirmation of the Plan (or such later date as may be approved by the Court). All executory contracts and unexpired leases not specifically rejected by the Debtors shall be assumed. As to executory contracts and unexpired leases to be assumed or rejected pursuant to the Plan, the confirmation order will constitute an order of the Court under section 365 of the Bankruptcy Code approving the assumption or rejection of such contracts and leases.

## Relevant Deadlines

The Court has set **August 3, 2016 at 9:00 a.m. (Central Time)** as the date and time for hearing on confirmation of the Plan and to consider any objections to the Plan. The confirmation hearing will be held at the **United States Bankruptcy Court, Southern District of Texas, Houston Division, Courtroom 400, 515 Rusk Street, Houston, Texas 77002.** The hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date(s) at the hearing, and, thereafter, at any adjourned hearing(s). In addition, the Plan may be modified without further notice prior to or as a result of the confirmation hearing, and, thereafter, as otherwise provided in the Bankruptcy Code.

Any objection to confirmation of the Plan must be filed on the docket of these chapter 11 cases on or before **July 27, 2016 at 4:00 p.m. (Central Time)**. Objections to confirmation of the Plan or proposed modifications to the Plan, if any, must (a) be in writing, (b) conform to the Bankruptcy Rules, (c) state the name and address of the objecting party and the amount and nature of such party's Claim or Interest, (d) state with particularity the basis and nature of any objection to the Plan, and (e) be filed, together with proof of service, on this Court's docket and served on counsel to the Debtors, proposed counsel to the official committee of unsecured creditors, counsel to the First Lien Administrative Agent, counsel to the Second Lien Trustee, and the United States Trustee for the Southern District of Texas, in each case so as to be actually received on or before 4:00 p.m. (Central Time) on July 27, 2016. **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

To the extent you also hold an Impaired Claim and therefore are entitled to vote on the Plan, the Court has fixed **July 27, 2016 at 5:00 p.m. (Central Time)** as the deadline for the receipt of Ballots evidencing the votes accepting or rejecting the Plan. Holders of Claims entitled to vote will receive solicitation materials separately.

## Plan Injunction, Releases, and Exculpation

If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and

7

exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan

A.    *Releases by the Debtors*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement

8

and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any claim or cause of action released pursuant to such releases.

B.    *Releases by Holders of Claims and Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, its Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a

9

good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

C.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Bermuda Proceeding, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

D.    *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other

**proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.**

## <u>Obtaining Disclosure Statement and Plan</u>

You may obtain copies of pleadings filed in these chapter 11 cases without charge at the Debtors' case information website, located at http://dm.epiq11.com/EXL.

US 4084140

Dated: June __, 2016
Houston, Texas

**VINSON & ELKINS LLP**

By:    */s/*_____
Harry A. Perrin (TX 15796800)
Bradley R. Foxman (TX 24065243)
Reese A. O'Connor (TX 24092910)
First City Tower
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Tel:  713.758.2222
Fax:  713.758.2346
hperrin@velaw.com; bfoxman@velaw.com;
roconnor@velaw.com

- and –

Paul E. Heath (TX 09355050)
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
pheath@velaw.com

- and –

David S. Meyer (admitted *pro hac vice*)
Jessica C. Peet (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; jpeet@velaw.com;
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS**

12

**<u>Exhibit E</u>**

**Disclosure Statement Hearing Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Case No. 16-31928** |
| | § | |
| **ENERGY XXI LTD,** *et al.,* | § | **(Chapter 11)** |
| | § | |
| | § | **Jointly Administered** |
| Debtors.[1] | § | **Related to Docket No. 238** |

## NOTICE OF DISCLOSURE STATEMENT HEARING

**PLEASE TAKE NOTICE** that on May 20, 2016, the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") filed the (a) *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* [Docket No. 327] (as may be modified, amended, or supplemented from time to time, the "***Plan***") and (b) *Disclosure Statement for the Debtors' Proposed Joint Chapter 11 Plan of Reorganization* [Docket No. 328], including all exhibits and schedules thereto (as may be modified, amended, or supplemented from time to time, the "***Disclosure Statement***").[2]

**PLEASE TAKE FURTHER NOTICE** that on May 20, 2016, the Debtors filed the *Motion for Entry of an Order (A) Approving Disclosure Statement and the Form and Manner of Service Related Thereto, (B) Setting Dates for the Objection Deadline and Hearing Relating to Confirmation of the Plan, and (C) Granting Related Relief* [Docket No. __] (the "***Motion***") (a) scheduling dates and deadlines in connection with the approval of the Disclosure Statement and the confirmation of the Plan and (b) establishing certain protocols in connection with the approval of the Disclosure Statement and the confirmation of the Plan.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Disclosure Statement and the Motion (the "***Disclosure Statement Hearing***") will be held at **1:00 p.m. (Central Time) on June 23, 2016** before the Honorable David R. Jones, Chief United States Bankruptcy Judge at the United States Bankruptcy Court, Southern District of Texas, Houston Division, Courtroom 400, 515 Rusk Street, Houston, Texas 77002 (the "***Court***"). Please be advised that the Disclosure Statement Hearing may be continued from time to time by the court or the Debtors without further notice other

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 1021 Main Street, Suite 2626, Houston, Texas 77002.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable. The Debtors reserve the right to file an amended Plan and Disclosure Statement and to amend, supplement, or modify such documents further.

US 4084140

than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on the list of parties entitled to notice.

      **PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Motion, or related documents, please contact the Debtors' solicitation agent, Epiq Bankruptcy Solutions, LLC (the "***Solicitation Agent***"), (a) by calling (646) 282-2500 or (866) 734-9393 (toll free), or (b) by sending an email to tabulation@epiqsystems.com with "EXXI" in the subject line and requesting a copy be provided to you.  You may also obtain copies of such documents free of charge by visiting the Solicitation Agent's website at http://dm.epiq11.com/EXL.

      **PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the Disclosure Statement and the Motion is **June 17, 2016 at 4:00 p.m. (Central Time)**.   Any objections to the relief sought in the Motion must: (a) be in writing, (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court, (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Disclosure Statement (or related materials) that would resolve such objection, and (d) be filed with the Court and served upon counsel to the Debtors, proposed counsel to the official committee of unsecured creditors, counsel to the First Lien Administrative Agent, counsel to the Second Lien Trustee, and the United States Trustee for the Southern District of Texas, so as to be actually received on or before **June 17, 2016 at 4:00 p.m. (Central Time)**.

2

Dated: May __, 2016
Houston, Texas

**VINSON & ELKINS LLP**

By:     _/s/_____

Harry A. Perrin (TX 15796800)
Bradley R. Foxman (TX 24065243)
Reese A. O'Connor (TX 24092910)
First City Tower
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Tel:  713.758.2222
Fax:  713.758.2346
hperrin@velaw.com; bfoxman@velaw.com;
roconnor@velaw.com

- and –

Paul E. Heath (TX 09355050)
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
pheath@velaw.com

- and –

David S. Meyer (admitted *pro hac vice*)
Jessica C. Peet (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; jpeet@velaw.com;
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS**

US 4084140

**<u>Exhibit F-1</u>**

**Class 5 Ballot: First Lien Claims**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 16-31928 |
| | § | |
| ENERGY XXI LTD, *et al.*, | § | (Chapter 11) |
| | § | |
| Debtors.[1] | § | Jointly Administered |

BALLOT FOR HOLDERS OF
FIRST LIEN CLAIMS TO ACCEPT OR REJECT THE PLAN

CLASS 5: FIRST LIEN CLAIMS

Only holders of First Lien Claims
may vote to accept or reject the Plan using this Ballot.

---

THE VOTING DEADLINE TO ACCEPT OR REJECT THE
PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016
(THE "*VOTING DEADLINE*"), UNLESS EXTENDED BY
THE DEBTORS.  THIS BALLOT MUST BE ACTUALLY
RECEIVED BY THE SOLICITATION AGENT (AS
DEFINED BELOW) BY THE VOTING DEADLINE.

---

This ballot (the "***Ballot***") is provided to you to solicit your vote to accept or reject the
*Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "***Plan***").  Capitalized terms
used in this Ballot or the attached instructions that are not otherwise defined herein shall have the
meanings given to them in the Plan or the Disclosure Statement (as defined below).

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of June
17, 2016 (the "***Voting Record Date***"), a holder of a claim (a "***Holder***") against the Debtors
arising under that certain Second Amended and Restated First Lien Credit Agreement, dated as

---

[1]     The debtors in these chapter 11 cases (collectively, the "***Debtors***") and the last four digits of their
respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562),
Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027),
Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy
XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517),
Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC
(5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas
Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas,
Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS
Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (0956), and
Soileau Catering, LLC (2767).  The location of the Debtors' U.S. corporate headquarters and the Debtors'
service address is:  1021 Main Street, Suite 2626, Houston, Texas 77002.

US 4084140

of May 5, 2011, by and among Energy XXI Gulf Coast, Inc., each of the guarantors party thereto, Wells Fargo Bank, N.A., as administrative agent, and the lenders and agents from time-to-time party thereto, including all agreements, notes, instruments, and any other documents delivered pursuant thereto or in connection therewith (in each case, as amended, modified, or supplemented from time to time) (the "***First Lien Claims***").

The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (the "***Disclosure Statement***"), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Epiq Bankruptcy Solutions, LLC (the "***Solicitation Agent***") by visiting the Solicitation Agent's website at http://dm.epiq11.com/EXL, calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an email to tabulation@epiqsystems.com with "EXXI" in the subject line and requesting a copy be provided to you. You should review the Disclosure Statement and the Plan carefully before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

On April 14, 2016, the Debtors each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***"). The Debtors intend to seek the Plan's prompt confirmation by the Court. The Plan can be confirmed by the Court and thereafter made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the class or classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

---

**IMPORTANT NOTICE**
**REGARDING TREATMENT FOR CLASS 5**

Claims in Class 5 consist solely of First Lien Claims.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, each holder of an Allowed First Lien Claim shall receive, on account of such Allowed First Lien Claim and at the option of the Debtors or Reorganized Debtors, as applicable, its *Pro Rata* share of (a) the Restricted Cash and (b) the Reorganized Debtors' obligations under the Exit Facility.

**PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.**

---

2

US 4084140

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

PLEASE COMPLETE ITEMS 2, 3, AND 4. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1. Principal Amount of Claim**. The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such holder) of a First Lien Claim in the aggregate unpaid <u>principal</u> amount inserted into the box below, without regard to any accrued but unpaid interest.

$

**Item 2. Votes on the Plan**. Please vote either to accept or to reject the Plan with respect to your Claims in Class 5 below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**

**If you (a) do not vote either to accept or reject the Plan, or (b) vote to reject the Plan and do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

---

**First Lien Claim Holder's Vote on the Plan**. The undersigned holder of a Class 5 First Lien Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan            ☐ **Reject** the Plan

3

**Item 3. Optional Release Election**.  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.  If you voted to reject the Plan in Item 2 above, or you abstained from voting, you must check the box below to elect not to grant the releases contained in Article VIII of the Plan.  Election to withhold consent is at your option.  If you submit your Ballot without checking the box below, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.

☐      The undersigned elects <u>NOT</u> to grant the releases contained in Article VIII of the Plan.

**Item 4. Certifications and Acknowledgments**.  By signing this Ballot, the holder (or authorized signatory of such holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (a) it has the power and authority to vote to accept or reject the Plan, (b) it was the holder (or is entitled to vote on behalf of such holder) of the First Lien Claim described in Item 1 as of the Voting Record Date, and if it has submitted any other Ballots for other Class 5 First Lien Claims held in other accounts or other record names that such Ballots indicate the <u>same</u> vote to accept or reject the Plan, and (c) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.  The undersigned also understands that if it has submitted Ballots for other First Lien Claims, whether held in other accounts or other record names, and such Ballots indicate <u>different</u> votes to accept or reject the Plan, then such Ballots will not be counted.

_____

Name of Holder

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR COMPLETED BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.  PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN THE RETURN ENVELOPE PROVIDED OR AS FOLLOWS:**

| If by First Class Mail to: | If by Overnight Courier or Personal Delivery: |
|---|---|
| EXXI BALLOTING PROCESSING c/o Epiq Bankruptcy Solutions, LLC P.O. Box 4422 Beaverton, OR 97076-4422 | EXXI BALLOT PROCESSING c/o Epiq Bankruptcy Solutions, LLC 10300 SW Allen Boulevard Beaverton, OR 97005 |

**BALLOTS RECEIVED VIA EMAIL OR FACSIMILE WILL NOT BE COUNTED.**

**TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016.**

US 4084140

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE.

## <u>VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT</u>

1.    Complete the Ballot by providing all the information requested and sign, date, and return the Ballot in the envelope provided to the Solicitation Agent.  Any Ballot that is illegible, contains insufficient information to identify the holder, does not contain an original signature, or is unsigned will not be counted.

       **The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline**.  Ballots may not be submitted to the Solicitation Agent by facsimile or email.

2.    If neither the "accept" nor "reject" box is checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted.  If both the "accept" and "reject" box is checked in Item 2, the Ballot will not be counted.

3.    You must vote all your Class 5 First Lien Claims under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different First Lien Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.    If you voted to reject the Plan and elect not to grant the releases contained in Article VIII of the Plan, check the box in Item 3.  Election to withhold consent is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

5.    If you vote to accept the Plan by checking the "accept" box in Item 2, but you also check the box in Item 3, your election not to grant the releases will not be counted, as your vote in favor of the Plan shall be deemed a consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

6.    The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

7.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

US 4084140

8.     If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent will supersede any prior Ballot.

9.     In the event that (a) the Debtors revoke or withdraw the Plan or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10.    There may be changes made to the Plan that do not cause material adverse effects on an accepting class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE COURT.

12.    PLEASE RETURN YOUR BALLOT PROMPTLY TO THE SOLICITATION AGENT IN THE ENVELOPE PROVIDED.

13.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE SOLICITATION AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR SEND AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE COURT.

14.    THE SOLICITATION AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR COMPLETED BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

| If by First Class Mail to: | If by Overnight Courier or Personal Delivery: |
|---|---|
| EXXI BALLOT PROCESSING<br>c/o Epiq Bankruptcy Solutions, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | EXXI BALLOT PROCESSING<br>c/o Epiq Bankruptcy Solutions, LLC<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |

**TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016**

US 4084140

## Schedule 1

### Plan Injunction, Releases, and Exculpation

If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

A. *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any**

8

Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any claim or cause of action released pursuant to such releases.

B.      *Releases by Holders of Claims and Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, its Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

C.      *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Bermuda Proceeding, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

D.      *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of

the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.

**Exhibit F-2**

**Class 6 Beneficial Owner Ballot: Second Lien Notes Claims**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 16-31928 |
| | § | |
| ENERGY XXI LTD, *et al.*, | § | (Chapter 11) |
| | § | |
| | § | Jointly Administered |
| Debtors.[1] | § | |

BALLOT FOR BENEFICIAL OWNERS OF
SECOND LIEN NOTES CLAIMS TO ACCEPT OR REJECT THE PLAN

CLASS 6: SECOND LIEN NOTES CLAIMS

Only Beneficial Owners of Second Lien Notes
Claims may vote to accept or reject the Plan using this Ballot.

THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016 (THE "*VOTING DEADLINE*"), UNLESS EXTENDED BY THE DEBTORS. IF YOU ARE RETURNING YOUR BALLOT TO YOUR VOTING NOMINEE (AS DEFINED BELOW), YOU MUST RETURN IT BY THE DEADLINE PROVIDED BY YOUR VOTING NOMINEE OR OTHERWISE ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE SOLICITATION AGENT BY THE VOTING DEADLINE FOR YOUR VOTE TO BE COUNTED.

---

[1] The debtors in these chapter 11 cases (collectively, the "*Debtors*") and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy EPL Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 1021 Main Street, Suite 2626, Houston, Texas 77002.

US 4084140

This ballot (the "***Ballot***") is provided to you to solicit your vote to accept or reject the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "***Plan***"). Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings given to them in the Plan or the Disclosure Statement (as defined below).

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of June 17, 2016 (the "***Voting Record Date***"), a beneficial owner of a Claim (a "***Beneficial Owner***") against the Debtors arising under that certain Indenture, dated as of March 12, 2015, among Energy XXI Gulf Coast, Inc., each of the guarantors party thereto, and U.S. Bank, N.A., as indenture trustee, including all agreements, notes, instruments, and any other documents delivered pursuant thereto or in connection therewith (in each case, as amended, modified, or supplemented from time to time). Only Beneficial Owners of Second Lien Notes Claims may vote to accept or reject the Plan using this Ballot.

The Plan is attached as **Exhibit A** to the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (the "***Disclosure Statement***"), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Epiq Bankruptcy Solutions, LLC (the "***Solicitation Agent***") by visiting the Solicitation Agent's website at http://dm.epiq11.com/EXL, calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an email to tabulation@epiqsystems.com with "EXXI" in the subject line and requesting a copy be provided to you. You should review the Disclosure Statement and the Plan carefully before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

On April 14, 2016, the Debtors each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***"). The Debtors intend to seek the Plan's prompt confirmation by the Court. The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the class or classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to your broker, dealer, commercial bank, trust company, or other agent or nominee ("***Voting Nominee***") for return to the Solicitation Agent by the Voting Deadline.

2

> **IMPORTANT NOTICE**
> **REGARDING TREATMENT FOR CLASS 6**
>
> Claims in Class 6 consist of Second Lien Notes Claims.
>
> As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, each Beneficial Owner of an Allowed Second Lien Notes Claim shall receive its *Pro Rata* share of 100% of the New Equity on account of such Allowed Second Lien Notes Claim, subject to dilution from New Equity issued in connection with the Management Incentive Plan and the Warrant Package.
>
> **PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.**

3

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEMS 1, 2, 3, 4, AND 5. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 5. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Principal Amount of Claim**. The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Owner (or authorized signatory of such an Beneficial Owner) of a Second Lien Notes Claim in the aggregate unpaid <u>principal</u> amount inserted into the box below, without regard to any accrued but unpaid interest.  If your Second Lien Notes Claim is held by a Voting Nominee on your behalf and you do not know the principal amount of the Second Lien Notes Claim held, please contact your Voting Nominee immediately to obtain the amount.

$

**Item 2. Votes on the Plan**. Please vote either to accept or to reject the Plan with respect to your Claims in Class 6 below. Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**

**If you (a) do not vote either to accept or reject the Plan, or (b) vote to reject the Plan and do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

**Second Lien Notes Claim Holder's Vote on the Plan**. The undersigned Beneficial Owner of a Class 6 Second Lien Notes Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

4

**Item 3. Optional Release Election**.  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.  If you voted to reject the Plan in Item 2 above, or you abstained from voting, you must check the box below to elect <u>not</u> to grant the releases contained in Article VIII of the Plan.  Election to withhold consent is at your option.  If you submit your Ballot without checking the box below, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.

> ☐　　The undersigned elects <u>NOT</u> to grant the releases contained in Article VIII of the Plan.

**Item 4. Certification as to Class 6 Second Lien Notes Claims Held in Additional Accounts**. The undersigned hereby certifies that either (a) it has not submitted any other Ballots for other Class 6 Second Lien Notes Claims held in other accounts or other record names, or (b) if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan.  If the undersigned has submitted Ballots for other such Claims, then the undersigned certifies the accuracy of the information provided below as to such other Claims.

| Account Number | Name of Holder (Insert Name of Bank or Broker if Second Lien Notes are Held Through a Voting Nominee) | Amount of Other Class 6 Claims Voted |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |

**Item 5. Acknowledgments**. By signing this Ballot, the Beneficial Owner (or authorized signatory of such Beneficial Owner) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (a) it has the power and authority to vote to accept or reject the Plan, (b) it was the Beneficial Owner (or is entitled to vote on behalf of such Beneficial Owner) of the Second Lien Notes Claim described in Item 1 as of the Voting Record Date, and if it has submitted any other Ballots for other Class 6 Second Lien Notes Claims held in other accounts or other record names that it has provided the information requested above in Item 4, (c) if delivered to a Voting Nominee, such Beneficial Owner authorizes its Voting Nominee to treat this Ballot as a direction to include its Claim as a Class 6 Second Lien Notes Claim on the Master Ballot, and (d) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted. The undersigned also understands that if it has submitted Ballots for other Class 6 Second Lien Notes Claims, whether held in other accounts or other record names, and such Ballots indicate <u>different</u> votes to accept or reject the Plan, then all such Ballots will not be counted.

 

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

6

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016.**

**IF YOU RECEIVED A RETURN BALLOT ADDRESSED TO THE SOLICITATION AGENT, PLEASE COMPLETE, AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR VOTING NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR VOTING NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR VOTING NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE.**

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE.

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.    Complete the Ballot by providing all the information requested and sign, date, and return the Ballot in the envelope provided or as indicated by your Voting Nominee.  Any Ballot that is illegible, contains insufficient information to identify the holder, does not contain an original signature, or is unsigned will not be counted.

      **The Solicitation Agent will tabulate all properly completed Ballots and Master Ballots received on or before the Voting Deadline.  IF YOU ARE RETURNING YOUR BALLOT TO YOUR VOTING NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR VOTING NOMINEE OR OTHERWISE ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE SOLICITATION AGENT BY THE VOTING DEADLINE.** Ballots and Master Ballots may not be submitted to the Solicitation Agent by facsimile or email.

2.    If neither the "accept" nor "reject" box is checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted.  If both the "accept" and "reject" box is checked in Item 2, the Ballot will not be counted.

3.    You must vote all your Class 6 Second Lien Notes Claims under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different Second Lien Notes Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.    If you voted to reject the Plan and elect not to grant the releases contained in Article VIII of the Plan, check the box in Item 3.  Election to withhold consent is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

5.    If you vote to accept the Plan by checking the "accept" box in Item 2, but you also check the box in Item 3, your election not to grant the releases will not be counted, as your vote in favor of the Plan shall be deemed a consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

6.    The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

7.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.    If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent will supersede any prior Ballot.

9.    In the event that (a) the Debtors revoke or withdraw the Plan or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10.    There may be changes made to the Plan that do not cause material adverse effects on an accepting class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE COURT.

12.    PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED BY YOUR BANK, BROKER, OR VOTING NOMINEE.

13.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE SOLICITATION AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR SEND AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE COURT.

14.    THE SOLICITATION AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

## Schedule 1

### Plan Injunction, Releases, and Exculpation

If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

A.      *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective**

Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any claim or cause of action released pursuant to such releases.

B.    *Releases by Holders of Claims and Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, its Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of

11

Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

C.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Bermuda Proceeding, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful

12

misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

D.      *Injunction*

        Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.

**<u>Exhibit F-3</u>**

**Class 6 Master Ballot: Second Lien Notes Claims**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 16-31928 |
| | § | |
| ENERGY XXI LTD, *et al.*, | § | (Chapter 11) |
| | § | |
| Debtors.[1] | § | Jointly Administered |

## MASTER BALLOT FOR
## ACCEPTING OR REJECTING THE PLAN

### CLASS 6: SECOND LIEN NOTES CLAIMS

> THE VOTING DEADLINE TO ACCEPT OR REJECT THE
> PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016
> (THE "*VOTING DEADLINE*"), UNLESS EXTENDED BY
> THE DEBTORS. THIS MASTER BALLOT MUST BE
> ACTUALLY RECEIVED BY THE SOLICITATION AGENT
> (AS DEFINED BELOW) BY THE VOTING DEADLINE.

This master ballot (the "***Master Ballot***") is being submitted to brokers, dealers, commercial banks, trust companies, or other agents or nominees ("***Voting Nominees***") of a beneficial owner (a "***Beneficial Owner***") of a Claim ("***Second Lien Notes Claim***") against the Debtors arising under that certain Indenture, dated as of March 12, 2015, among Energy XXI Gulf Coast, Inc., each of the guarantors party thereto, and U.S. Bank, N.A., as indenture trustee, including all agreements, notes, instruments, and any other documents delivered pursuant thereto or in connection therewith (in each case, as amended, modified, or supplemented from time to time).

Voting Nominees should use this Master Ballot to tabulate votes on behalf of Beneficial Owners to accept or reject the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "***Plan***") proposed by the Debtors. Unless otherwise defined in this Master Ballot, capitalized

---

[1]     The debtors in these chapter 11 cases (collectively, the "***Debtors***") and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 1021 Main Street, Suite 2626, Houston, Texas 77002.

terms used in this Master Ballot or the attached instructions shall have the meanings given to them in the Plan or the Disclosure Statement (as defined below).

The only holders of Second Lien Notes Claims entitled to cast a vote on the Plan through this Master Ballot are those holders that are the Beneficial Owners of Claims, as of June 17, 2016 (the "***Voting Record Date***"), as reflected in the records maintained by Voting Nominees holding through The Depository Trust Company, or other relevant security depositor or the indenture trustee.

The Plan is attached as **Exhibit A** to the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (the "***Disclosure Statement***"), which accompanies this Master Ballot.  The Disclosure Statement provides information to assist holders of Claims in deciding whether to accept or reject the Plan.  If you or a Holder do not have a Disclosure Statement, you may obtain a copy from Epiq Bankruptcy Solutions, LLC (the "***Solicitation Agent***") by visiting the Solicitation Agent's website at http://dm.epiq11.com/EXL, calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an email to tabulation@epiqsystems.com with "EXXI" in the subject line.  Upon receipt of these materials, you should immediately forward to the Beneficial Owners the Disclosure Statement, and the form of ballot for such holders (the "***Beneficial Owner Ballot***") with a return envelope addressed to you, as provided in the attached instructions.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT.**

2

PLEASE COMPLETE ALL OF THE ITEMS BELOW. IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY COMPLETED, THE VOTES OF THE BENEFICIAL OWNERS MAY NOT BE COUNTED.

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a Voting Nominee for the Beneficial Owners in the principal amount of the Second Lien Notes listed in Item 2 below, and is the registered holder of such Class 6 Second Lien Notes Claims, respectively;

☐ is acting under a power of attorney or agency (a copy of which must be provided upon request) granted by a Voting Nominee that is the registered holder of the Second Lien Notes in the principal amount listed in Item 2 below; or

☐ has been granted a proxy (an original of which is annexed hereto) from a Voting Nominee, or a Beneficial Owner, that is the registered holder of the principal amount of the Second Lien Notes listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the Class 6 Second Lien Notes Claims described in Item 2 below.

**Items 2. Vote on the Plan.**

The undersigned transmits the following votes of Beneficial Owners in respect of their Class 6 Second Lien Notes Claims, and certifies that the following Beneficial Owners, as identified by their respective customer account numbers set forth below, are Beneficial Owners as of the Voting Record Date and have delivered to the undersigned, as Voting Nominee, Beneficial Owner Ballots casting such votes.[2]

| Your Customer Account Number for Each Beneficial Owner of Class 6 Second Lien Notes Claims that Voted | Principal Amount of Secured Notes Claims Held by Your Customer | Vote on Plan Class 6 Vote | | Item 3 If the box in Item 3 of the Beneficial Owner Ballot was completed, place an "x" in the column below |
|---|---|---|---|---|
| | | ACCEPT | REJECT | |
| 1. | $ | ☐ | ☐ | ☐ |
| 2. | $ | ☐ | ☐ | ☐ |
| 3. | $ | ☐ | ☐ | ☐ |
| 4. | $ | ☐ | ☐ | ☐ |
| 5. | $ | ☐ | ☐ | ☐ |
| 6. | $ | ☐ | ☐ | ☐ |
| 7. | $ | ☐ | ☐ | ☐ |
| 8. | $ | ☐ | ☐ | ☐ |
| 9. | $ | ☐ | ☐ | ☐ |
| 10. | $ | ☐ | ☐ | ☐ |

---

[2] Indicate in the appropriate column the principal amount of the Second Lien Notes Claims voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note each Beneficial Owner must vote all of such Beneficial Owner's Class 6 Second Lien Notes Claims to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Owner that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and that has not been corrected by the Voting Deadline, shall not be counted.  If a holder submits ballots for multiple Class 6 Second Lien Notes Claims, whether held in other accounts or other record names, and such ballots indicate different votes to accept or reject the Plan, then all such ballots will not be counted.

4

US 4084140

**Item 3. Certification as to Transcription of Information from Item 4 of the Beneficial Owner Ballots as to Class 6 Second Lien Notes Claims Voted Through Other Ballots.**

The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Owners have provided in Item 4 of the Beneficial Owner Ballot, identifying any Class 6 Second Lien Notes Claims for which such Beneficial Owners have submitted other ballots (other than to the undersigned):

| Your Customer Account Number for Each Beneficial Owner That Completed Item 3 of the Beneficial Owner Ballot | TRANSCRIBE FROM ITEM 3 OF THE BALLOTS: | | |
|---|---|---|---|
| | Account Number | Name of Holder | Principal Amount of Other Class 6 Second Lien Notes Claims Voted |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |

5

**Item 4. Certification.**

By signing this Master Ballot, the undersigned certifies that:

(a)     (1) the undersigned has received a copy of the Disclosure Statement, the Master Ballot, and the Beneficial Owner Ballot, and has delivered the Disclosure Statement and the Beneficial Owner Ballot to Beneficial Owners of Class 6 Second Lien Notes Claims through the undersigned with a return envelope; (2) the undersigned has received a completed and signed Beneficial Owner Ballot from each such Beneficial Owner as provided in this Master Ballot; (3) the undersigned is the registered holder of the securities being voted or agent thereof; and (4) the undersigned has been authorized by each such Beneficial Owner to vote on the Plan and to make applicable elections;

(b)     the undersigned has properly disclosed: (1) the number of Beneficial Owners voting Class 6 Second Lien Notes Claims through the undersigned; (2) the respective amounts of Class 6 Second Lien Notes Claims owned by each such Beneficial Owner; (3) each such Beneficial Owner's respective vote concerning the Plan; and (4) the customer account or other identification number for each such Beneficial Owner;

(c)     if the undersigned is a Beneficial Owner and uses this Master Ballot to vote the undersigned's Class 6 Second Lien Notes Claims, the undersigned confirms and attests to each of the certifications in Item 5 of the Beneficial Owner Ballot;

(d)     each such Beneficial Owner has certified to the undersigned that the such Beneficial Owner is a Beneficial Owner and is otherwise eligible to vote on the Plan; and

(e)     the undersigned will maintain Beneficial Owner Ballots and evidence of separate transactions returned by Beneficial Owners (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Court or the Debtors, as the case may be, if so ordered.

**Item 5. Voting Nominee Information and Signature.**

Name of Bank, Broker, or Other Nominee:

_____

(Print or Type)

Participant Number: _____

Name of Proxy Holder or Agent for Bank, Broker, or Other Nominee (if applicable):

_____

(Print or Type)

_____

Signature:

Name of Signatory: _____

Title: _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

Date Completed: _____

**YOUR COMPLETED MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

**EXXI BALLOT PROCESSING**
**C/O EPIQ BANKRUPTCY SOLUTIONS, LLC**
**777 THIRD AVENUE, 12TH FLOOR**
**NEW YORK, NY 10017**

**BALLOTS RECEIVED VIA EMAIL OR FACSIMILE WILL NOT BE COUNTED.**

**TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016.**

IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE.

US 4084140

## MASTER BALLOT INSTRUCTIONS

1.     If a Voting Nominee is transmitting the votes of any Beneficial Owner of Class 6 Second Lien Note Claims, such Voting Nominee may do one of the following:

a.     "Pre-validate" the individual Ballot contained in the Solicitation Package and forward the Solicitation Package to the Beneficial Owner of the Class 6 Second Lien Note Claim for voting within five business days after the receipt by such Voting Nominee of the Solicitation Package.  A Voting Nominee "pre-validates" a Beneficial Owner Ballot by signing the Beneficial Owner Ballot, including their Depository Trust Company participant number, indicating the account number of the Beneficial Owner and the principal amount of Class 6 Second Lien Note Claim held by the Voting Nominee for such Beneficial Owner, and forwarding the Beneficial Owner Ballot, together with the Solicitation Package, to the Beneficial Owner.  The Beneficial Owner shall then complete the information requested on the Beneficial Owner Ballot and return the Beneficial Owner Ballot directly to the Solicitation Agent the return envelope provided in the Solicitation Package.  A list of Beneficial Owners to whom "pre-validated" Beneficial Owner Ballots were delivered should be maintained by Voting Nominees for inspection for at least one year.

b.     Within five business days after receipt by such Voting Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Owner of the Class 6 Second Lien Notes Claims for voting along with a return envelope provided by and addressed to the Voting Nominee.  The Beneficial Owner shall then return the individual Beneficial Owner Ballot to the Voting Nominee.  In such case, the Voting Nominee will tabulate the votes of its respective Beneficial Owners on a Master Ballot that will be provided to the Voting Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in  the Master Ballot, and thereafter return the Master Ballot to the Solicitation Agent.  The Voting Nominee should advise the Beneficial Owner to return their individual Beneficial Owner Ballots to the Voting Nominee by a date calculated by the Voting Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is <u>actually received</u> by the Solicitation Agent on or before the Voting Deadline.

2.     The Plan can be confirmed by the Court and thereby made binding upon you and the Beneficial Owners if it is accepted by the holders of two-thirds of the aggregate principal amount and more than one half in number of Claims in each class that votes on the Plan, and if it otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court may nonetheless confirm the Plan if it finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

US 4084140

3.      With regard to any Beneficial Owner Ballots returned to you, to have the vote of your Beneficial Owners count, you must:  (a) retain such Beneficial Owner Ballots in your files and transfer the requested information from each such Beneficial Owner Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Solicitation Agent in accordance with these instructions.

4.      Please keep any records of Beneficial Owner Ballots for at least one year after the Voting Deadline (or such other date as is set by subsequent Court order). You may be ordered to produce the Beneficial Owner Ballots to the Debtors or the Court.

5.      If you are both the Voting Nominee and Beneficial Owner and you wish to vote such Class 6 Second Lien Notes Claims for which you are a Beneficial Owner, you may return either a Beneficial Owner Ballot or the Master Ballot for such Class 6 Second Lien Notes Claims.

6.      The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

7.      The Master Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

8.      The following ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Owner's customer account or other identification number for the Beneficial Owner, (b) any ballot cast by a Person that does not hold a Claim or Interest in a class entitled to vote on the Plan, (c) any unsigned ballot, (d) any ballot that does not contain an original signature, (e) any ballot not marked to accept or reject the Plan, and any ballot indicating both acceptance and rejection of the Plan.

9.      If a Beneficial Owner submits ballots for multiple Class 6 Second Lien Notes Claims, whether held in other accounts or other record names, and such ballots indicate different votes to accept or reject the Plan, then all such ballots will not be counted.

10.     If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  The method of delivery of the Master Ballot to the Solicitation agent is at your election and risk.

11.     The Master Ballot should not be sent to the Debtors, the United States Trustee for the Southern District of Texas, or the Debtors' financial or legal advisors.

        There may be changes made to the Plan that do not cause material adverse effects on an accepting class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9

**<u>Exhibit F-4</u>**

**Class 7 Beneficial Owner Ballot: EGC Unsecured Notes Claims**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 16-31928** |
| | § | |
| **ENERGY XXI LTD**, *et al.*, | § | **(Chapter 11)** |
| | § | |
| | § | **Jointly Administered** |
| **Debtors.**[1] | § | |

### BALLOT FOR BENEFICIAL OWNERS OF
### EGC UNSECURED NOTES CLAIMS TO ACCEPT OR REJECT THE PLAN

### CLASS 7: EGC UNSECURED NOTES CLAIMS

**Only Beneficial Owners of EGC Unsecured Notes
Claims may vote to accept or reject the Plan using this Ballot.**

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016 (THE "*VOTING DEADLINE*"), UNLESS EXTENDED BY THE DEBTORS. IF YOU ARE RETURNING YOUR BALLOT TO YOUR VOTING NOMINEE (AS DEFINED BELOW), YOU MUST RETURN IT BY THE DEADLINE PROVIDED BY YOUR VOTING NOMINEE OR OTHERWISE ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE SOLICITATION AGENT BY THE VOTING DEADLINE FOR YOUR VOTE TO BE COUNTED.**

---

[1] The debtors in these chapter 11 cases (collectively, the "*Debtors*") and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 1021 Main Street, Suite 2626, Houston, Texas 77002.

1

This ballot (the "**_Ballot_**") is provided to you to solicit your vote to accept or reject the _Debtors' Proposed Joint Chapter 11 Plan of Reorganization_ (the "**_Plan_**"). Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings given to them in the Plan or the Disclosure Statement (as defined below).

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of June 17, 2016 (the "**_Voting Record Date_**"), a beneficial owner (a "**_Beneficial Owner_**") of a Claim (collectively, "**_EGC Unsecured Notes Claims_**") against the Debtors arising under (a) that certain indenture, dated May 27, 2014, among Energy XXI Gulf Coast, Inc., the guarantors, and Wilmington Trust, N.A., as trustee, (b) that certain indenture, dated September 26, 2013, among Energy XXI Gulf Coast, Inc., the guarantors, and Wilmington Trust, N.A., as trustee, or (c) that certain indenture, dated February 25, 2011, among Energy XXI Gulf Coast, Inc., the guarantors, and Wilmington Trust, N.A., as trustee, including all agreements, notes, instruments, and any other documents delivered pursuant thereto or in connection therewith (in each case, as amended, modified, or supplemented from time to time). Only Beneficial Owners of EGC Unsecured Notes Claims may vote to accept or reject the Plan using this Ballot.

The Plan is attached as **<u>Exhibit A</u>** to the _Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization_ (the "**_Disclosure Statement_**"), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Epiq Bankruptcy Solutions, LLC (the "**_Solicitation Agent_**") by visiting the Solicitation Agent's website at http://dm.epiq11.com/EXL, calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an email to tabulation@epiqsystems.com with "EXXI" in the subject line and requesting a copy be provided to you. You should review the Disclosure Statement and the Plan carefully before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

On April 14, 2016, the Debtors each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "**_Bankruptcy Code_**"). The Debtors intend to seek the Plan's prompt confirmation by the Court. The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the class or classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to your broker, dealer, commercial bank, trust company, or other agent or nominee ("**_Voting Nominee_**") for return to the Solicitation Agent by the Voting Deadline.

US 4084140

---

### IMPORTANT NOTICE
### REGARDING TREATMENT FOR CLASS 7

Claims in Class 7 consist of EGC Unsecured Notes Claims.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, each Beneficial Owner of an Allowed EGC Unsecured Notes Claim shall receive its *Pro Rata* share of the EGC Warrant Allocation; *provided, however*, that if Class 7 votes to reject the Plan, Holders of EGC Unsecured Notes Claims will not receive a distribution under the Plan.

**PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.**

---

3

US 4084140

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

PLEASE COMPLETE ITEMS 1, 2, 3, 4, AND 5. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 5. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Principal Amount of Claim**. The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Owner (or authorized signatory of such a Beneficial Owner) of an EGC Unsecured Notes Claim in the aggregate unpaid <u>principal</u> amount inserted into the box below, without regard to any accrued but unpaid interest.  If your EGC Unsecured Notes Claim is held by a Voting Nominee on your behalf and you do not know the principal amount of the EGC Unsecured Notes Claim held, please contact your Voting Nominee immediately to obtain the amount.

$

**Item 2. Votes on the Plan**. Please vote either to accept or to reject the Plan with respect to your Claims in Class 7 below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**

**If you (a) do not vote either to accept or reject the Plan, or (b) vote to reject the Plan and do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

**EGC Unsecured Notes Claim Holder's Vote on the Plan**. The undersigned Beneficial Owner of a Class 7 Second Lien Notes Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

4

**Item 3. Optional Release Election**.  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.  If you voted to reject the Plan in Item 2 above, or you abstained from voting, you must check the box below to elect <u>not</u> to grant the releases contained in Article VIII of the Plan.  Election to withhold consent is at your option.  If you submit your Ballot without checking the box below, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.

☐       The undersigned elects <u>NOT</u> to grant the releases contained in Article VIII of the Plan.

**Item 4. Certification as to Class 7 EGC Unsecured Notes Claims Held in Additional Accounts**.  The undersigned hereby certifies that either (a) it has not submitted any other Ballots for other Class 7 EGC Unsecured Notes Claims held in other accounts or other record names, or (b) if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan.  If the undersigned has submitted Ballots for other such Claims, then the undersigned certifies the accuracy of the information provided below as to such other Claims.

| Account Number | Name of Holder (Insert Name of Bank or Broker if EGC Unsecured Notes Claims are Held Through a Voting Nominee) | Amount of Other Class 7 EGC Unsecured Notes Claims Voted | CUSIP Number of Other Class 7 EGC Unsecured Notes Claims Voted |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |

5

**Item 5. Acknowledgments**. By signing this Ballot, the Beneficial Owner (or authorized signatory of such Beneficial Owner) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (a) it has the power and authority to vote to accept or reject the Plan, (b) it was the Beneficial Owner (or is entitled to vote on behalf of such Beneficial Owner) of the EGC Unsecured Notes Claim described in Item 1 as of the Voting Record Date, and if it has submitted any other Ballots for other Class 7 EGC Unsecured Notes Claims held in other accounts or other record names that it has provided the information requested above in Item 4, (c) if delivered to a Voting Nominee, such Beneficial Owner authorizes its Voting Nominee to treat this Ballot as a direction to include its Claim as a Class 7 EGC Unsecured Notes Claim on the Master Ballot, and (d) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted. The undersigned also understands that if it has submitted Ballots for other Class 7 EGC Unsecured Notes Claims, whether held in other accounts or other record names, and such Ballots indicate <u>different</u> votes to accept or reject the Plan, then all such Ballots will not be counted.

_____
Name of Beneficial Owner

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

6

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016.**

**IF YOU RECEIVED A RETURN BALLOT ADDRESSED TO THE SOLICITATION AGENT, PLEASE COMPLETE, AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR VOTING NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR VOTING NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR VOTING NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE.**

7

US 4084140

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.  Complete the Ballot by providing all the information requested and sign, date, and return the Ballot in the envelope provided or as indicated by your Voting Nominee.  Any Ballot that is illegible, contains insufficient information to identify the holder, does not contain an original signature, or is unsigned will not be counted.

    **The Solicitation Agent will tabulate all properly completed Ballots and Master Ballots received on or before the Voting Deadline.  IF YOU ARE RETURNING YOUR BALLOT TO YOUR VOTING NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR VOTING NOMINEE OR OTHERWISE ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE SOLICITATION AGENT BY THE VOTING DEADLINE.** Ballots and Master Ballots may not be submitted to the Solicitation Agent by facsimile or email.

2.  If neither the "accept" nor "reject" box is checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted.  If both the "accept" and "reject" box is checked in Item 2, the Ballot will not be counted.

3.  You must vote all your Class 7 EGC Unsecured Notes Claims under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different EGC Unsecured Notes Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.  If you voted to reject the Plan and elect not to grant the releases contained in Article VIII of the Plan, check the box in Item 3.  Election to withhold consent is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

5.  If you vote to accept the Plan by checking the "accept" box in Item 2, but you also check the box in Item 3, your election not to grant the releases will not be counted, as your vote in favor of the Plan shall be deemed a consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

6.  The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

8

7.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent will supersede any prior Ballot.

9.      In the event that (a) the Debtors revoke or withdraw the Plan or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10.     There may be changes made to the Plan that do not cause material adverse effects on an accepting class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE COURT.

12.     PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED BY YOUR BANK, BROKER, OR VOTING NOMINEE.

13.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE SOLICITATION AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR SEND AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE COURT.

14.     THE SOLICITATION AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**<u>Schedule 1</u>**

**Plan Injunction, Releases, and Exculpation**

If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

A.      *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the**

10

Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any claim or cause of action released pursuant to such releases.

B.      *Releases by Holders of Claims and Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, its Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the

foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

C.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Bermuda Proceeding, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of,

**consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

D.   *Injunction*

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.**

**Exhibit F-5**

**Class 7 Master Ballot: EGC Unsecured Notes Claims**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 16-31928 |
| | § | |
| **ENERGY XXI LTD**, *et al.*, | § | (Chapter 11) |
| | § | |
| Debtors.[1] | § | Jointly Administered |

## MASTER BALLOT FOR
## ACCEPTING OR REJECTING THE PLAN

### CLASS 7: EGC UNSECURED NOTES CLAIMS

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016 (THE "*VOTING DEADLINE*"), UNLESS EXTENDED BY THE DEBTORS. THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT (AS DEFINED BELOW) BY THE VOTING DEADLINE.**

This master ballot (the "***Master Ballot***") is being submitted to brokers, dealers, commercial banks, trust companies, or other agents or nominees ("***Voting Nominees***") of a beneficial owner (a "***Beneficial Owner***") of a Claim ("***EGC Unsecured Notes Claim***") against the Debtors arising under (a) that certain indenture, dated May 27, 2014, among Energy XXI Gulf Coast, Inc., the guarantors, and Wilmington Trust, N.A., as trustee, (b) that certain indenture, dated September 26, 2013, among Energy XXI Gulf Coast, Inc., the guarantors, and Wilmington Trust, N.A., as trustee, or (c) that certain indenture, dated February 25, 2011, among Energy XXI Gulf Coast, Inc., the guarantors, and Wilmington Trust, N.A., as trustee, including all agreements, notes, instruments, and any other documents delivered pursuant thereto or in connection therewith (in each case, as amended, modified, or supplemented from time to time).

---

[1]   The debtors in these chapter 11 cases (collectively, the "***Debtors***") and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 1021 Main Street, Suite 2626, Houston, Texas 77002.

US 4084140

Voting Nominees should use this Master Ballot to tabulate votes on behalf of holders to accept or reject the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "***Plan***") proposed by the Debtors.  Unless otherwise defined in this Master Ballot, capitalized terms used in this Master Ballot or the attached instructions shall have the meanings given to them in the Plan or the Disclosure Statement (as defined below).

The only holders of EGC Unsecured Notes Claims entitled to cast a vote on the Plan through this Master Ballot are those holders that are the Beneficial Owners of Claims, as of June 17, 2016 (the "***Voting Record Date***"), as reflected in the records maintained by Voting Nominees holding through The Depository Trust Company ("***DTC***"), or other relevant security depositor or the indenture trustee.

The Plan is attached as <u>**Exhibit A**</u> to the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (the "***Disclosure Statement***"), which accompanies this Master Ballot.  The Disclosure Statement provides information to assist holders of Claims in deciding whether to accept or reject the Plan.  If you or a holder do not have a Disclosure Statement, you may obtain a copy from Epiq Bankruptcy Solutions, LLC (the "***Solicitation Agent***") by visiting the Solicitation Agent's website at http://dm.epiq11.com/EXL, calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an email message to tabulation@epiqsystems.com with "EXXI" in the subject line.  Upon receipt of these materials, you should <u>immediately</u> forward to the Beneficial Owners the Disclosure Statement, and the form of ballot for such holders (the "***Beneficial Owner Ballot***") with a return envelope addressed to you, as provided in the attached instructions.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT.**

2

US 4084140

> PLEASE COMPLETE ALL OF THE ITEMS BELOW.  IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY COMPLETED, THE VOTES OF THE BENEFICIAL OWNERS MAY NOT BE COUNTED.

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐    is a Voting Nominee for the Beneficial Owners in the principal amount of the EGC Unsecured Notes Claims listed in Item 2 below, and is the registered holder of such Class 7 EGC Unsecured Notes Claims, respectively;

☐    is acting under a power of attorney or agency (a copy of which must be provided upon request) granted by a Voting Nominee that is the registered holder of the EGC Unsecured Notes in the principal amount listed in Item 2 below; or

☐    has been granted a proxy (an original of which is annexed hereto) from a Voting Nominee, or a Beneficial Owner, that is the registered holder of the principal amount of the EGC Unsecured Notes listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the Class 7 EGC Unsecured Notes Claims described in Item 2 below.

3

**Items 2. Vote on the Plan.**

The undersigned transmits the following votes of Beneficial Owners in respect of their Class 7 EGC Unsecured Notes Claims, and certifies that the following Beneficial Owners, as identified by their respective customer account numbers set forth below, are Beneficial Owners as of the Voting Record Date and have delivered to the undersigned, as Voting Nominee, Beneficial Owner Ballots casting such votes.[2]

| Your Customer Account Number for Each Beneficial Owner of Class 7 EGC Unsecured Notes Claims that Voted | Principal Amount of Secured Notes Claims Held by Your Customer | Vote on Plan Class 7 Vote | | Item 3 If the box in Item 3 of the Beneficial Owner Ballot was completed, place an "x" in the column below |
|---|---|---|---|---|
| | | ACCEPT | REJECT | |
| 1. | $ | ☐ | ☐ | ☐ |
| 2. | $ | ☐ | ☐ | ☐ |
| 3. | $ | ☐ | ☐ | ☐ |
| 4. | $ | ☐ | ☐ | ☐ |
| 5. | $ | ☐ | ☐ | ☐ |
| 6. | $ | ☐ | ☐ | ☐ |
| 7. | $ | ☐ | ☐ | ☐ |
| 8. | $ | ☐ | ☐ | ☐ |
| 9. | $ | ☐ | ☐ | ☐ |
| 10. | $ | ☐ | ☐ | ☐ |

---

[2]   Indicate in the appropriate column the principal amount of the EGC Unsecured Notes Claims voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note each Beneficial Owner must vote all of such Beneficial Owner's Class 7 EGC Unsecured Notes Claims to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Owner that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and that has not been corrected by the Voting Deadline, shall not be counted.  If a holder submits ballots for multiple Class 7 EGC Unsecured Notes Claims, whether held in other accounts or other record names, and such ballots indicate different votes to accept or reject the Plan, then all such ballots will not be counted.

4

**Item 3. Certification as to Transcription of Information from Item 4 of the Beneficial Owner Ballots as to Class 7 EGC Unsecured Notes Claims Voted Through Other Ballots.**

The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Owners have provided in Item 4 of the Beneficial Owner Ballot, identifying any Class 7 EGC Unsecured Notes Claims for which such Beneficial Owners have submitted other ballots (other than to the undersigned):

| Your Customer Account Number for Each Beneficial Owner That Completed Item 3 of the Beneficial Owner Ballot | TRANSCRIBE FROM ITEM 3 OF THE BALLOTS: | | | |
|---|---|---|---|---|
| | Account Number | Name of Holder | Principal Amount of Other Class 7 EGC Unsecured Notes Claims Voted | CUSIP Number of Other Class 7 EGC Unsecured Notes Claims Voted |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |

5

**Item 4. Certification.**

By signing this Master Ballot, the undersigned certifies that:

(a)     (1) the undersigned has received a copy of the Disclosure Statement, the Master Ballot, and the Beneficial Owner Ballot, and has delivered the Disclosure Statement and the Beneficial Owner Ballot to Beneficial Owners holding Class 7 EGC Unsecured Notes Claims through the undersigned with a return envelope; (2) the undersigned has received a completed and signed Beneficial Owner Ballot from each such Beneficial Owner as provided in this Master Ballot; (3) the undersigned is the registered holder of the securities being voted or agent thereof; and (4) the undersigned has been authorized by each such Beneficial Owner to vote on the Plan and to make applicable elections;

(b)     the undersigned has properly disclosed: (1) the number of Beneficial Owners voting Class 7 EGC Unsecured Notes Claims through the undersigned; (2) the respective amounts of Class 7 EGC Unsecured Notes Claims owned by each such Beneficial Owner; (3) each such Beneficial Owner's respective vote concerning the Plan; and (4) the customer account or other identification number for each such Beneficial Owner;

(c)     if the undersigned is a Beneficial Owner and uses this Master Ballot to vote the undersigned's Class 7 EGC Unsecured Notes Claims, the undersigned confirms and attests to each of the certifications in Item 5 of the Beneficial Owner Ballot;

(d)     each such Beneficial Owner has certified to the undersigned that the such Beneficial Owner is a Beneficial Owner and is otherwise eligible to vote on the Plan; and

(e)     the undersigned will maintain Beneficial Owner Ballots and evidence of separate transactions returned by Beneficial Owners (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Court or the Debtors, as the case may be, if so ordered.

**Item 5. Voting Nominee Information and Signature.**

Name of Bank, Broker, or Other Nominee:

_____

(Print or Type)

Participant Number: _____

Name of Proxy Holder or Agent for Bank, Broker, or Other Nominee (if applicable):

_____

(Print or Type)

_____

Signature:

Name of Signatory: _____

Title: _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

Date Completed: _____

**YOUR COMPLETED MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

**EXXI BALLOT PROCESSING**
**C/O EPIQ BANKRUPTCY SOLUTIONS, LLC**
**777 THIRD AVENUE, 12TH FLOOR**
**NEW YORK, NY 10017**

**BALLOTS RECEIVED VIA EMAIL OR FACSIMILE WILL NOT BE COUNTED.**

**TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016.**

US 4084140

IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE.

## MASTER BALLOT INSTRUCTIONS

1.   If a Voting Nominee is transmitting the votes of any Beneficial Owner of Class 7 EGC Unsecured Notes Claims, such Voting Nominee may do one of the following:

   a.   "Pre-validate" the individual Ballot contained in the Solicitation Package and forward the Solicitation Package to the Beneficial Owner of the Class 7 EGC Unsecured Notes Claim for voting within five business days after the receipt by such Voting Nominee of the Solicitation Package.  A Voting Nominee "pre-validates" a Beneficial Owner Ballot by signing the Beneficial Owner Ballot, including their DTC participant number, indicating the account number of the Beneficial Owner and the principal amount of Class 7 EGC Unsecured Notes Claim held by the Voting Nominee for such Beneficial Owner, and forwarding the Beneficial Owner Ballot, together with the Solicitation Package, to the Beneficial Owner.  The Beneficial Owner shall then complete the information requested on the Beneficial Owner Ballot and return the Beneficial Owner Ballot directly to the Solicitation Agent the return envelope provided in the Solicitation Package.  A list of Beneficial Owners to whom "pre-validated" Beneficial Owner Ballots were delivered should be maintained by Voting Nominees for inspection for at least one year.

   b.   Within five business days after receipt by such Voting Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Owner of the Class 7 EGC Unsecured Notes Claims for voting along with a return envelope provided by and addressed to the Voting Nominee.  The Beneficial Owner shall then return the individual Beneficial Owner Ballot to the Voting Nominee.  In such case, the Voting Nominee will tabulate the votes of its respective Beneficial Owners on a Master Ballot that will be provided to the Voting Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in  the Master Ballot, and thereafter return the Master Ballot to the Solicitation Agent.  The Voting Nominee should advise the Beneficial Owner to return their individual Beneficial Owner Ballots to the Voting Nominee by a date calculated by the Voting Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is <u>actually received</u> by the Solicitation Agent on or before the Voting Deadline.

2.   The Plan can be confirmed by the Court and thereby made binding upon you and the Beneficial Owners if it is accepted by the Holders of two-thirds of the aggregate principal amount and more than one half in number of Claims in each class that votes on the Plan, and if it otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court may nonetheless confirm the Plan if it finds that the Plan provides fair and equitable treatment to, and does not discriminate

8

unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

3.    With regard to any Beneficial Owner Ballots returned to you, to have the vote of your Beneficial Owners count, you must:  (a) retain such Beneficial Owner Ballots in your files and transfer the requested information from each such Beneficial Owner Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Solicitation Agent in accordance with these instructions.

4.    Please keep any records of Beneficial Owner Ballots for at least one year after the Voting Deadline (or such other date as is set by subsequent Court order). You may be ordered to produce the Beneficial Owner Ballots to the Debtors or the Court.

5.    If you are both the Voting Nominee and Beneficial Owner and you wish to vote such Class 7 EGC Unsecured Notes Claims for which you are a Beneficial Owner, you may return either a Beneficial Owner Ballot or the Master Ballot for such Class 7 EGC Unsecured Notes Claims.

6.    The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

7.    The Master Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

8.    The following ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Owner's customer account or other identification number for the Beneficial Owner, (b) any ballot cast by a Person that does not hold a Claim or Interest in a class entitled to vote on the Plan, (c) any unsigned ballot, (d) any ballot that does not contain an original signature, (e) any ballot not marked to accept or reject the Plan, and any ballot indicating both acceptance and rejection of the Plan.

9.    If a Beneficial Owner submits ballots for multiple Class 7 EGC Unsecured Notes Claims, whether held in other accounts or other record names, and such ballots indicate different votes to accept or reject the Plan, then all such ballots will not be counted.

10.   If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  The method of delivery of the Master Ballot to the Solicitation agent is at your election and risk.

11.   The Master Ballot should not be sent to the Debtors, the United States Trustee for the Southern District of Texas, or the Debtors' financial or legal advisors.

12.   There may be changes made to the Plan that do not cause material adverse effects on an accepting class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

**<u>Exhibit F-6</u>**

**Class 8 Beneficial Owner Ballot: EPL Unsecured Notes Claims**

Beneficial Owner Ballot for Class 8: EPL Unsecured Notes Claims

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 16-31928** |
| | § | |
| **ENERGY XXI LTD,** *et al.***,** | § | **(Chapter 11)** |
| | § | |
| | § | **Jointly Administered** |
| **Debtors.**[1] | § | |

## BALLOT FOR BENEFICIAL OWNERS OF
## EPL UNSECURED NOTES CLAIMS TO ACCEPT OR REJECT THE PLAN

### CLASS 8: EPL UNSECURED NOTES CLAIMS

### Only Beneficial Owners of EPL Unsecured Notes
### Claims may vote to accept or reject the Plan using this Ballot.

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016 (THE "*VOTING DEADLINE*"), UNLESS EXTENDED BY THE DEBTORS. IF YOU ARE RETURNING YOUR BALLOT TO YOUR VOTING NOMINEE (AS DEFINED BELOW), YOU MUST RETURN IT BY THE DEADLINE PROVIDED BY YOUR VOTING NOMINEE OR OTHERWISE ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE SOLICITATION AGENT BY THE VOTING DEADLINE FOR YOUR VOTE TO BE COUNTED.**

---

[1] The debtors in these chapter 11 cases (collectively, the "*Debtors*") and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 1021 Main Street, Suite 2626, Houston, Texas 77002.

US 4084140

This ballot (the "***Ballot***") is provided to you to solicit your vote to accept or reject the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "***Plan***"). Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings given to them in the Plan or the Disclosure Statement (as defined below).

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of June 17, 2016 (the "***Voting Record Date***"), a beneficial owner (a "***Beneficial Owner***") of a Claim (collectively, "***EPL Unsecured Notes Claims***") against the Debtors arising under that certain indenture, dated as of April 8, 2014 among EPL Oil & Gas, Inc., the guarantors party thereto, and U.S. Bank, N.A., including all agreements, notes, instruments, and any other documents delivered pursuant thereto or in connection therewith (in each case, as amended, modified, or supplemented from time to time). Only Beneficial Owners of EPL Unsecured Notes Claims may vote to accept or reject the Plan using this Ballot.

The Plan is attached as **Exhibit A** to the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (the "***Disclosure Statement***"), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Epiq Bankruptcy Solutions, LLC (the "***Solicitation Agent***") by visiting the Solicitation Agent's website at http://dm.epiq11.com/EXL, calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an email to tabulation@epiqsystems.com with "EXXI" in the subject line and requesting a copy be provided to you. You should review the Disclosure Statement and the Plan carefully before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

On April 14, 2016, the Debtors each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***"). The Debtors intend to seek the Plan's prompt confirmation by the Court. The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the class or classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to your broker, dealer, commercial bank, trust company, or other agent or nominee ("***Voting Nominee***") for return to the Solicitation Agent by the Voting Deadline.

---

### IMPORTANT NOTICE
### REGARDING TREATMENT FOR CLASS 8

Claims in Class 8 consist of EPL Unsecured Notes Claims.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, each Eligible Holder holding an Allowed EPL Unsecured Notes Claim shall receive its *Pro Rata* share of the EPL Warrant Allocation; *provided, however*, that if Class 8 votes to reject the Plan, Holders of EPL Unsecured Notes Claims will not receive a distribution under the Plan.

**PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.**

---

US 4084140

Beneficial Owner Ballot for Class 8: EPL Unsecured Notes Claims

**PLEASE READ THE ATTACHED VOTING INFORMATION**
**AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

PLEASE COMPLETE ITEMS 1, 2, 3, 4, AND 5. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 5. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Principal Amount of Claim**. The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Owner (or authorized signatory of such an Beneficial Owner) of an EPL Unsecured Notes Claim in the aggregate unpaid <u>principal</u> amount inserted into the box below, without regard to any accrued but unpaid interest.  If your EPL Unsecured Notes Claim is held by a Voting Nominee on your behalf and you do not know the principal amount of the EPL Unsecured Notes Claim held, please contact your Voting Nominee immediately to obtain the amount.

|  |
|---|
| $ |

**Item 2. Votes on the Plan**. Please vote either to accept or to reject the Plan with respect to your Claims in Class 8 below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**

**If you (a) do not vote either to accept or reject the Plan, or (b) vote to reject the Plan and do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

**EPL Unsecured Notes Claim Holder's Vote on the Plan**. The undersigned Beneficial Owner of a Class 8 Second Lien Notes Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

4

US 4084140

**Item 3. Optional Release Election**.  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.  If you voted to reject the Plan in Item 2 above, or you abstained from voting, you must check the box below to elect <u>not</u> to grant the releases contained in Article VIII of the Plan.  Election to withhold consent is at your option.  If you submit your Ballot without checking the box below, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.

☐    The undersigned elects <u>NOT</u> to grant the releases contained in Article VIII of the Plan.

**Item 4.  Certification as to Class 8 EPL Unsecured Notes Claims Held in Additional Accounts**. The undersigned hereby certifies that either (a) it has not submitted any other Ballots for other Class 8 EPL Unsecured Notes Claims held in other accounts or other record names, or (b) if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan.  If the undersigned has submitted Ballots for other such Claims, then the undersigned certifies the accuracy of the information provided below as to such other Claims.

| Account Number | Name of Holder (Insert Name of Bank or Broker if EPL Unsecured Notes Claims are Held Through a Voting Nominee) | Amount of Other Class 8 EPL Unsecured Notes Claims Voted |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |

5

**Item 5. Acknowledgments**. By signing this Ballot, the Beneficial Owner (or authorized signatory of such Beneficial Owner) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (a) it has the power and authority to vote to accept or reject the Plan, (b) it was the Beneficial Owner (or is entitled to vote on behalf of such Beneficial Owner) of the EPL Unsecured Notes Claim described in Item 1 as of the Voting Record Date, and if it has submitted any other Ballots for other Class 8 EPL Unsecured Notes Claims held in other accounts or other record names that it has provided the information requested above in Item 4, (c) if delivered to a Voting Nominee, such Beneficial Owner authorizes its Voting Nominee to treat this Ballot as a direction to include its Claim as a Class 8 EPL Unsecured Notes Claim on the Master Ballot, and (d) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.  The undersigned also understands that if it has submitted Ballots for other Class 8 EPL Unsecured Notes Claims, whether held in other accounts or other record names, and such Ballots indicate <u>different</u> votes to accept or reject the Plan, then all such Ballots will not be counted.

_____
Name of Beneficial Owner

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

6

US 4084140

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016.**

**IF YOU RECEIVED A RETURN BALLOT ADDRESSED TO THE SOLICITATION AGENT, PLEASE COMPLETE, AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR VOTING NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR VOTING NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR VOTING NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE.**

7

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE.

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.     Complete the Ballot by providing all the information requested and sign, date, and return the Ballot in the envelope provided or as indicated by your Voting Nominee.  Any Ballot that is illegible, contains insufficient information to identify the Holder, does not contain an original signature, or is unsigned will not be counted.

**The Solicitation Agent will tabulate all properly completed Ballots and Master Ballots received on or before the Voting Deadline.  IF YOU ARE RETURNING YOUR BALLOT TO YOUR VOTING NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR VOTING NOMINEE OR OTHERWISE ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE SOLICITATION AGENT BY THE VOTING DEADLINE.** Ballots and Master Ballots may not be submitted to the Solicitation Agent by facsimile or email.

2.     If neither the "accept" nor "reject" box is checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted.  If both the "accept" and "reject" box is checked in Item 2, the Ballot will not be counted.

3.     You must vote all your Class 8 EPL Unsecured Notes Claims under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different EPL Unsecured Notes Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.     If you voted to reject the Plan and elect not to grant the releases contained in Article VIII of the Plan, check the box in Item 3.  Election to withhold consent is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

5.     If you vote to accept the Plan by checking the "accept" box in Item 2, but you also check the box in Item 3, your election not to grant the releases will not be counted, as your vote in favor of the plan shall be deemed a consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

6.     The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

US 4084140

7.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent will supersede any prior Ballot.

9.      In the event that (a) the Debtors revoke or withdraw the Plan or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10.     There may be changes made to the Plan that do not cause material adverse effects on an accepting class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE COURT.

12.     PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED BY YOUR BANK, BROKER, OR VOTING NOMINEE.

13.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE SOLICITATION AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR SEND AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE COURT.

14.     THE SOLICITATION AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

## Schedule 1

## Plan Injunction, Releases, and Exculpation

If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

A.      *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective**

10

Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any claim or cause of action released pursuant to such releases.

B.    *Releases by Holders of Claims and Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, its Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or

11

US 4084140

other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

C.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Bermuda Proceeding, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in

12

compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

D.    *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.

13

**Exhibit F-7**

**Class 8 Master Ballot: EPL Unsecured Notes Claims**

US 4084140

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 16-31928** |
| | § | |
| **ENERGY XXI LTD,** *et al.*, | § | **(Chapter 11)** |
| | § | |
| **Debtors.**[1] | § | **Jointly Administered** |

## MASTER BALLOT FOR
## ACCEPTING OR REJECTING THE PLAN

### CLASS 8: EPL UNSECURED NOTES CLAIMS

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016 (THE "*VOTING DEADLINE*"), UNLESS EXTENDED BY THE DEBTORS. THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT (AS DEFINED BELOW) BY THE VOTING DEADLINE.**

This master ballot (the "***Master Ballot***") is being submitted to brokers, dealers, commercial banks, trust companies, or other agents or nominees ("***Voting Nominees***") of a beneficial owner (a "***Beneficial Owner***") of a Claim ("***EPL Unsecured Notes Claim***") against the Debtors arising under that certain indenture, dated as of April 8, 2014 among EPL Oil & Gas, Inc., the guarantors party thereto, and U.S. Bank, N.A., including all agreements, notes, instruments, and any other documents delivered pursuant thereto or in connection therewith (in each case, as amended, modified, or supplemented from time to time).

Voting Nominees should use this Master Ballot to tabulate votes on behalf of Holders to accept or reject the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "***Plan***") proposed by the Debtors. Unless otherwise defined in this Master Ballot, capitalized terms used

---

[1]     The debtors in these chapter 11 cases (collectively, the "***Debtors***") and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is:  1021 Main Street, Suite 2626, Houston, Texas 77002.

in this Master Ballot or the attached instructions shall have the meanings given to them in the Plan or the Disclosure Statement (as defined below).

The only Holders of EPL Unsecured Notes Claims entitled to cast a vote on the Plan through this Master Ballot are those Holders that are the Beneficial Owners of Claims, as of June 17, 2016 (the "***Voting Record Date***"), as reflected in the records maintained by Voting Nominees holding through The Depository Trust Company ("***DTC***"), or other relevant security depositor or the indenture trustee.

The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (the "***Disclosure Statement***"), which accompanies this Master Ballot.  The Disclosure Statement provides information to assist Holders of Claims in deciding whether to accept or reject the Plan.  If you or a holder do not have a Disclosure Statement, you may obtain a copy from Epiq Bankruptcy Solutions, LLC (the "***Solicitation Agent***") by visiting the Solicitation Agent's website at http://dm.epiq11.com/EXL, calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an email message to tabulation@epiqsystems.com with "EXXI" in the subject line.  Upon receipt of these materials, you should <u>immediately</u> forward to the Beneficial Owners the Disclosure Statement, and the form of ballot for such holders (the "***Beneficial Owner Ballot***") with a return envelope addressed to you, as provided in the attached instructions.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT.**

> PLEASE COMPLETE ALL OF THE ITEMS BELOW. IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY COMPLETED, THE VOTES OF THE BENEFICIAL OWNERS MAY NOT BE COUNTED.

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐   is a Voting Nominee for the Beneficial Owners in the principal amount of the EPL Unsecured Notes Claims listed in Item 2 below, and is the registered holder of such Class 8 EPL Unsecured Notes Claims, respectively;

☐   is acting under a power of attorney or agency (a copy of which must be provided upon request) granted by a Voting Nominee that is the registered holder of the EPL Unsecured Notes in the principal amount listed in Item 2 below; or

☐   has been granted a proxy (an original of which is annexed hereto) from a Voting Nominee, or a Beneficial Owner, that is the registered holder of the principal amount of the EPL Unsecured Notes listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the Class 8 EPL Unsecured Notes Claims described in Item 2 below.

US 4084140

**Items 2. Vote on the Plan.**

The undersigned transmits the following votes of Beneficial Owners in respect of their Class 8 EPL Unsecured Notes Claims, and certifies that the following Beneficial Owners, as identified by their respective customer account numbers set forth below, are Beneficial Owners as of the Voting Record Date and have delivered to the undersigned, as Voting Nominee, Beneficial Owner Ballots casting such votes.[2]

| Your Customer Account Number for Each Beneficial Owner of Class 8 EPL Unsecured Notes Claims that Voted | Principal Amount of Secured Notes Claims Held by Your Customer | Vote on Plan Class 8 Vote | | Item 3 If the box in Item 3 of the Beneficial Owner Ballot was completed, place an "x" in the column below |
|---|---|---|---|---|
| | | ACCEPT | REJECT | |
| 1. | $ | ☐ | ☐ | ☐ |
| 2. | $ | ☐ | ☐ | ☐ |
| 3. | $ | ☐ | ☐ | ☐ |
| 4. | $ | ☐ | ☐ | ☐ |
| 5. | $ | ☐ | ☐ | ☐ |
| 6. | $ | ☐ | ☐ | ☐ |
| 7. | $ | ☐ | ☐ | ☐ |
| 8. | $ | ☐ | ☐ | ☐ |
| 9. | $ | ☐ | ☐ | ☐ |
| 10. | $ | ☐ | ☐ | ☐ |

---

[2]   Indicate in the appropriate column the principal amount of the EPL Unsecured Notes Claims voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note each Beneficial Owner must vote all of such Beneficial Owner's Class 8 EPL Unsecured Notes Claims to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Owner that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and that has not been corrected by the Voting Deadline, shall not be counted.  If a Holder submits ballots for multiple Class 8 EPL Unsecured Notes Claims, whether held in other accounts or other record names, and such ballots indicate different votes to accept or reject the Plan, then all such ballots will not be counted.

**Item 3. Certification as to Transcription of Information from Item 4 of the Beneficial Owner Ballots as to Class 8 EPL Unsecured Notes Claims Voted Through Other Ballots.**

The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Owners have provided in Item 4 of the Beneficial Owner Ballot, identifying any Class 8 EPL Unsecured Notes Claims for which such Beneficial Owners have submitted other ballots (other than to the undersigned):

| Your Customer Account Number for Each Beneficial Owner That Completed Item 3 of the Beneficial Owner Ballot | TRANSCRIBE FROM ITEM 3 OF THE BALLOTS: | | |
|---|---|---|---|
| | Account Number | Name of Holder | Principal Amount of Other Class 8 EPL Unsecured Notes Claims Voted |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |

5

US 4084140

**Item 4. Certification.**

By signing this Master Ballot, the undersigned certifies that:

(a)     (1) the undersigned has received a copy of the Disclosure Statement, the Master Ballot, and the Beneficial Owner Ballot, and has delivered the Disclosure Statement and the Beneficial Owner Ballot to Beneficial Owners holding Class 8 EPL Unsecured Notes Claims through the undersigned with a return envelope; (2) the undersigned has received a completed and signed Beneficial Owner Ballot from each such Beneficial Owner as provided in this Master Ballot; (3) the undersigned is the registered holder of the securities being voted or agent thereof; and (4) the undersigned has been authorized by each such Beneficial Owner to vote on the Plan and to make applicable elections;

(b)     the undersigned has properly disclosed: (1) the number of Beneficial Owners voting Class 8 EPL Unsecured Notes Claims through the undersigned; (2) the respective amounts of Class 8 EPL Unsecured Notes Claims owned by each such Beneficial Owner; (3) each such Beneficial Owner's respective vote concerning the Plan; and (4) the customer account or other identification number for each such Beneficial Owner;

(c)     if the undersigned is a Beneficial Owner and uses this Master Ballot to vote the undersigned's Class 8 EPL Unsecured Notes Claims, the undersigned confirms and attests to each of the certifications in Item 5 of the Beneficial Owner Ballot;

(d)     each such Beneficial Owner has certified to the undersigned that the such Beneficial Owner is a Beneficial Owner and is otherwise eligible to vote on the Plan; and

(e)     the undersigned will maintain Beneficial Owner Ballots and evidence of separate transactions returned by Beneficial Owners (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Court or the Debtors, as the case may be, if so ordered.

**Item 5. Voting Nominee Information and Signature.**

Name of Bank, Broker, or Other Nominee:

_____

(Print or Type)

Participant Number: _____

Name of Proxy Holder or Agent for Bank, Broker, or Other Nominee (if applicable):

_____

(Print or Type)

_____

Signature:

Name of Signatory: _____

Title: _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

Date Completed: _____

**YOUR COMPLETED MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

**EXXI BALLOT PROCESSING**
**C/O EPIQ BANKRUPTCY SOLUTIONS, LLC**
**777 THIRD AVENUE, 12TH FLOOR**
**NEW YORK, NY 10017**

**BALLOTS RECEIVED VIA EMAIL OR FACSIMILE WILL NOT BE COUNTED.**

**TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M. (CENTRAL TIME) ON JULY 27 2016.**

IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE.

US 4084140

## MASTER BALLOT INSTRUCTIONS

1.    If a Voting Nominee is transmitting the votes of any Beneficial Owner of Class 8 EPL Unsecured Notes Claims, such Voting Nominee may do one of the following:

   a.    "Pre-validate" the individual Ballot contained in the Solicitation Package and forward the Solicitation Package to the Beneficial Owner of the Class 8 EPL Unsecured Notes Claim for voting within five business days after the receipt by such Voting Nominee of the Solicitation Package. A Voting Nominee "pre-validates" a Beneficial Owner Ballot by signing the Beneficial Owner Ballot, including their DTC participant number, indicating the account number of the Beneficial Owner and the principal amount of Class 8 EPL Unsecured Notes Claim held by the Voting Nominee for such Beneficial Owner, and forwarding the Beneficial Owner Ballot, together with the Solicitation Package, to the Beneficial Owner. The Beneficial Owner shall then complete the information requested on the Beneficial Owner Ballot and return the Beneficial Owner Ballot directly to the Solicitation Agent the return envelope provided in the Solicitation Package. A list of Beneficial Owners to whom "pre-validated" Beneficial Owner Ballots were delivered should be maintained by Voting Nominees for inspection for at least one year.

   b.    Within five business days after receipt by such Voting Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Owner of the Class 8 EPL Unsecured Notes Claims for voting along with a return envelope provided by and addressed to the Voting Nominee. The Beneficial Owner shall then return the individual Beneficial Owner Ballot to the Voting Nominee. In such case, the Voting Nominee will tabulate the votes of its respective Beneficial Owners on a Master Ballot that will be provided to the Voting Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in the Master Ballot, and thereafter return the Master Ballot to the Solicitation Agent. The Voting Nominee should advise the Beneficial Owner to return their individual Beneficial Owner Ballots to the Voting Nominee by a date calculated by the Voting Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is <u>actually received</u> by the Solicitation Agent on or before the Voting Deadline.

2.    The Plan can be confirmed by the Court and thereby made binding upon you and the Beneficial Owners if it is accepted by the Holders of two-thirds of the aggregate principal amount and more than one half in number of Claims in each class that votes on the Plan, and if it otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court may nonetheless confirm the Plan if it finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

3.    With regard to any Beneficial Owner Ballots returned to you, to have the vote of your Beneficial Owners count, you must:  (a) retain such Beneficial Owner Ballots in your

8

files and transfer the requested information from each such Beneficial Owner Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Solicitation Agent in accordance with these instructions.

4.      Please keep any records of Beneficial Owner Ballots for at least one year after the Voting Deadline (or such other date as is set by subsequent Court order). You may be ordered to produce the Beneficial Owner Ballots to the Debtors or the Court.

5.      If you are both the Voting Nominee and Beneficial Owner and you wish to vote such Class 8 EPL Unsecured Notes Claims for which you are a Beneficial Owner, you may return either a Beneficial Owner Ballot or the Master Ballot for such Class 8 EPL Unsecured Notes Claims.

6.      The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

7.      The Master Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

8.      The following ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Owner's customer account or other identification number for the Beneficial Owner, (b) any ballot cast by a Person that does not hold a Claim or Interest in a class entitled to vote on the Plan, (c) any unsigned ballot, (d) any ballot that does not contain an original signature, (e) any ballot not marked to accept or reject the Plan, and any ballot indicating both acceptance and rejection of the Plan.

9.      If a Beneficial Owner submits ballots for multiple Class 8 EPL Unsecured Notes Claims, whether held in other accounts or other record names, and such ballots indicate <u>different</u> votes to accept or reject the Plan, then all such ballots will not be counted.

10.     If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  The method of delivery of the Master Ballot to the Solicitation agent is at your election and risk.

11.     The Master Ballot should not be sent to the Debtors, the United States Trustee for the Southern District of Texas, or the Debtors' financial or legal advisors.

12.     There may be changes made to the Plan that do not cause material adverse effects on an accepting class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9

**Exhibit F-8**

**Class 9 Beneficial Owner Ballot: EXXI Convertible Notes Claims**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 16-31928 |
| | § | |
| **ENERGY XXI LTD**, *et al.*, | § | (Chapter 11) |
| | § | |
| | § | Jointly Administered |
| Debtors.[1] | § | |

## BALLOT FOR BENEFICIAL OWNERS OF
## EXXI CONVERTIBLE NOTES CLAIMS TO ACCEPT OR REJECT THE PLAN

### CLASS 9: EXXI CONVERTIBLE NOTES CLAIMS

**Only Beneficial Owners of EXXI Convertible Notes
Claims may vote to accept or reject the Plan using this Ballot.**

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016 (THE "*VOTING DEADLINE*"), UNLESS EXTENDED BY THE DEBTORS.  IF YOU ARE RETURNING YOUR BALLOT TO YOUR VOTING NOMINEE (AS DEFINED BELOW), YOU MUST RETURN IT BY THE DEADLINE PROVIDED BY YOUR VOTING NOMINEE OR OTHERWISE ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE SOLICITATION AGENT BY THE VOTING DEADLINE FOR YOUR VOTE TO BE COUNTED.**

This ballot (the "***Ballot***") is provided to you to solicit your vote to accept or reject the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "***Plan***").  Capitalized terms

---

[1]     The debtors in these chapter 11 cases (collectively, the "***Debtors***") and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is:  1021 Main Street, Suite 2626, Houston, Texas 77002.

used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings given to them in the Plan or the Disclosure Statement (as defined below).

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of June 17, 2016 (the "***Voting Record Date***"), a beneficial owner (a "***Beneficial Owner***") of a Claim (collectively, "***EXXI Convertible Notes Claims***") against the Debtors arising under that certain indenture dated as of November 22, 2013 among Energy XXI Ltd and Wilmington Trust, N.A., as trustee, including all agreements, notes, instruments, and any other documents delivered pursuant thereto or in connection therewith (in each case, as amended, modified, or supplemented from time to time). Only Beneficial Owners of EXXI Convertible Notes Claims may vote to accept or reject the Plan using this Ballot.

The Plan is attached as **Exhibit A** to the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (the "***Disclosure Statement***"), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Epiq Bankruptcy Solutions, LLC (the "***Solicitation Agent***") by visiting the Solicitation Agent's website at http://dm.epiq11.com/EXL, calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an email to tabulation@epiqsystems.com with "EXXI" in the subject line and requesting a copy be provided to you. You should review the Disclosure Statement and the Plan carefully before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

On April 14, 2016, the Debtors each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***"). The Debtors intend to seek the Plan's prompt confirmation by the Court. The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the class or classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to your broker, dealer, commercial bank, trust company, or other agent or nominee ("***Voting Nominee***") for return to the Solicitation Agent by the Voting Deadline.

US 4084140

**IMPORTANT NOTICE**
**REGARDING TREATMENT FOR CLASS 9**

Claims in Class 9 consist of EXXI Convertible Notes Claims.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, each Beneficial Owner of an Allowed EXXI Convertible Notes Claim shall receive its *Pro Rata* share of the EXXI Warrant Allocation; *provided, however*, that if Class 9 votes to reject the Plan, holders of EXXI Convertible Notes Claims will not receive a distribution under the Plan.

**PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.**

US 4084140

**Beneficial Owner Ballot for Class 9: EXXI Convertible Notes Claims**

## PLEASE READ THE ATTACHED VOTING INFORMATION
## AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT

> PLEASE COMPLETE ITEMS 1, 2, 3, 4, AND 5. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 5. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Principal Amount of Claim**. The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Owner (or authorized signatory of such an Beneficial Owner) of an EXXI Convertible Notes Claim in the aggregate unpaid <u>principal</u> amount inserted into the box below, without regard to any accrued but unpaid interest. If your EXXI Convertible Notes Claim is held by a Voting Nominee on your behalf and you do not know the principal amount of the EXXI Convertible Notes Claim held, please contact your Voting Nominee immediately to obtain the amount.

| $ |
|---|

**Item 2. Votes on the Plan**. Please vote either to accept or to reject the Plan with respect to your Claims in Class 9 below. Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

> **Prior to voting on the Plan, please note the following:**
>
> **If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**
>
> **If you (a) do not vote either to accept or reject the Plan, or (b) vote to reject the Plan and do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**
>
> **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

**EXXI Convertible Notes Claim Holder's Vote on the Plan**. The undersigned Beneficial Owner of a Class 9 Second Lien Notes Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan            ☐ **Reject** the Plan

4

**Beneficial Owner Ballot for Class 9: EXXI Convertible Notes Claims**

**Item 3. Optional Release Election**.  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.  If you voted to reject the Plan in Item 2 above, or you abstained from voting, you must check the box below to elect <u>not</u> to grant the releases contained in Article VIII of the Plan.  Election to withhold consent is at your option.  If you submit your Ballot without checking the box below, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.

☐     The undersigned elects <u>NOT</u> to grant the releases contained in Article VIII of the Plan.

**Item 4. Certification as to Class 9 EXXI Convertible Notes Claims Held in Additional Accounts**. The undersigned hereby certifies that either (a) it has not submitted any other Ballots for other Class 9 EXXI Convertible Notes Claims held in other accounts or other record names, or (b) if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan.  If the undersigned has submitted Ballots for other such Claims, then the undersigned certifies the accuracy of the information provided below as to such other Claims.

| Account Number | Name of Holder (Insert Name of Bank or Broker if EXXI Convertible Notes Claims are Held Through a Voting Nominee) | Amount of Other Class 9 EXXI Convertible Notes Claims Voted |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |

**Item 5. Acknowledgments**. By signing this Ballot, the Beneficial Owner (or authorized signatory of such Beneficial Owner) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (a) it has the power and authority to vote to accept or reject the Plan, (b) it was the Beneficial Owner (or is entitled to vote on behalf of such Beneficial Owner) of the EXXI Convertible Notes Claim described in Item 1 as of the Voting Record Date, and if it has submitted any other Ballots for other Class 9 EXXI Convertible Notes Claims held in other accounts or other record names that it has provided the information requested above in Item 4, (c) if delivered to a Voting Nominee, such Beneficial Owner authorizes its Voting Nominee to treat this Ballot as a direction to include its Claim as a Class 9 EXXI Convertible Notes Claim on the Master Ballot, and (d) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.  The undersigned also understands that if it has submitted Ballots for other Class 9 EXXI Convertible Notes Claims, whether held in other accounts or other record names, and such Ballots indicate _different_ votes to accept or reject the Plan, then all such Ballots will not be counted.

_____
Name of Beneficial Owner

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

6

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016.**

**IF YOU RECEIVED A RETURN BALLOT ADDRESSED TO THE SOLICITATION AGENT, PLEASE COMPLETE, AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR VOTING NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR VOTING NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR VOTING NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE.**

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE.

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.     Complete the Ballot by providing all the information requested and sign, date, and return the Ballot in the envelope provided or as indicated by your Voting Nominee.  Any Ballot that is illegible, contains insufficient information to identify the Holder, does not contain an original signature, or is unsigned will not be counted.

       **The Solicitation Agent will tabulate all properly completed Ballots and Master Ballots received on or before the Voting Deadline.  IF YOU ARE RETURNING YOUR BALLOT TO YOUR VOTING NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR VOTING NOMINEE OR OTHERWISE ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE SOLICITATION AGENT BY THE VOTING DEADLINE.** Ballots and Master Ballots may not be submitted to the Solicitation Agent by facsimile or email.

2.     If neither the "accept" nor "reject" box is checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted.  If both the "accept" and "reject" box is checked in Item 2, the Ballot will not be counted.

3.     You must vote all your Class 9 EXXI Convertible Notes Claims under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different EXXI Convertible Notes Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.     If you voted to reject the Plan and elect not to grant the releases contained in Article VIII of the Plan, check the box in Item 3.  Election to withhold consent is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

5.     If you vote to accept the Plan by checking the "accept" box in Item 2, but you also check the box in Item 3, your election not to grant the releases will not be counted, as your vote in favor of the plan shall be deemed a consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

6.     The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

7.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent will supersede any prior Ballot.

9.      In the event that (a) the Debtors revoke or withdraw the Plan or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10.     There may be changes made to the Plan that do not cause material adverse effects on an accepting class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE COURT.

12.     PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED BY YOUR BANK, BROKER, OR VOTING NOMINEE.

13.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE SOLICITATION AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR SEND AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE COURT.

14.     THE SOLICITATION AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

## Schedule 1

## Plan Injunction, Releases, and Exculpation

If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

A.      *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective**

10

Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any claim or cause of action released pursuant to such releases.

B.     *Releases by Holders of Claims and Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, its Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or

11

other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

C.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Bermuda Proceeding, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in

compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

D.    *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.

**<u>Exhibit F-9</u>**

**Class 9 Master Ballot: EXXI Convertible Notes Claims**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 16-31928 |
| | § | |
| **ENERGY XXI LTD**, *et al.*, | § | (Chapter 11) |
| | § | |
| Debtors.[1] | § | Jointly Administered |

## MASTER BALLOT FOR
## ACCEPTING OR REJECTING THE PLAN

### CLASS 9: EXXI CONVERTIBLE NOTES CLAIMS

> THE VOTING DEADLINE TO ACCEPT OR REJECT THE
> PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016
> (THE "*VOTING DEADLINE*"), UNLESS EXTENDED BY
> THE DEBTORS. THIS MASTER BALLOT MUST BE
> ACTUALLY RECEIVED BY THE SOLICITATION AGENT
> (AS DEFINED BELOW) BY THE VOTING DEADLINE.

This master ballot (the "***Master Ballot***") is being submitted to brokers, dealers, commercial banks, trust companies, or other agents or nominees ("***Voting Nominees***") of a beneficial owner (a "***Beneficial Owner***") of a Claim ("***EXXI Convertible Notes Claim***") against the Debtors arising under that certain indenture dated as of November 22, 2013 among Energy XXI Ltd and Wilmington Trust, N.A., as trustee, including all agreements, notes, instruments, and any other documents delivered pursuant thereto or in connection therewith (in each case, as amended, modified, or supplemented from time to time).

Voting Nominees should use this Master Ballot to tabulate votes on behalf of Holders to accept or reject the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "***Plan***") proposed by the Debtors. Unless otherwise defined in this Master Ballot, capitalized terms used

---

[1]     The debtors in these chapter 11 cases (collectively, the "***Debtors***") and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 1021 Main Street, Suite 2626, Houston, Texas 77002.

in this Master Ballot or the attached instructions shall have the meanings given to them in the Plan or the Disclosure Statement (as defined below).

The only Holders of EXXI Convertible Notes Claims entitled to cast a vote on the Plan through this Master Ballot are those Holders that are the Beneficial Owners of Claims, as of June 17, 2016 (the "***Voting Record Date***"), as reflected in the records maintained by Voting Nominees holding through The Depository Trust Company ("**DTC**"), or other relevant security depositor or the indenture trustee.

The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (the "***Disclosure Statement***"), which accompanies this Master Ballot.  The Disclosure Statement provides information to assist Holders of Claims in deciding whether to accept or reject the Plan.  If you or a holder do not have a Disclosure Statement, you may obtain a copy from Epiq Bankruptcy Solutions, LLC (the "***Solicitation Agent***") by visiting the Solicitation Agent's website at http://dm.epiq11.com/EXL, calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an email message to tabulation@epiqsystems.com with "EXXI" in the subject line.  Upon receipt of these materials, you should <u>immediately</u> forward to the Beneficial Owners the Disclosure Statement, and the form of ballot for such holders (the "***Beneficial Owner Ballot***") with a return envelope addressed to you, as provided in the attached instructions.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT.**

US 4084140

> PLEASE COMPLETE ALL OF THE ITEMS BELOW.  IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY COMPLETED, THE VOTES OF THE BENEFICIAL OWNERS MAY NOT BE COUNTED.

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a Voting Nominee for the Beneficial Owners in the principal amount of the EXXI Convertible Notes Claims listed in Item 2 below, and is the registered holder of such Class 9 EXXI Convertible Notes Claims, respectively;

☐ is acting under a power of attorney or agency (a copy of which must be provided upon request) granted by a Voting Nominee that is the registered holder of the EXXI Convertible Notes in the principal amount listed in Item 2 below; or

☐ has been granted a proxy (an original of which is annexed hereto) from a Voting Nominee, or a Beneficial Owner, that is the registered holder of the principal amount of the EXXI Convertible Notes listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the Class 9 EXXI Convertible Notes Claims described in Item 2 below.

3

**Items 2. Vote on the Plan.**

The undersigned transmits the following votes of Beneficial Owners in respect of their Class 9 EXXI Convertible Notes Claims, and certifies that the following Beneficial Owners, as identified by their respective customer account numbers set forth below, are Beneficial Owners as of the Voting Record Date and have delivered to the undersigned, as Voting Nominee, Beneficial Owner Ballots casting such votes.[2]

| Your Customer Account Number for Each Beneficial Owner of Class 9 EXXI Convertible Notes Claims that Voted | Principal Amount of Secured Notes Claims Held by Your Customer | Vote on Plan Class 9 Vote | | Item 3 If the box in Item 3 of the Beneficial Owner Ballot was completed, place an "x" in the column below |
|---|---|---|---|---|
| | | ACCEPT | REJECT | |
| 1. | $ | ☐ | ☐ | ☐ |
| 2. | $ | ☐ | ☐ | ☐ |
| 3. | $ | ☐ | ☐ | ☐ |
| 4. | $ | ☐ | ☐ | ☐ |
| 5. | $ | ☐ | ☐ | ☐ |
| 6. | $ | ☐ | ☐ | ☐ |
| 7. | $ | ☐ | ☐ | ☐ |
| 8. | $ | ☐ | ☐ | ☐ |
| 9. | $ | ☐ | ☐ | ☐ |
| 10. | $ | ☐ | ☐ | ☐ |

---

[2]     Indicate in the appropriate column the principal amount of the EXXI Convertible Notes Claims voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note each Beneficial Owner must vote all of such Beneficial Owner's Class 9 EXXI Convertible Notes Claims to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Owner that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and that has not been corrected by the Voting Deadline, shall not be counted.  If a Holder submits ballots for multiple Class 9 EXXI Convertible Notes Claims, whether held in other accounts or other record names, and such ballots indicate different votes to accept or reject the Plan, then all such ballots will not be counted.

4

US 4084140

**Item 3. Certification as to Transcription of Information from Item 4 of the Beneficial Owner Ballots as to Class 9 EXXI Convertible Notes Claims Voted Through Other Ballots.**

The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Owners have provided in Item 4 of the Beneficial Owner Ballot, identifying any Class 9 EXXI Convertible Notes Claims for which such Beneficial Owners have submitted other ballots (other than to the undersigned):

| Your Customer Account Number for Each Beneficial Owner That Completed Item 3 of the Beneficial Owner Ballot | TRANSCRIBE FROM ITEM 3 OF THE BALLOTS: | | |
|---|---|---|---|
| | Account Number | Name of Holder | Principal Amount of Other Class 9 EXXI Convertible Notes Claims Voted |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |

US 4084140

**Item 4. Certification.**

By signing this Master Ballot, the undersigned certifies that:

(a)     (1) the undersigned has received a copy of the Disclosure Statement, the Master Ballot, and the Beneficial Owner Ballot, and has delivered the Disclosure Statement and the Beneficial Owner Ballot to Beneficial Owners holding Class 9 EXXI Convertible Notes Claims through the undersigned with a return envelope; (2) the undersigned has received a completed and signed Beneficial Owner Ballot from each such Beneficial Owner as provided in this Master Ballot; (3) the undersigned is the registered Holder of the securities being voted or agent thereof; and (4) the undersigned has been authorized by each such Beneficial Owner to vote on the Plan and to make applicable elections;

(b)     the undersigned has properly disclosed: (1) the number of Beneficial Owners voting Class 9 EXXI Convertible Notes Claims through the undersigned; (2) the respective amounts of Class 9 EXXI Convertible Notes Claims owned by each such Beneficial Owner; (3) each such Beneficial Owner's respective vote concerning the Plan; and (4) the customer account or other identification number for each such Beneficial Owner;

(c)     if the undersigned is a Beneficial Owner and uses this Master Ballot to vote the undersigned's Class 9 EXXI Convertible Notes Claims, the undersigned confirms and attests to each of the certifications in Item 5 of the Beneficial Owner Ballot;

(d)     each such Beneficial Owner has certified to the undersigned that the such Beneficial Owner is a Beneficial Owner and is otherwise eligible to vote on the Plan; and

(e)     the undersigned will maintain Beneficial Owner Ballots and evidence of separate transactions returned by Beneficial Owners (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Court or the Debtors, as the case may be, if so ordered.

US 4084140

**Item 5. Voting Nominee Information and Signature.**

Name of Bank, Broker, or Other Nominee:

_____

(Print or Type)

Participant Number: _____

Name of Proxy Holder or Agent for Bank, Broker, or Other Nominee (if applicable):

_____

(Print or Type)

_____

Signature:

Name of Signatory: _____

Title: _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number:  _____

Date Completed: _____

**YOUR COMPLETED MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

**EXXI BALLOT PROCESSING**
**C/O EPIQ BANKRUPTCY SOLUTIONS, LLC**
**777 THIRD AVENUE, 12TH FLOOR**
**NEW YORK, NY 10017**

**BALLOTS RECEIVED VIA EMAIL OR FACSIMILE WILL NOT BE COUNTED.**

**TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016.**

IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE.

US 4084140

## MASTER BALLOT INSTRUCTIONS

1.      If a Voting Nominee is transmitting the votes of any Beneficial Owner of Class 9 EXXI Convertible Notes Claims, such Voting Nominee may do one of the following:

    a.      "Pre-validate" the individual Ballot contained in the Solicitation Package and forward the Solicitation Package to the Beneficial Owner of the Class 9 EXXI Convertible Notes Claim for voting within five business days after the receipt by such Voting Nominee of the Solicitation Package.  A Voting Nominee "pre-validates" a Beneficial Owner Ballot by signing the Beneficial Owner Ballot, including their DTC participant number, indicating the account number of the Beneficial Owner and the principal amount of Class 9 EXXI Convertible Notes Claim held by the Voting Nominee for such Beneficial Owner, and forwarding the Beneficial Owner Ballot, together with the Solicitation Package, to the Beneficial Owner.  The Beneficial Owner shall then complete the information requested on the Beneficial Owner Ballot and return the Beneficial Owner Ballot directly to the Solicitation Agent the return envelope provided in the Solicitation Package.  A list of Beneficial Owners to whom "pre-validated" Beneficial Owner Ballots were delivered should be maintained by Voting Nominees for inspection for at least one year.

    b.      Within five business days after receipt by such Voting Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Owner of the Class 9 EXXI Convertible Notes Claims for voting along with a return envelope provided by and addressed to the Voting Nominee.  The Beneficial Owner shall then return the individual Beneficial Owner Ballot to the Voting Nominee.  In such case, the Voting Nominee will tabulate the votes of its respective Beneficial Owners on a Master Ballot that will be provided to the Voting Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in the Master Ballot, and thereafter return the Master Ballot to the Solicitation Agent.  The Voting Nominee should advise the Beneficial Owner to return their individual Beneficial Owner Ballots to the Voting Nominee by a date calculated by the Voting Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is <u>actually received</u> by the Solicitation Agent on or before the Voting Deadline.

2.      The Plan can be confirmed by the Court and thereby made binding upon you and the Beneficial Owners if it is accepted by the Holders of two-thirds of the aggregate principal amount and more than one half in number of Claims in each class that votes on the Plan, and if it otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Court may nonetheless confirm the Plan if it finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

3.      With regard to any Beneficial Owner Ballots returned to you, to have the vote of your Beneficial Owners count, you must:  (a) retain such Beneficial Owner Ballots in your

files and transfer the requested information from each such Beneficial Owner Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Solicitation Agent in accordance with these instructions.

4.      Please keep any records of Beneficial Owner Ballots for at least one year after the Voting Deadline (or such other date as is set by subsequent Court order). You may be ordered to produce the Beneficial Owner Ballots to the Debtors or the Court.

5.      If you are both the Voting Nominee and Beneficial Owner and you wish to vote such Class 9 EXXI Convertible Notes Claims for which you are a Beneficial Owner, you may return either a Beneficial Owner Ballot or the Master Ballot for such Class 9 EXXI Convertible Notes Claims.

6.      The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

7.      The Master Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

8.      The following ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Owner's customer account or other identification number for the Beneficial Owner, (b) any ballot cast by a Person that does not hold a Claim or Interest in a class entitled to vote on the Plan, (c) any unsigned ballot, (d) any ballot that does not contain an original signature, (e) any ballot not marked to accept or reject the Plan, and any ballot indicating both acceptance and rejection of the Plan.

9.      If a Beneficial Owner submits ballots for multiple Class 9 EXXI Convertible Notes Claims, whether held in other accounts or other record names, and such ballots indicate different votes to accept or reject the Plan, then all such ballots will not be counted.

10.    If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  The method of delivery of the Master Ballot to the Solicitation agent is at your election and risk.

11.    The Master Ballot should not be sent to the Debtors, the United States Trustee for the Southern District of Texas, or the Debtors' financial or legal advisors.

12.    There may be changes made to the Plan that do not cause material adverse effects on an accepting class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

**<u>Exhibit F-10</u>**

**Class 10 Ballot: Trade Claims**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 16-31928 |
| | § | |
| **ENERGY XXI LTD,** *et al.*, | § | (Chapter 11) |
| | § | |
| Debtors.[1] | § | Jointly Administered |

## BALLOT FOR HOLDERS OF
## TRADE CLAIMS TO ACCEPT OR REJECT THE PLAN

### CLASS 10: TRADE CLAIMS

**Only Holders of Trade Claims
may vote to accept or reject the Plan using this Ballot.**

---

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016 (THE "*VOTING DEADLINE*"), UNLESS EXTENDED BY THE DEBTORS. THIS BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT (AS DEFINED BELOW) BY THE VOTING DEADLINE.**

---

This ballot (the "***Ballot***") is provided to you to solicit your vote to accept or reject the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "***Plan***"). Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings given to them in the Plan or the Disclosure Statement (as defined below).

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of June 17, 2016 (the "***Voting Record Date***"), a holder of a Claim (a "***Holder***") against the Debtors arising on account of labor performed, or services, materials, goods, or equipment furnished with

---

[1] The debtors in these chapter 11 cases (collectively, the "***Debtors***") and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (0956), and Soileau Catering, LLC (2767). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 1021 Main Street, Suite 2626, Houston, Texas 77002.

respect to development, drilling, completion, maintenance, repair, operations, or related activity on or with respect to any lands, materials, machinery, supplies, improvements, oil and gas leases, wells, or pipelines owned, in whole or in part, by one or more of the Debtors ("***Trade Claims***").[2]

The Plan is attached as **Exhibit A** to the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (the "***Disclosure Statement***"), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Epiq Bankruptcy Solutions, LLC (the "***Solicitation Agent***") by visiting the Solicitation Agent's website at http://dm.epiq11.com/EXL, calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an electronic mail message to tabulation@epiqsystems.com with "EXXI" in the subject line and requesting a copy be provided to you. You should review the Disclosure Statement and the Plan carefully before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

On April 14, 2016, the Debtors each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***"). The Debtors intend to seek the Plan's prompt confirmation by the Court. The Plan can be confirmed by the Court and thereafter made binding on you if it is accepted by the Holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the class or classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

---

[2]    Nothing in this Ballot shall constitute an admission of liability, a concession as to applicable law, or a waiver of any rights or defenses to the Claims or potential Claims of any creditor or party in interest. The Debtors expressly reserve all rights in that regard.

**IMPORTANT NOTICE**
**REGARDING TREATMENT FOR CLASS 10**

Claims in Class 10 consist solely of Trade Claims.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, each Holder of an Allowed Trade Claim shall, at its election, either (a) receive (i) Cash in an amount equal to $[●] on account of each dollar of an Allowed Trade Claim and (ii) a release by the Debtors of all Avoidance Actions against the Holders of Allowed Trade Claims (the "***Trade Claim Settlement Distribution***") or (b) to the extent the Bankruptcy Court or another court of competent jurisdiction enters a Final Order finding that such Allowed Trade Claim is Secured, receive Cash in the amount of such Secured Allowed Trade Claim.

If the Holder of a Trade Claim elects to receive such Holder's Trade Claim Settlement Distribution, (a) such election shall constitute a release of all third party working interest owners and other Persons by any Holder of a Trade Claim of (i) such Holder's Trade Claims and (ii) any and all liability for, or enforcement of, any potential liens, Liens, or Claims with respect to the property to which such Trade Claims, potential liens, Liens, or Claims relate, (b) such Holder shall be deemed to assign its Trade Claim and any liens or security interests securing such Trade Claim to the Reorganized Debtors, and (c) the Trade Claim Settlement Distribution on account of such Trade Claim shall be made on or about the later of (i) the Effective Date and (ii) the date such Trade Claim becomes Allowed.

If the Holder of a Trade Claim elects not to receive the Trade Claim Settlement Distribution, the first payment on account of its Trade Claim shall be made on or about the date such Trade Claim is determined to be Secured pursuant to a Final Order, on which date such Trade Claim shall become Allowed. Thereafter, the Holder of such Secured Allowed Trade Claim shall receive a second and final payment for the remainder of such Secured Allowed Trade Claim on the last Business Day of the following calendar quarter. If the Holder of a Trade Claim elects not to receive the Trade Claim Settlement Distribution and any portion of its Claim is determined to be Unsecured pursuant to a Final Order, such Unsecured Claim will be treated as a General Unsecured Claim.

**PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.**

3

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

PLEASE COMPLETE ITEMS 2, 3, AND 4. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1. Amount of Claim**. The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of a Trade Claim in the aggregate unpaid amount inserted into the box below,[3] without regard to any accrued but unpaid interest.

$$\boxed{\qquad\qquad \$ \qquad\qquad}$$

**Item 2. Votes on the Plan**. Please vote either to accept or to reject the Plan with respect to your Claim in Class 10 below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**

**If you (a) do not vote either to accept or reject the Plan, or (b) vote to reject the Plan and do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

---

**Trade Claim Holder's Vote on the Plan**. The undersigned Holder of a Class 10 Trade Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

---

[3] For voting purposes only, subject to tabulation rules.

4

**Item 3. Trade Claim Settlement Distribution**.  Please select the box below if you wish to receive the Trade Claim Settlement Distribution.  If you do not check the box to elect to receive the Trade Claim Settlement Distribution, you will not be entitled to receive a distribution on account of any Allowed Trade Claim until entry of a Final Order determining such Allowed Trade Claim is Secured, as set forth in the Plan.

☐      **Elect** to receive the Trade Claim Settlement Distribution

**Item 4. Optional Release Election**.  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.  If you voted to reject the Plan in Item 2 above, or you abstained from voting, you must check the box below to elect not to grant the releases contained in Article VIII of the Plan.  Election to withhold consent is at your option.  If you submit your Ballot without checking the box below, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.

☐      The undersigned elects NOT to grant the releases contained in Article VIII of the Plan.

**Item 5. Certifications and Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (a) it has the power and authority to vote to accept or reject the Plan, (b) it was the Holder (or is entitled to vote on behalf of such Holder) of the Trade Claim described in Item 1 as of the Voting Record Date, and if it has submitted any other Ballots for other Class 10 Trade Claims held in other accounts or other record names that such Ballots indicate the same vote to accept or reject the Plan, and (c) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.  The undersigned also understands that if it has submitted Ballots for other Class 10 Trade Claims, whether held in other accounts or other record names, and such Ballots indicate different votes to accept or reject the Plan, then all such Ballots will not be counted.

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____

5

US 4084140

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR COMPLETED BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.  PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN THE RETURN ENVELOPE PROVIDED OR AS FOLLOWS:**

| If by First Class Mail to: | If by Overnight Courier or Personal Delivery: |
|---|---|
| EXXI BALLOTING PROCESSING<br>c/o Epiq Bankruptcy Solutions, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | EXXI BALLOT PROCESSING<br>c/o Epiq Bankruptcy Solutions, LLC<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |

**BALLOTS RECEIVED VIA EMAIL OR FACSIMILE WILL NOT BE COUNTED.**

**TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016.**

6

US 4084140

**Ballot for Class 10: Holders of Trade Claims**

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE.

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.  Complete the Ballot by providing all the information requested and sign, date, and return the Ballot in the envelope provided to the Solicitation Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, does not contain an original signature, or is unsigned will not be counted.  **The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline**.  Ballots may not be submitted to the Solicitation Agent by facsimile or email.

2.  If neither the "accept" nor "reject" box is checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted.  If both the "accept" and "reject" box is checked in Item 2, the Ballot will not be counted.

3.  You must vote all your Class 10 Trade Claims under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different Trade Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.  You must complete Item 2 if you wish to elect to receive the Trade Claim Settlement Distribution.  If you do not elect to receive the Trade Claim Settlement Distribution in Item 2, your claim will be treated in accordance with Article III.B.10 of the Plan (as described hereinabove).

5.  If you voted to reject the Plan and elect not to grant the releases contained in Article VIII of the Plan, check the box in Item 4.  Election to withhold consent is at your option.  If you submit your Ballot without the box in Item 4 checked, you will be deemed to consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

6.  If you vote to accept the Plan by checking the "accept" box in Item 2, but you also check the box in Item 4, your election not to grant the releases will not be counted, as your vote in favor of the Plan shall be deemed a consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

7.  The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

8.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

US 4084140

9.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent will supersede any prior Ballot.

10.     In the event that (a) the Debtors revoke or withdraw the Plan or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

11.     There may be changes made to the Plan that do not cause material adverse effects on an accepting class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

12.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE COURT.

13.     PLEASE RETURN YOUR BALLOT PROMPTLY TO THE SOLICITATION AGENT IN THE ENVELOPE PROVIDED.

14.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE SOLICITATION AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR SEND AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE COURT.

15.     THE SOLICITATION AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR COMPLETED BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

| If by First Class Mail to: | If by Overnight Courier or Personal Delivery: |
|---|---|
| EXXI BALLOT PROCESSING<br>c/o Epiq Bankruptcy Solutions, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | EXXI BALLOT PROCESSING<br>c/o Epiq Bankruptcy Solutions, LLC<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |

**TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016**

US 4084140

## Schedule 1

### Plan Injunction, Releases, and Exculpation

If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

A.      *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective**

9

Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any claim or cause of action released pursuant to such releases.

B.    *Releases by Holders of Claims and Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, its Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or

10

other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

C.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Bermuda Proceeding, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in

11

**compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

D.    *Injunction*

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.**

12

**<u>Exhibit F-11</u>**

**Class 11 Ballot: General Unsecured Claims**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 16-31928** |
| | § | |
| **ENERGY XXI LTD,** *et al.*, | § | **(Chapter 11)** |
| | § | |
| **Debtors.**[1] | § | **Jointly Administered** |

## BALLOT FOR HOLDERS OF
## GENERAL UNSECURED CLAIMS TO ACCEPT OR REJECT THE PLAN

### CLASS 11: GENERAL UNSECURED CLAIMS

**Only Holders of General Unsecured Claims
may vote to accept or reject the Plan using this Ballot.**

---

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE
PLAN IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016
(THE "*VOTING DEADLINE*"), UNLESS EXTENDED BY
THE DEBTORS.  THIS BALLOT MUST BE ACTUALLY
RECEIVED BY THE SOLICITATION AGENT (AS
DEFINED BELOW) BY THE VOTING DEADLINE.**

---

This ballot (the "***Ballot***") is provided to you to solicit your vote to accept or reject the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "***Plan***").  Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings given to them in the Plan or the Disclosure Statement (as defined below), as applicable.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of June 17, 2016 (the "***Voting Record Date***"), a holder of an Unsecured Claim (a "***Holder***") against the

---

[1]    The debtors in these chapter 11 cases (collectively, the "***Debtors***") and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is:  1021 Main Street, Suite 2626, Houston, Texas 77002.

US 4084140

Debtors (including, for the avoidance of doubt, any Claim arising from the rejection of an Executory Contract or Unexpired Lease) that is not otherwise paid in full or otherwise satisfied during these chapter 11 cases pursuant to an order of the Court, other than a Priority Tax Claim, an Other Priority Claim, a Note Claim, a Section 510(b) Claim, a Trade Claim, or an Intercompany claim (a "***General Unsecured Claim***").  For the avoidance of doubt, General Unsecured Claims shall include any Second Lien Notes Deficiency Claim.

The Plan is attached as __**Exhibit A**__ to the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (the "***Disclosure Statement***"), which accompanies this Ballot.  The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Epiq Bankruptcy Solutions, LLC (the "***Solicitation Agent***") by visiting the Solicitation Agent's website at http://dm.epiq11.com/EXL, calling (646) 282-2500 or (866) 734-9393 (toll free), or sending an email to tabulation@epiqsystems.com with "EXXI" in the subject line and requesting a copy be provided to you.  You should review the Disclosure Statement and the Plan carefully before you vote.  You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

On April 14, 2016, the Debtors each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***").  The Debtors intend to seek the Plan's prompt confirmation by the Court.  The Plan can be confirmed by the Court and thereafter made binding on you if it is accepted by the Holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the class or classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign and return this Ballot to the Solicitation Agent by the Voting Deadline.

US 4084140

---

**IMPORTANT NOTICE**
**REGARDING TREATMENT FOR CLASS 11**

Claims in Class 11 consist solely of General Unsecured Claims.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, each Holder of an Allowed General Unsecured Claim shall receive, [●].

**PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.**

---

US 4084140

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

PLEASE COMPLETE ITEMS 2, 3, AND 4. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1. Amount of Claim**. The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of a General Unsecured Claim in the aggregate unpaid amount inserted into the box below,[2] without regard to any accrued but unpaid interest.

$ 

**Item 2. Votes on the Plan**. Please vote either to accept or to reject the Plan with respect to your Claims in Class 11 below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**

**If you (a) do not vote either to accept or reject the Plan, or (b) vote to reject the Plan and do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in in Article VIII of the Plan and attached hereto as <u>Schedule 1</u>, and unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Causes of Action.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

---

**General Unsecured Claim Holder's Vote on the Plan**. The undersigned Holder of a Class 11 General Unsecured Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

---

[2]          For voting purposes only, subject to tabulation rules.

US 4084140

**Item 3. Optional Release Election**.  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.  If you voted to reject the Plan in Item 2 above, or you abstained from voting, you must check the box below to elect <u>not</u> to grant the releases contained in Article VIII of the Plan.  Election to withhold consent is at your option.  If you submit your Ballot without checking the box below, you will be deemed to consent to the releases contained in Article VIII of the Plan to the fullest extent permitted by applicable law.

☐     The undersigned elects <u>NOT</u> to grant the releases contained in Article VIII of the Plan.

**Item 4. Certifications and Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (a) it has the power and authority to vote to accept or reject the Plan, (b) it was the Holder (or is entitled to vote on behalf of such Holder) of the General Unsecured Claim described in Item 1 as of the Voting Record Date, and if it has submitted any other Ballots for other Class 11 General Unsecured Claims held in other accounts or other record names that such Ballots indicate the <u>same</u> vote to accept or reject the Plan, and (c) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.  The undersigned also understands that if it has submitted Ballots for other Class 11 General Unsecured Claims, whether held in other accounts or other record names, and such Ballots indicate <u>different</u> votes to accept or reject the Plan, then all such Ballots will not be counted.

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

5

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR COMPLETED BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.  PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN THE RETURN ENVELOPE PROVIDED OR AS FOLLOWS:**

| If by First Class Mail to: | If by Overnight Courier or Personal Delivery: |
|---|---|
| EXXI BALLOTING PROCESSING<br>c/o Epiq Bankruptcy Solutions, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | EXXI BALLOT PROCESSING<br>c/o Epiq Bankruptcy Solutions, LLC<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |

**BALLOTS RECEIVED VIA EMAIL OR FACSIMILE WILL NOT BE COUNTED.**

**TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016.**

US 4084140

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT BY CALLING (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE.

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.   Complete the Ballot by providing all the information requested and sign, date, and return the Ballot in the envelope provided to the Solicitation Agent.  Any Ballot that is illegible, contains insufficient information to identify the holder, does not contain an original signature, or is unsigned will not be counted.

     **The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline**.  Ballots may not be submitted to the Solicitation Agent by facsimile or email.

2.   If neither the "accept" nor "reject" box is checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted.  If both the "accept" and "reject" box is checked in Item 2, the Ballot will not be counted.

3.   You must vote all your Class 11 General Unsecured Claims under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different General Unsecured Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.   If you voted to reject the Plan and elect not to grant the releases contained in Article VIII of the Plan, check the box in Item 3.  Election to withhold consent is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

5.   If you vote to accept the Plan by checking the "accept" box in Item 2, but you also check the box in Item 3, your election not to grant the releases will not be counted, as your vote in favor of the Plan shall be deemed a consent to the releases set forth in Article VIII of the Plan to the fullest extent permitted by applicable law.

6.   The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

7.   The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8. If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent will supersede any prior Ballot.

9. In the event that (a) the Debtors revoke or withdraw the Plan or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE COURT.

12. PLEASE RETURN YOUR BALLOT PROMPTLY TO THE SOLICITATION AGENT IN THE ENVELOPE PROVIDED.

13. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE SOLICITATION AGENT AT (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR SEND AN EMAIL TO TABULATION@EPIQSYSTEMS.COM WITH "EXXI" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE COURT.

14. THE SOLICITATION AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR COMPLETED BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

| If by First Class Mail to: | If by Overnight Courier or Personal Delivery: |
|---|---|
| EXXI BALLOT PROCESSING<br>c/o Epiq Bankruptcy Solutions, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | EXXI BALLOT PROCESSING<br>c/o Epiq Bankruptcy Solutions, LLC<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |

**TELEPHONE: (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M. (CENTRAL TIME) ON JULY 27, 2016**

## Schedule 1

### Plan Injunction, Releases, and Exculpation

If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in in Article VIII of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan

A.      *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective**

9

Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any claim or cause of action released pursuant to such releases.

B.      *Releases by Holders of Claims and Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, its Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the First Lien Credit Agreement, the Second Lien Indenture, the Intercreditor Agreement, the Interim Cash Collateral Order and the Final Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, the Bermuda Proceeding, or upon any other act or omission, transaction, agreement, event, or

10

other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

C.     *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Bermuda Proceeding, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in

11

**compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

D.    *Injunction*

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.**

US 4084140