**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 16-31928** |
| | § | |
| **ENERGY XXI LTD,** *et al.,* | § | **(Chapter 11)** |
| | § | |
| | § | **Jointly Administered** |
| **Debtors.**[1] | § | |

**GLOBAL NOTES, METHODOLOGY, AND SPECIFIC
DISCLOSURES REGARDING THE DEBTORS' SCHEDULES OF
ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

## Introduction

Energy XXI Ltd ("***EXXI***") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "***Debtors***"), with the assistance of their advisors, have filed their respective Schedules of Assets and Liabilities (the "***Schedules***") and Statements of Financial Affairs (the "***Statements***," and together with the Schedules the "***Schedules and Statements***") with the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***"), pursuant to section 521 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"), and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

These *Global Notes, Methodology, and Specific Disclosures Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "***Global Notes***") pertain to, are incorporated by reference in, and comprise an integral part of all of the Debtors' Schedules and Statements. The Global Notes should be referred to, considered, and reviewed in connection with any review of the Schedules and Statements.

The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("***GAAP***"), nor are they intended to be fully reconciled with the financial statements of each Debtor. Additionally, the Schedules and Statements contain unaudited information that is subject to

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 1021 Main Street, Suite 2626, Houston, Texas 77002.

further review, potential adjustment, and reflect the Debtors' commercially reasonable efforts to report the assets and liabilities of each Debtor on an unconsolidated basis.

The Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating or delivering the information contained herein. While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their agents, attorneys and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized. In no event shall the Debtors or their agents, attorneys and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

Mr. Bruce W. Busmire, the Debtors' Chief Financial Officer, has signed each of the Schedules and Statements. Mr. Busmire is an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. Busmire necessarily has relied upon the efforts, statements, and representations of various personnel employed by the Debtors and their advisors. Mr. Busmire has not (and could not have) personally verified the accuracy of each statement and representation contained in the Schedules and Statements, including statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

## Global Notes and Overview of Methodology

1. **Reservation of Rights**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, inadvertent errors or omissions may exist. The Debtors reserve all rights to (i) amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to amend the Schedules and Statements with respect to any and all claim ("*Claim*") descriptions, designations, or Debtor(s) against which the Claim is asserted; (ii) dispute or otherwise assert offsets or defenses to any Claim reflected in the Schedules and Statements as to amount, liability, priority, status or classification; (iii) subsequently designate any Claim as "disputed," "contingent," or "unliquidated;" or object to the extent, validity, enforceability, priority or avoidability of any Claim. Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such Claim or amount is not "disputed," "contingent," or "unliquidated." Listing a Claim does not constitute an admission of liability by the Debtor against which the Claim is listed or against any of the Debtors. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' chapter 11 cases, including, without limitation, issues involving Claims, substantive

US 4331496

consolidation, defenses, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation or rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph. Notwithstanding the foregoing, the Debtors shall not be required to update the Schedules and Statements.

For the avoidance of doubt, the Debtors' restructuring is predicated on the Bankruptcy Rule 9019 settlement that is included in and contemplated by the *Debtors' Proposed Joint Chapter 11 Plan of Reorganization* [Docket No. 327] (the "***Plan***"), and the Restructuring Support Agreement (the "***RSA***"), which is attached as **Exhibit B** to *The Debtors' Motion for Entry of an Order Authorizing the Debtors to Assume the Restructuring Support Agreement* [Docket No. 43]. Specifically, pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, which distributions and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests (as defined in the Plan), and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest (as such terms are defined in the Plan), or any distribution to be made on account of such Allowed Claim or Allowed Interest, including, but not limited to:

- the treatment of the EGC Intercompany Note and the distributions associated therewith;

- any dispute regarding the appropriate allocation of general and administrative costs across the Debtors' Estates;

- any challenges to transfers made by the Debtors to any related entities;

- the value and allocation of the Warrant Package; and

- the releases, exculpations, and injunctions provided in the Plan.

Nothing in the Schedules or Statements is intended to, shall be construed as, or shall have the effect of, modifying, changing, or otherwise affecting the Plan, the RSA, the *Final Order Pursuant to 11 USC 105, 361, 362, 363 and 507 Bankruptcy Rules 2002, 4001 and 9014 and Bankruptcy Local Rule 4001-1 (I) Authorizing Debtors Limited Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, and (II) Modifying the Automatic Stay* [Docket No. 319] (the "***Final Cash Collateral Order***"), or the settlements contained therein or contemplated thereby. To that end, and notwithstanding anything to the contrary contained herein or in the Schedules and Statements:

- The Debtors take no position with regard to, among other things, the amount, validity, priority, allowance, classification or characterization of any and all

3

amounts which may be listed as owing between Debtors and Debtors, or between any Debtors and their non-Debtor affiliates; *provided*, *however* that the Debtors have made certain admissions and stipulations with respect to the Second Lien Intercompany Prepetition Indebtedness (as defined in the Final Cash Collateral Order).

- For purposes of the Plan and the RSA, the Restructuring Support Parties (as defined in the Plan) agreed to certain distributions of equity in the Reorganized Debtors (as defined in the Plan) in exchange for Second Lien Notes Claims. The Schedules and Statements are subject to, in all respects, the provisions of the Plan and the RSA, and the inclusion, characterization, description, or any other reference to the Second Lien Notes Claims in these Schedules and Statements is subject in all respects to the Plan and the RSA.

2. **Description of Cases and "As Of" Information Date**. On April 14, 2016 (the "*Petition Date*"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On April 14, 2016, the Bankruptcy Court entered the *Order Directing Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 23]. On April 26, 2016, the United States Trustee for the Southern District of Texas filed the *Notice of Appointment of Committee of Unsecured Creditors* pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 142].

The asset and liability information provided herein represents the asset and liability data of the Debtors as of the close of business on April 13, 2016, except as otherwise noted.

3. **Net Book Value of Assets**. Unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values as of April 13, 2016. The book values of certain assets may materially differ from their fair market values and/or the Debtors' enterprise valuation prepared in connection with the *Disclosure Statement for the Debtors' Proposed Joint Chapter 11 Plan of Reorganization* [Docket No. 328] (the "*Disclosure Statement*"). More information regarding the Debtors' valuation analysis will be found included as **Exhibit G** to the Disclosure Statement. For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value.

Book values of assets prepared in accordance with GAAP generally do not reflect the current performance of the assets or the impact of the commodity price environment and may differ materially from the actual value and/or performance of the underlying assets. Given the dramatic swing in the commodity prices over the past few months, this difference is material. As such, the value listed in these Schedules and Statements cannot be, and was not, used to determine the Debtors' enterprise valuation.

4. **Recharacterization**. Notwithstanding the Debtors' commercially reasonable efforts to properly characterize, classify, categorize, or designate certain Claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the

Debtors may nevertheless have improperly characterized, classified, categorized, designated, or omitted certain items due to the complexity and size of the Debtors' businesses. Accordingly, the Debtors reserve all of their rights to re-characterize, reclassify, recategorize, redesignate, add, or delete items reported in the Schedules and Statements at a later time as is necessary or appropriate as additional information becomes available, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition. Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

5.    **Liabilities**. The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change. Accordingly, the Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules and Statements as is necessary or appropriate.

The liabilities listed on the Schedules do not reflect any analysis of Claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any asserted Claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's Claim.

6.    **Excluded Assets and Liabilities**. The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including, without limitation, goodwill, accrued salaries, employee benefit accruals, and accrued accounts payable. The Debtors also have excluded rejection damage Claims of counterparties to executory contracts and unexpired leases that may or may not be rejected, to the extent such damage Claims exist. In addition, certain immaterial assets and liabilities may have been excluded.

The Bankruptcy Court has authorized the Debtors to pay, in their discretion, certain outstanding Claims on a postpetition basis. Prepetition liabilities which have been paid postpetition or those which the Debtors plan to pay via such authorization have been designated as either contingent or unliquidated in the Schedules and Statements.

7.    **Insiders**. For purposes of the Schedules and Statements, the Debtors defined "insiders" pursuant to section 101(31) of the Bankruptcy Code as: (a) directors; (b) officers; (c) persons in control of the Debtors; (d) relatives of the Debtors' directors, officers or persons in control of the Debtors; and (e) debtor/non-debtor affiliates of the foregoing. Persons listed as "insiders" have been included for informational purposes only and by including them in the Schedules, shall not constitute an admission that those persons are insiders for purposes of section 101(31) of the Bankruptcy Code. Moreover, the Debtors do not take any position with respect to: (a) any insider's influence over the control of the

US 4331496

Debtors; (b) the management responsibilities or functions of any such insider; (c) the decision making or corporate authority of any such insider; or (d) whether the Debtors or any such insider could successfully argue that he or she is not an "insider" under applicable law or with respect to any theories of liability or for any other purpose.

8.    **Intellectual Property Rights**. Exclusion of certain intellectual property shall not be construed as an admission that such intellectual property rights have been abandoned, terminated, assigned, expired by their terms, or otherwise transferred pursuant to a sale, acquisition, or other transaction.

9.    **Executory Contracts**. Although the Debtors made diligent attempts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so due to the complexity and size of the Debtors' businesses. Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

10.   **Classifications**. Listing (a) a Claim on Schedule D as "secured," (b) a Claim on Schedule E/F as "priority," (c) a Claim on Schedule E/F as "unsecured," or (d) a contract on Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtors of the legal rights of the claimant or a waiver of the Debtors' rights to re-characterize or reclassify such Claims or contracts or to setoff of such Claims.

11.   **Claims Description**. Schedules D and E/F permit each of the Debtors to designate a Claim as "disputed," "contingent," and/or "unliquidated." Any failure to designate a Claim on a given Debtor's Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by that Debtor that such amount is not "disputed," "contingent," or "unliquidated," or that such Claim is not subject to objection. The Debtors reserve all of their rights to dispute, or assert offsets or defenses to, any Claim reflected on their respective Schedules and Statements on any grounds, including liability or classification. Additionally, the Debtors expressly reserve all of their rights to subsequently designate such Claims as "disputed," "contingent" or "unliquidated." Moreover, listing a Claim does not constitute an admission of liability by the Debtors.

12.   **Causes of Action**. Despite their commercially reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third-parties as assets in the Schedules and Statements, including, without limitation, causes of actions arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. The Debtors reserve all of their rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of

US 4331496

law (collectively, "*Causes of Action*") they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

13. **Summary of Significant Reporting Policies**. The following is a summary of significant reporting policies:

- Undetermined Amounts. The description of an amount as "unknown," "TBD" or "undetermined" is not intended to reflect upon the materiality of such amount.

- Totals. All totals that are included in the Schedules and Statements represent totals of all known amounts. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

- Paid Claims. The Debtors were authorized (but not directed) to pay certain outstanding prepetition Claims pursuant to various orders entered by the Bankruptcy Court. Accordingly, certain outstanding liabilities that have been reduced by postpetition payments made on account of prepetition liabilities have been designated as either contingent or unliquidated. To the extent the Debtors pay any of the Claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all of their rights to amend or supplement the Schedules and Statements or take other action as is necessary or appropriate to avoid over-payment of or duplicate payments for any such liabilities.

- Liens. Property and equipment listed in the Schedules and Statements are presented without consideration of any liens that may attach (or have attached) to such property and equipment.

14. **Currency**. Unless otherwise indicated, all amounts are reflected in U.S. dollars.

15. **Intercompany Payables and Receivables**. Intercompany payables and receivables between the Debtors are set forth on Schedule E/F or Schedule A/B.77, as applicable.

As described more fully in the *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain the Cash Management System, (B) Continue Using Existing Checks and Business Forms, and (C) Continue Intercompany Arrangements and (II) Granting Related Relief* [Docket No. 10] (the "*Cash Management Motion*"), Energy XXI Gulf Coast, Inc. ("*EGC*") maintains the Debtors' centralized main operating account, which receives and disburses funds, as necessary, to accounts maintained at the various Debtors.

The listing by the Debtors of any account between a Debtor and another Debtor or between a Debtor and a non-Debtor affiliate is a statement of what appears in a particular Debtor's books and records and does not reflect any admission or conclusion of the Debtors regarding the allowance, classification, characterization, validity, or priority of

7

US 4331496

such account. The Debtors take no position in these Schedules and Statements as to whether such accounts would be allowed as a Claim, an Interest, or not allowed at all. The Debtors and all parties in interest reserve all rights with respect to such accounts.

16. **Setoffs**. The Debtors periodically incur certain setoffs in the ordinary course of business.

Setoffs in the ordinary course can result from various items including, but not limited to, intercompany transactions, pricing discrepancies, returns, warranties, refunds, negotiations and/or disputes between Debtors and their customers regarding regulatory or governmental impositions costs incurred by Debtors, and other disputes between the Debtors and their customers and/or suppliers. These normal setoffs are consistent with the ordinary course of business in the Debtors' industry and can be particularly voluminous, making it unduly burdensome and costly for the Debtors to list such ordinary course setoffs. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and as such, are or may be excluded from the Debtors' Schedules and Statements.

17. **Employee Addresses**. Employee addresses have been removed from entries listed throughout the Schedules and Statements, where applicable.

18. **Global Notes Control**. In the event that the Schedules and Statements differ from these Global Notes, the Global Notes shall control.

### Specific Disclosures with Respect to the Debtors' Schedules

**Schedules Summary**. Except as otherwise noted, the asset information provided herein represents the Debtors' data regarding their assets as of April 13, 2016, and the liability information provided herein represents the Debtors' data regarding their liabilities as of the close of business on the Petition Date.

For financial reporting purposes, the Debtors and certain of their non-Debtor affiliates ordinarily prepare consolidated financial statements. Unlike the consolidated financial statements, the Schedules reflect the assets and liabilities of each Debtor on a nonconsolidated basis, except where otherwise indicated. Accordingly, the totals listed in the Schedules will likely differ, at times materially, from the consolidated financial reports prepared by the Debtors for financial reporting purposes or otherwise.

The Schedules do not purport to represent financial statements prepared in accordance with GAAP, nor are they intended to be fully reconciled with the financial statements of each Debtor. Additionally, the Schedules contain unaudited information that is subject to further review and potential adjustment, and reflect the Debtors' reasonable best efforts to report the assets and liabilities of each Debtor on an unconsolidated basis. Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, this is not an admission that the Debtor was solvent as of the Petition Date or at any time before the Petition Date. Likewise, to the extent a Debtor shows more liabilities than assets, this is not an

admission that the Debtor was insolvent as of the Petition Date or at any time before the Petition Date.

**Schedule A/B.3**. The bank account balances listed are as of the Petition Date.

**Schedule A/B.11**. In the ordinary course of the Debtors' businesses, cash settlements must occur after the completion of an accounting settlement cycle, which typically takes 60 days following the end of a production month. The timeframe to calculate a net proceed for a given production month requires the following steps: (1) invoicing of joint interest partners and purchasers, (2) payment of capital and operating expenses, (3) receipt of gross sales revenues, (4) receipt of gross gathering, processing, and transportation expense payments, (5) receipt of joint interest billing payments, and (6) disbursement of payments to royalty owners. These steps are necessarily accomplished over the span of 60 days following the end of a production month, reflecting a 30-day settlement cycle for oil and a 60-day settlement cycle for gas. Accordingly, there is a significant amount of accounts receivable owed to the Debtors as of the Petition Date which will be recouped or reimbursed in the ordinary course of business. All oil and gas receivables listed as current or less than 90 days in the Debtors' books and records have been included. In addition, the Schedules reflect a $6.9 million insurance receivable listed as current in the Debtors' books and records. However, the actual timing for payment is subject to change.

**Schedule A/B.15**. Equity interests in subsidiaries and affiliates primarily arise from common stock ownership or member or partnership interests. For purposes of these Schedules, the Debtors have listed an undetermined value for the equity interests of all of their subsidiaries and affiliates. The book values of certain assets may materially differ from their fair market values and/or the Debtors' enterprise valuation prepared in connection with the Disclosure Statement.

Book values of assets prepared in accordance with GAAP generally do not reflect the current performance of the assets or the impact of the commodity price environment and may differ materially from the actual value and/or performance of the underlying assets. Given the dramatic swing in the commodity prices over the past few months, this difference is material. As such, the value listed in these Schedules and Statements cannot be, and was not, used to determine the Debtors' enterprise valuation.

**Schedule A/B.55**. Certain of the instruments reflected on Schedule A/B.55 may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional lands, and other miscellaneous rights. Such rights, powers, duties, and obligations are not separately set forth on Schedule A/B.55. The Debtors hereby expressly reserve the right to assert that any instrument listed on Schedule A/B.55 is an executory contract within the meaning of section 365 of the Bankruptcy Code. The Debtors reserve all of their rights, claims, and causes of action with respect to claims associated with any contracts and agreements listed on Schedule A/B.55, including their right to dispute or challenge the characterization or the structure of any transaction, document, or instrument (including any intercompany agreement) related to a creditor's claim.

**Schedule A/B.77**. The listing by the Debtors of any account between a Debtor and another Debtor or between a Debtor and a non-Debtor affiliate is a statement of what appears in a particular Debtor's books and records and does not reflect any admission or conclusion of the

US 4331496

Debtors regarding the allowance, classification, characterization, validity, or priority of such account. The Debtors take no position in these Schedules and Statements as to whether such accounts would be allowed as a Claim, an Interest, or not allowed at all. The Debtors and all parties in interest reserve all rights with respect to such accounts.

Schedule A/B.77, with respect to certain of the Debtors, lists an aggregate value of oil and natural gas properties held by the applicable Debtor. Oil and gas properties are comprised of both proved and unproved properties. Due to the voluminous nature of the numerous assets associated with these properties, including, but not limited to, leases, materials, and equipment, the Debtors have not provided an enumerated list of the individual assets, other than leases, which are set forth in Schedule A/B.55. More information regarding the Debtors' valuation analysis will be included as **Exhibit G** to the Disclosure Statement.

**Schedule D**. The Debtors have not included parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights. Although there are multiple parties that hold a portion of the debt included in the Debtors' prepetition secured credit facility and the Second Lien Indenture (as defined in the Plan), only the administrative agent and the indenture trustee have been listed for purposes of Schedule D. The amounts outstanding under the Debtors' prepetition secured credit facilities reflect approximate amounts as of the Petition Date.

**Schedule E/F**. The listing by the Debtors of any account between a Debtor and another Debtor or between a Debtor and a non-Debtor affiliate is a statement of what appears in a particular Debtor's books and records and does not reflect any admission or conclusion of the Debtors regarding the allowance, classification, characterization, validity, or priority of such account. The Debtors take no position in these Schedules and Statements as to whether such accounts would be allowed as a Claim, an Interest, or not allowed at all. The Debtors and all parties in interest reserve all rights with respect to such accounts.

The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors. The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

As more fully described in the Debtors' *Emergency Motion for Entry of Interim and Final Orders Authorizing the Debtors to Pay Prepetition Royalty and Working Interest Obligations, Delay Rentals, Joint Interest Billings, Transportation Costs, and Gas Buybacks* [Docket No. 8], the Debtors are the operators, often under joint operating or joint exploration agreements with other parties, for a number of oil and gas wells in which the Debtors also hold an interest. In connection with the daily operation of those wells, the Debtors incur numerous lease operating expenses for which the Debtors are then reimbursed by their partners for the partners' share of the expenses. Where the Debtors hold non-operating working interests in wells under various joint operating agreements, the Debtors reimburse the operators of those wells for the Debtors' share of the relevant operating costs, including production expenses, taxes, etc. The Debtors are authorized to make payments on account of the foregoing pursuant to the *Final Order Authorizing the Debtors to Pay Prepetition Royalty and Working Interest Obligations, Delay Rentals, Joint Interest Billings, Transportation Costs, and Gas Buybacks* [Docket No. 320], and

10

such accrued and payable amounts are not reflected on the Schedules and Statements.   The Debtors have included a supplement with their Schedules in accordance with Texas Business and Commerce Code § 9.343.

Pursuant to the *Final Order (A) Authorizing the Debtors to (I) Pay Prepetition Wages, Salaries, Employee Benefits, and Other Compensations, (II) Maintain Employee Benefit Programs and Pay Related Administrative Obligations and (III) Pay Independent Contractor Obligations, and (B) Directing Financial Institutions to Receive, Process, and Honor, and Pay All Checks Presented for Payment and to Honor All Fund Transfer Requests Related to Such Obligations* [Docket No. 55] (the "***Wages Order***"), the Bankruptcy Court granted the Debtors authority to pay or honor certain prepetition obligations for employee wages, salaries, and other compensation, reimbursable employee expenses, and employee medical and similar benefits. The Debtors have not listed on Schedule E/F any wage or wage-related obligations for which the Debtors have been granted authority to pay pursuant to any order that has been entered by the Bankruptcy Court. The Debtors believe that all such claims have been, or will be, satisfied in the ordinary course during their chapter 11 cases pursuant to the authority granted in the Wages Order.

Schedule E/F does not include certain deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals are general estimates of liabilities and do not represent specific Claims as of the Petition Date. The Debtors have made every effort to include as contingent, unliquidated, or disputed the Claim of any vendor not included on the Debtors' open accounts payable that is associated with an account that has an accrual or receipt not invoiced.

**Schedule G**. Certain of the instruments reflected on Schedule G may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional lands, and other miscellaneous rights. Such rights, powers, duties, and obligations are not separately set forth on Schedule G. The Debtors hereby expressly reserve the right to assert that any instrument listed on Schedule G is an executory contract within the meaning of section 365 of the Bankruptcy Code. The Debtors reserve all of their rights, claims, and causes of action with respect to claims associated with any contracts and agreements listed on the Schedules, including their right to dispute or challenge the characterization or the structure of any transaction, document, or instrument (including any intercompany agreement) related to a creditor's claim.

Certain confidentiality and non-compete agreements may not be listed on Schedule G. The Debtors reserve all of their rights with respect to such agreements.

Certain of the contracts and agreements listed on Schedule G may consist of several parts, including, purchase orders, amendments, restatements, waivers, letters and other documents that may not be listed on Schedule G or that may be listed as a single entry.

The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, each executory

11

contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed thereon. In some cases, the same supplier or provider appears multiple times on Schedule G. This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.

**Schedule H**. Although there are multiple lenders under the Debtors' prepetition debt facilities, only the administrative agents have been listed on Schedule H.

## Specific Disclosures with Respect to the Debtors' Statements

**Statement 1**. The gross revenue from business is listed through April 13, 2016, rather than through the Petition Date, and includes oil and gas revenues as well as hedge proceeds.

**Statement 2**. For financial reporting purposes, the Debtors and certain of their non-Debtor affiliates historically prepare consolidated financial statements. Unlike those consolidated financial statements, Statement 2 reflects the non-business revenue of each Debtor on a nonconsolidated basis. Accordingly, non-business revenue reported for individual Debtors may be shown in the Statements as revenue for that Debtor, whereas on a consolidated basis, may be shown as a net expense. The non-business revenue reported may include intercompany interest income and capital contributions.

**Statement 3**. In Statement 3, disbursements made on account of multiple invoices may be reflected as a single payment.

All disbursements listed in Statement 3 are made through the Debtors' cash management system. As described more fully in the Cash Management Motion, when a check issued by a Debtor is presented, money is funded to that Debtor's account from an EGC operating account and then disbursed to the presenter of the check. In addition, certain Debtors make disbursements from available funds and receive supplemental funding from the EGC operating account. The Debtors settle such disbursements funded by the EGC operating account through intercompany journal entries at the end of each month. Such disbursements are reflected in the applicable Debtor's Statement 3.

Statement 3 may include remittances to counterparties to the Debtors' oil and gas leases on account of such owners' share of revenue from the producing wells located on the respective property or lands pooled therewith pursuant to the terms of their oil and gas lease. The response may also include remittances of overriding royalties to the owners of those interests as well as the holders of non-participating royalty interests pursuant to applicable agreements. Such remittances do not represent property of the Debtors' estates. The amounts listed in Statement 3 may also be net of other forms of reimbursements, such as repayments.  In addition, the Debtors are obligated under various agreements to market the oil and gas production of certain owners of working interests to potential purchasers and remit the amounts due to the appropriate parties. Specifically, following the sale of production and the receipt of proceeds attributable thereto, the Debtors are obligated to remit the amount of those proceeds belonging to the owner of the

12

working interest, net of all applicable mineral interests, gathering costs, processing and transportation expenses, and production taxes, as applicable. Certain agreements require the Debtors to process and forward to the appropriate parties, from funds otherwise belonging to third parties, the amounts due on account of such interests and expenses. The foregoing amounts are not property of the Debtors' estates, but may be included in Statement 3.

**Statement 4**.  The Debtors provide certain key employees with corporate credit cards, which are used for, among other things, business-related travel and meal expenses. The Debtors also own one corporate King Air 350 airplane owned by Energy XXI Services, LLC, which is made available from time to time for business-related uses by certain key employees. The airplane is an important component of the Debtors' business operations.

Certain expenses reflected solely as a transfer to third parties are business marketing and development expenses that the Debtors pay directly to vendors in the ordinary course of business, such as professional athletics season tickets and expenses related to board meetings.

Directors and officers listed as transferees in Statement 4 for EXXI may be (i) directors or officers of EXXI as well as directors or officers of other Debtors or non-Debtor affiliates, (ii) directors or officers of one or more Debtors or non-Debtor affiliates other than EXXI, or (iii) former directors or officers no longer employed by the Debtors.

**Statement 11**. All disbursements listed in Statement 11 were initiated by EXXI or EGC (as applicable) and disbursed by EGC or Energy XXI Services, LLC (as applicable), but were for the benefit of all Debtors.

**Statement 13**. The Debtors do not take any position with respect to whether transfers identified in the response to Question 13 in the Statements are made in the ordinary course of business. Certain transfers listed in this response are included solely out of an abundance of caution. The distribution amount listed is net of contributions.

**Statement 21**. In connection with their oil and gas assets, the Debtors are obligated, pursuant to their oil and gas leases and other agreements, to remit to counterparties to the oil and gas leases and, potentially, other parties their share of revenue from the producing wells located on the respective properties pursuant to the terms of their oil and gas lease. In addition, overriding royalties must be remitted to the owners of those interests, and the holders of nonexecutive mineral interests, as well as the holders of nonparticipating royalty interests, must receive the proceeds due to them pursuant to the applicable agreement. The foregoing amounts were authorized to be paid under the emergency granted by the Court pursuant to the motions and applications filed on the Petition Date (the "*First Day Orders*"), are not property of the Debtors' estates, and are not included in Statement 21.

The Debtors are obligated under various agreements to market the oil and gas production of certain owners of working interests to potential purchasers and remit the amounts due to the appropriate parties. Specifically, following the sale of production and the receipt of proceeds attributable thereto, the Debtors are obligated to remit the net amount of those proceeds belonging to the owner of the working interest, net of all applicable mineral interests, gathering costs, processing and transportation expenses, and production taxes, as applicable. Certain

13

agreements require the Debtors to process and forward to the appropriate parties, from funds otherwise belonging to third parties, the amounts due on account of such interests and expenses. The foregoing amounts were authorized to be paid under applicable First Day Orders, are not property of the Debtors' estates, and are not included in Statement 21.

The Debtor jointly owns certain surplus inventory that was originally obtained on behalf of the applicable joint interest owner for the drilling, maintenance or operation of an oil and gas property. If these materials are ultimately not needed at the subject property they may be stored as surplus inventory either at an oil and gas property site or a storage yard.

**Statement 26d**.  Certain of the Debtors are registrants with the Securities and Exchange Commission and file with such agency periodic financial reports on a consolidated basis. These reports also contain information about those Debtors' finances and are available publically through the Company's website.

**Statement 30**.   The Debtors provide certain key employees with corporate credit cards, which are used for, among other things, business-related travel and meal expenses. The Debtors also own one corporate King Air 350 airplane owned by Energy XXI Services, LLC, which is made available from time to time for business-related uses by certain key employees. The airplane is an important component of the Debtors' business operations.

Certain expenses reflected solely as a transfer to third parties are business marketing and development expenses that the Debtors pay directly to vendors in the ordinary course of business, such as professional athletics season tickets and expenses related to board meetings.

Directors and officers listed as transferees in Statement 4 for EXXI may be (i) directors or officers of EXXI as well as directors or officers of other Debtors or non-Debtor affiliates, (ii) directors or officers of one or more Debtors or non-Debtor affiliates other than EXXI, or (iii) former directors or officers no longer employed by the Debtors.

**Statement 31**. Certain Debtors or their predecessor entities may have submitted tax filings as part of a different consolidated tax group prior to their acquisition by the Debtors. Such filings are not listed in Statement 31 as they do not relate to the Debtors.

*[Remainder of page intentionally left blank]*

14

US 4331496

**Fill in this information to identify the case:**

Debtor    Energy XXI Ltd

United States Bankruptcy Court for the:   Southern District of Texas, Houston Division

Case number    16-31928
(if known)

☐ Check if this is an
    amended filing

Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    12/15

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages,
write the debtor's name and case number (if known).

| Part 1: | Income |
|---|---|

1. **Gross revenue from business**

    ☑ None

2. **Non-business revenue**
Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected
from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

    ☐ None

| | | | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
|---|---|---|---|---|
| From the beginning of the fiscal year to filing date: | From 7/1/2015 | To 4/13/2016 | INTEREST INCOME | $13,552,309.65 |
| For prior year: | From 7/1/2015 | To 4/13/2016 | GAIN ON EXTINGUISHEMENT OF DEBT | $33,202,605.00 |
| For the year before that: | From 7/1/2014 | To 6/30/2015 | INTEREST INCOME | $20,530,434.22 |
| For the year before that: | From 7/1/2013 | To 6/30/2014 | INTEREST INCOME | $19,923,575.79 |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

3. **Certain payments or transfers to creditors within 90 days before filing this case**
List payments or transfers—including expense reimbursements—to any creditor, other than regular employee compensation, within 90 days
before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,425. (This amount may be adjusted
on 4/01/16 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

    ☑ None

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or
guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than
$6,425. (This amount may be adjusted on 4/01/16 and every 3 years after that with respect to cases filed on or after the date of adjustment.)
Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives;
general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of
the debtor. 11 U.S.C. § 101(31).

    ☑ None

5. **Repossessions, foreclosures, and returns**
List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor,
sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

    ☑ None

6. **Setoffs**
List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an
account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the
debtor owed a debt.

    ☑ None

Debtor   Energy XXI Ltd.                                    Case number (if known) 16-31928
_____
(Name)

| Part 3: | Legal Actions or Assignments |
|---|---|

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
   List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity–within 1 year before filing this case.

   ☐ None

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| BSEE/DOI<br><br>**Case number** | REGULATORY NOTICE ONLY | | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| FINRA<br><br>**Case number** | INFORMAL INVESTIGATION | | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| GRANGER, BARRY V. EPL OIL & GAS, INC., ENERGY XXI GOM, LLC, ENERGY XXI GULF COAST, INC., ENERGY XXI, LTD.<br><br>**Case number**<br>6:15-CV-02448 | PERSONAL INJURY | US DISTRICT CT FOR WESTERN DISTRICT OF LOUISIANA | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| ROMERO, RODDY V. NABORS OFFSHORE SERVIVES, INC., & ENERGY XXI GOM, LLC<br><br>**Case number**<br>6:15-CV-01988 | PERSONAL INJURY | UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF LOUISIANA, LAFAYETTE | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| SECURITIES EXCHANGE COMMISSION<br><br>**Case number** | REGULATORY NOTICE ONLY | SECURITIES EXCHANGE COMMISSION | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| SMITH MARINE TOWING CORP. AND KJS TOWING, INC. V. EPL OIL & GAS, INC., ENERGY XXI AND ENI US OPERATING CO., INC.<br><br>**Case number**<br>2:15-CV-05489-KDE-JCW | LIEN CLAIM | US DISTRICT CT EASTERN DISTRICT OF LOUISIANA | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| SMITH MARINE TOWING CORP. AND KJS TOWING, INC. V. EPL OIL & GAS, INC., ENERGY XXI AND ENI US OPERATING CO., INC.<br><br>**Case number**<br>2:15-CV-05492-HGB-KWR | LIEN CLAIM | US DISTRICT CT EASTERN DISTRICT OF LOUISIANA | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| VICE, RUSSELL V. TOTAL CORROSION MANAGEMENT, LLC (TROY MOREAUX), EPL OIL & GAS, INC.,  ENERGY XXI GOM, LLC, SEACOR LB OFFSHORE LLC<br><br>**Case number**<br>6:15-CV-02457 | PERSONAL INJURY | US DISTRICT CT FOR WESTERN DISTRICT OF LOUISIANA | ☑ Pending<br>☐ On appeal<br>☐ Concluded |

8. **Assignments and receivership**
   List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

   ☑ None

| Part 4: | Certain Gifts and Charitable Contributions |
|---|---|

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

   ☑ None

| Part 5: | Certain Losses |
|---|---|

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

    ☑ None

| Debtor | Energy XXI Ltd | Case Number (if known) | 16-31928 |
|--------|----------------|------------------------|----------|
| | (Name) | | |

---

| **Part 6:** | **Certain Payments or Transfers** |
|---|---|

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

**13. Transfers not already listed on this statement**

List any transfers of money or other property—by sale, trade, or any other means—made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.
Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

---

| **Part 7:** | **Previous Locations** |
|---|---|

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

---

| **Part 8:** | **Health Care Bankruptcies** |
|---|---|

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
— diagnosing or treating injury, deformity, or disease, or
— providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ None

---

| **Part 9:** | **Personal Identifiable Information** |
|---|---|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☑ No.
☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?
    ☑ No. Go to Part 10.
    ☐ Yes. Fill in below:

---

| **Part 10:** | **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units** |
|---|---|

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☐ None

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| | | | | |

---

| Debtor | Energy XXI Ltd. | | | | | Case number (if known) | 16-31928 |
|---|---|---|---|---|---|---|---|

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| COMERICA BANK | 9327 | ☐ Checking<br>☒ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other | 3/28/2016 | $5,529,031.70 |
| FIDELITY | 6472 | ☐ Checking<br>☒ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other | 3/28/2016 | $41,773.43 |
| WHITNEY BANK | 7040 | ☐ Checking<br>☒ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other | 4/1/2016 | $5,133.87 |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☒ None

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☐ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| IHS-DATA LOGIC SERVICES<br>1821 W. SAM HOUSTON PKWY. N.<br>HOUSTON, TX 77043 | EBONY FORD, LAURA GAMBOA, LEA GUTIERREZ, BRENDA GUZMAN, DEBBIE MORGANSTERN, NIDYA QURESHI, BERENICE RODARTE, BRYAN SCOTT, JORDAN SETTLES, SHEILA WATSON | WELL FILES, CONTRACTS, DATA FILES, ACCOUNTING FILES, BUSINESS RECORDS ETC. | ☐ No<br>☒ Yes |

**Part 11:    Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☒ None

**Part 12:    Details About Environmental Information**

For the purpose of Part 12, the following definitions apply:

■ *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

■ *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

■ *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☒ No

☐ Yes.  Provide details below.

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☐ No

☒ Yes.  Provide details below.

Debtor    Energy XXI Ltd                                    Case number (if known) 16-31928
          (Name)

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| EAST CAMERON 334 B | ENVIRONMENTAL PROTECTION AGENCY | | 07/01/2005 |
| EAST CAMERON 335 A | ENVIRONMENTAL PROTECTION AGENCY | | 07/01/2005 |
| EAST CAMERON 335 A | ENVIRONMENTAL PROTECTION AGENCY | | 09/01/2009 |
| EAST CAMERON 335 C | ENVIRONMENTAL PROTECTION AGENCY | | 07/01/2005 |
| EC 334 B | ENVIRONMENTAL PROTECTION AGENCY | | 08/01/2010 |
| EC 335 A | ENVIRONMENTAL PROTECTION AGENCY | | 02/01/2010 |
| EI 32 F TANK | ENVIRONMENTAL PROTECTION AGENCY | | 04/01/2015 |
| EUGENE ISLAND 275 K | ENVIRONMENTAL PROTECTION AGENCY | | 07/01/2005 |
| EUGENE ISLAND 280 A | ENVIRONMENTAL PROTECTION AGENCY | | 07/01/2005 |
| GORILLA IV @ ST 200 | ENVIRONMENTAL PROTECTION AGENCY | | 09/01/2015 |
| HERCULES 203 | ENVIRONMENTAL PROTECTION AGENCY | | 02/01/2009 |
| HERCULES 203, ST 21 | ENVIRONMENTAL PROTECTION AGENCY | | 04/07/2007 |
| HI 170 A | ENVIRONMENTAL PROTECTION AGENCY | | 02/01/2014 |
| MAIN PASS 123 A | ENVIRONMENTAL PROTECTION AGENCY | | 02/01/2009 |
| MP 60 A | ENVIRONMENTAL PROTECTION AGENCY | | 11/01/2012 |
| MP 61 A | ENVIRONMENTAL PROTECTION AGENCY | | 06/01/2007 |
| MP 73 CF | ENVIRONMENTAL PROTECTION AGENCY | | 08/01/2014 |
| SM 239 D-PRD | ENVIRONMENTAL PROTECTION AGENCY | | 05/01/2015 |
| SP 58 - BLAKE 210 | ENVIRONMENTAL PROTECTION AGENCY | | 02/01/2015 |
| SP 58 - BLAKE 210 | ENVIRONMENTAL PROTECTION AGENCY | | 02/01/2015 |
| SP 93 A | ENVIRONMENTAL PROTECTION AGENCY | | 06/01/2012 |
| SS 209 A | ENVIRONMENTAL PROTECTION AGENCY | | 04/01/2015 |
| SS 209 J | ENVIRONMENTAL PROTECTION AGENCY | | 04/01/2015 |
| ST 21 GB | ENVIRONMENTAL PROTECTION AGENCY | | 06/01/2015 |
| TODCO 203, ST 21 | ENVIRONMENTAL PROTECTION AGENCY | | 05/06/2006 |
| TODCO 203, ST 21 | ENVIRONMENTAL PROTECTION AGENCY | | 05/06/2006 |
| VR 164 A | ENVIRONMENTAL PROTECTION AGENCY | | 07/01/2013 |
| VR 164 A | ENVIRONMENTAL PROTECTION AGENCY | | 05/01/2015 |
| WD 30 - OCEAN KING | ENVIRONMENTAL PROTECTION AGENCY | | 12/01/2013 |
| WD 30 J | ENVIRONMENTAL PROTECTION AGENCY | | 10/01/2012 |
| WD 30 J | ENVIRONMENTAL PROTECTION AGENCY | | 10/01/2012 |
| WD 73 - MODS 150 | ENVIRONMENTAL PROTECTION AGENCY | | 05/01/2014 |

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| WD 73 - NABORS P-17 | ENVIRONMENTAL PROTECTION AGENCY | | 03/01/2012 |
| WD 73 - NABORS P-17 | ENVIRONMENTAL PROTECTION AGENCY | | 08/01/2013 |
| WD 73 - NABORS P-17 | ENVIRONMENTAL PROTECTION AGENCY | | 08/01/2013 |
| WD 73 A | ENVIRONMENTAL PROTECTION AGENCY | | 11/01/2015 |
| WD 73 A | ENVIRONMENTAL PROTECTION AGENCY | | 02/01/2016 |
| WD 73 A-D | ENVIRONMENTAL PROTECTION AGENCY | | 04/01/2012 |
| WD 73 A-D | ENVIRONMENTAL PROTECTION AGENCY | | 04/01/2012 |
| WD 73 A-D | ENVIRONMENTAL PROTECTION AGENCY | | 04/01/2012 |
| WD 73 NABORS - P-17 | ENVIRONMENTAL PROTECTION AGENCY | | 06/01/2014 |
| WEST CAMERON 238 A | ENVIRONMENTAL PROTECTION AGENCY | | 07/01/2005 |

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☒ No
☐ Yes. Provide details below.

**Part 13:    Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☐ None

| Business  name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| ENERGY XXI (US HOLDINGS) LIMITED<br>1021 MAIN ST<br>SUITE 2626<br><br>HOUSTON, TX  77002 | OIL & GAS | **Date business existed**<br>From                    ToCURRENT |
| ENERGY XXI INTERNATIONAL LIMITED<br>1021 MAIN ST<br>SUITE 2626<br><br>HOUSTON, TX  77002 | OIL & GAS | **Date business existed**<br>From                    ToCURRENT |
| ENERGY XXI MALAYSIA, LIMITED<br>1021 MAIN ST<br>SUITE 2626<br><br>HOUSTON, TX  77002 | OIL & GAS | **Date business existed**<br>From                    ToCURRENT |
| PING ENERY XXI LIMITED<br>1021 MAIN ST.<br>SUITE 2626<br>HOUSTON, TX  77002 | OIL & GAS | **Date business existed**<br>From8/8/2012          To3/9/2015 |

**26. Books, records, and financial statements**
  26a.  List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| BRUCE BUSMIRE - CHIEF FINANCIAL OFFICER<br>1021 MAIN ST<br>SUITE 2626<br><br>HOUSTON, TX  77002 | From  10/20/2014   To  PRESENT |

Debtor    Energy XXI Ltd                                    Case number (if known)   16-31928
          (Name)

| Name and address | Dates of service | |
|---|---|---|
| HUGH MENOWN - CHIEF ACCOUNTING OFFICER<br>1021 MAIN ST<br>SUITE 2626<br><br>HOUSTON, TX 77002 | From 4/14/2014 | To PRESENT |
| RICK FOX - CONTROLLER<br>1021 MAIN ST<br>SUITE 2626<br><br>HOUSTON, TX 77002 | From 4/14/2014 | To PRESENT |
| WEST GRIFFIN - CHIEF FINANCIAL OFFICER<br>1021 MAIN ST<br>SUITE 2626<br><br>HOUSTON, TX 77002 | From 4/14/2014 | To 10/19/2014 |

26b.  List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service | |
|---|---|---|
| BDO USA, LLP<br>P.O. BOX 31001-0860<br>PASADENA, CA 91110-0860 | From 12/1/2014 | To PRESENT |
| BRUCE BUSMIRE - CHIEF FINANCIAL OFFICER<br>1021 MAIN ST<br>SUITE 2626<br>HOUSTON, TX 77002 | From 10/20/2014 | To PRESENT |
| UHY LLP<br>P.O. BOX 8505<br>CAROL STREAM, IL 60197 | From 4/14/2014 | To 11/30/2014 |
| WEST GRIFFIN - CHIEF FINANCIAL OFFICER<br>1021 MAIN ST<br>SUITE 2626<br>HOUSTON, TX 77002 | From 4/14/2014 | To 10/19/2014 |

26c.  List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| BDO USA, LLP<br>P.O. BOX 31001-0860<br>PASADENA, CA 91110-0860 | |
| BRUCE BUSMIRE - CHIEF FINANCIAL OFFICER<br>1021 MAIN ST<br>SUITE 2626<br>HOUSTON, TX 77002 | |
| CALVETTI FERGUSON PC<br>1201 LOUISIANA, SUITE 800<br>HOUSTON, TX 77002 | |
| HUGH MENOWN - CHIEF ACCOUNTING OFFICER<br>1021 MAIN ST<br>SUITE 2626<br>HOUSTON, TX 77002 | |
| RICK FOX - CONTROLLER<br>1021 MAIN ST<br>SUITE 2626<br>HOUSTON, TX 77002 | |

26d.  List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address |
|---|
| AMEGY BANK NATIONAL ASSOCIATION<br>4400 POST OAK PARKWAY<br>HOUSTON, TX 77027 |

Debtor   Energy XXI Ltd   Case number (if known)   16-31928
         (Name)

| Name and address |
|---|
| BARCLAYS BANK PLC<br>MCKINNEY STREET, SUITE 400<br>HOUSTON, TX  77010 |
| BUREAU OF OCEAN ENERGY MANAGEMENT<br>1201 ELMWOOD PARK BLVD.<br>NEW ORLEANS, LA  70123 |
| BUREAU OF SAFETY AND ENVIRONMENTAL ENFORCEMENT<br>1201 ELMWOOD PARK BLVD.<br>NEW ORLEANS, LA  70123 |
| CANADIAN IMPERIAL BANK OF COMMERCE, NEW YORK BRANCH<br>425 LEXINGTON AVE<br>NEW YORK, NY  10017 |
| CAPITAL ONE, NATIONAL ASSOCIATION<br>1680 CAPITAL ONE DRIVE<br>MCLEAN, VA  22102 |
| CITIBANK, N.A.<br>399 PARK AVENUE<br>NEW YORK, NY  10022 |
| COMERICA BANK<br>1717 MAIN STREET<br>DALLAS, TX  75201 |
| COMMONWEALTH BANK OF AUSTRALIA<br>GROUND FLOOR, TOWER 1, 201 SUSSEX STREET<br>SYDNEY, NSW<br>AUSTRALIA |
| CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK<br>1301 AVE OF THE AMERICAS<br>NEW YORK, NY  10019 |
| CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH<br>11 DR. ROY'S DRIVE 5TH FLOOR<br>GEORGE TOWN<br>GRAND CAYMAN |
| DEUTSCHE BANK AG NEW YORK BRANCH<br>60 WALL STREET.<br>NEW YORK, NY  10005 |
| IBERIABANK<br>2011 LEELAND ST<br>HOUSTON, TX  77003 |
| ING CAPITAL LLC<br>1325 AVE OF THE AMERICAS<br>NEW YORK, NY  10019 |
| KEYBANK NATIONAL ASSOCIATION<br> 600 TRAVIS ST #3100<br>HOUSTON, TX  77002 |
| NATIXIS, NEW YORK BRANCH<br> 1251 AVE OF THE AMERICAS<br>NEW YORK, NY  10020 |
| PNC BANK, NATIONAL ASSOCIATION<br>249 FIFTH AVENUE, ONE PNC PLAZA<br>PITTSBURGH, PA  15222 |
| REGIONS BANK<br>1900 FIFTH AVENUE NORTH<br>BIRMINGHAM, AL  35203 |
| SANTANDER BANK, N.A.<br>75 STATE STREET<br>BOSTON, MA  2109 |
| SUMITOMO MITSUI BANKING CORPORATION<br>277 PARK AVENUE<br>NEW YORK, NY  10172 |
| THE BANK OF NOVA SCOTIA<br>250 VESEY STREET,<br>23RD & 24TH FLOORS<br>NEW YORK, NY  10281 |
| THE ROYAL BANK OF SCOTLAND<br>600 TRAVIS ST # 6500<br>HOUSTON, TX  77002 |

Debtor   Energy XXI Ltd                                    Case number (if known)   16-31928
         (Name)

| Name and address |
|---|
| TORONTO DOMINION<br>909 FANNIN, SUITE 1950<br>HOUSTON, TX  77010 |
| U.S. BANK NATIONAL ASSOCIATION<br>425 WALNUT STREET<br>CINCINNATI, OH  45202 |
| UBS AG, STAMFORD BRANCH<br>677 WASHINGTON BOULEVARD<br>STAMFORD, CT  6912 |
| WELLS FARGO BANK, N.A.<br>420 MONTGOMERY STREET<br>SAN FRANCISCO, CA  94104 |
| WHITNEY BANK<br>228 ST. CHARLES AVE.<br>NEW ORLEANS, LA  70130 |

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ None

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

☐ None

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| ANTONIO DE PINHO | 1021 MAIN ST.<br>SUITE 2626<br>HOUSTON, TX  77002 | OFFICER | PERCENT OF INTEREST IS LESS THAN 0.5% |
| BASHARA (BO) BOYD | 1021 MAIN ST.<br>SUITE 2626<br>HOUSTON, TX  77002 | MANAGER | PERCENT OF INTEREST IS LESS THAN 0.5% |
| BRUCE W. BUSMIRE | 1021 MAIN ST.<br>SUITE 2626<br>HOUSTON, TX  77002 | OFFICER | PERCENT OF INTEREST IS LESS THAN 0.5% |
| CORNELIUS DUPRE II | 510 BERING DR.<br>SUITE 455<br>HOUSTON, TX  77057 | DIRECTOR | PERCENT OF INTEREST IS LESS THAN 0.5% |
| HILL FEINBERG | 325 N. ST. PAUL ST.<br>SUITE 800<br>DALLAS, TX  75201 | DIRECTOR | PERCENT OF INTEREST IS LESS THAN 0.5% |
| HUGH A. MENOWN | 1021 MAIN ST.<br>SUITE 2626<br>HOUSTON, TX  77002 | OFFICER | PERCENT OF INTEREST IS LESS THAN 0.5% |
| JIM LACHANCE | 343 MILBURN AVE.<br>SUITE 207<br>MILBURN, NJ  07041 | DIRECTOR | PERCENT OF INTEREST IS LESS THAN 0.5% |
| JOHN D. SCHILLER, JR. | 1021 MAIN ST.<br>SUITE 2626<br>HOUSTON, TX  77002 | OFFICER | 1.4% |
| KAMIL LODHI | 1021 MAIN ST.<br>SUITE 2626<br>HOUSTON, TX  77002 | MANAGER | PERCENT OF INTEREST IS LESS THAN 0.5% |
| KERRY MCDONOUGH | 1021 MAIN ST.<br>SUITE 2626<br>HOUSTON, TX  77002 | MANAGER | PERCENT OF INTEREST IS LESS THAN 0.5% |
| KEVIN FLANNERY | 605 ANDREWS AVENUE<br>DELRAY BEACH, FL  33483 | DIRECTOR | PERCENT OF INTEREST IS LESS THAN 0.5% |
| RICK FOX | 1021 MAIN ST.<br>SUITE 2626<br>HOUSTON, TX  77002 | MANAGER | PERCENT OF INTEREST IS LESS THAN 0.5% |
| SCOTT GRIFFITHS | 2220 DUNSTAN RD.<br>HOUSTON, TX  77005 | DIRECTOR | PERCENT OF INTEREST IS LESS THAN 0.5% |

Debtor   Energy XXI Ltd.                                     Case number (if known)   16-31928
         (Name)

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-----------------------------------|-----------------------|
| TOM O'DONNELL | 1021 MAIN ST. SUITE 2626 HOUSTON, TX 77002 | MANAGER | PERCENT OF INTEREST IS LESS THAN 0.5% |
| W. KEITH ACKER | 1021 MAIN ST. SUITE 2626 HOUSTON, TX 77002 | MANAGER | PERCENT OF INTEREST IS LESS THAN 0.5% |
| WILLIAM COLVIN | THORLEY CL WEST BYFLEET SURREY, UK KT14 6JE | DIRECTOR | PERCENT OF INTEREST IS LESS THAN 0.5% |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ None

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|----------------------------------------------------|
| J. GRANGER ANDERSON, III | 1021 MAIN ST. SUITE 2626 HOUSTON, TX 77002 | MANAGER | From 4/17/2006 To 4/11/2016 |
| JIM LACHANCE | 343 MILBURN AVE. SUITE 207 MILBURN, NJ 07041 | OFFICER | From 1/15/2015 To 1/15/2015 |

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ None

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ None

| Name of the parent corporation | Employer identification number of the parent corporation. |
|--------------------------------|-----------------------------------------------------------|
| ENERGY XXI, INC. | 26-3832108 |

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ None

**Part 14: Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  05/27/2016

✘ /s/ BRUCE W. BUSMIRE                                        BRUCE W. BUSMIRE
Signature of individual signing on behalf of the debtor          Printed Name

CHIEF FINANCIAL OFFICER
Position or relationship to debtor

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☑ No
☐ Yes