**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 16-31928** |
| | § | |
| **ENERGY XXI LTD, *et al*.,** | § | **(Chapter 11)** |
| | § | |
| | § | **Jointly Administered** |
| **Debtors.**[1] | § | |

---

**DEBTORS' RESPONSE TO UCC'S DISCOVERY LETTER**

Dear Judge Jones:

The UCC's August 21 discovery letter (Dkt. 1089) errs repeatedly by asking this Court to compel the production of documents that the Debtors already have produced. Otherwise, the UCC's letter asks for expert materials to which the Objecting Parties are not entitled, for multi-day depositions without any legitimate basis, and for recently-requested documents that the Debtors are in the process of gathering. None of these matters warrants the Court's time.

Ever since these cases were filed, the UCC and other Objecting Parties have sought to use burdensome discovery (*e.g.*, serving more than 500 formal written document requests including subparts, insisting on over 15 electronic document custodians and in some cases over 70 forensic search terms, and indicating a purported need for 30+ depositions) as a tool in their relentless campaign to delay the confirmation hearing. As noted in the Debtors' Statement in Support of

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Anglo-Suisse Offshore Pipeline Partners, LLC (9562), Delaware EPL of Texas, LLC (9562), Energy Partners Ltd., LLC (9562), Energy XXI GOM, LLC (0027), Energy XXI Gulf Coast, Inc. (8595), Energy XXI Holdings, Inc. (1638), Energy XXI, Inc. (2108), Energy XXI Leasehold, LLC (8121), Energy XXI Ltd (9286), Energy XXI Natural Gas Holdings, Inc. (7517), Energy XXI Offshore Services, Inc. (4711), Energy XXI Onshore, LLC (0308), Energy XXI Pipeline, LLC (5863), Energy XXI Pipeline II, LLC (8238), Energy XXI Services, LLC (3999), Energy XXI Texas Onshore, LLC (0294), Energy XXI USA, Inc. (8552), EPL of Louisiana, L.L.C. (9562), EPL Oil & Gas, Inc. (9562), EPL Pioneer Houston, Inc. (9749), EPL Pipeline, L.L.C. (1048), M21K, LLC (3978), MS Onshore, LLC (8573), Natural Gas Acquisition Company I, LLC (0956), Nighthawk, L.L.C. (9562), and Soileau Catering, LLC (2767). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 1021 Main Street, Suite 2626, Houston, Texas 77002.

1

Plan Confirmation Schedule, the Debtors have produced over 78,000 documents totaling over 716,000 pages. The Objecting Parties have all the discovery they need to evaluate, argue against, and vote on the plan, and they have already conducted a fulsome investigation. More documents and longer depositions will change nothing.

The UCC's letter scrapes the bottom of the barrel in an attempt to generate a few discovery complaints on the eve of the August 23 hearing in a last-ditch attempt to push confirmation. The Court should view the letter for the gamesmanship that it is and deny each request not agreed to below.

### Expert Documents[2]

- **All reports and back-up materials sufficient to show the methodology and assumptions used for the engagements referenced on pages 8, 28, and 31 of the PJT Report, and A-3, A-5, and A-6 of the Opportune Report**

Contrary to the UCC's letter, neither Mr. Laurinaitis nor Mr. Baggett is relying upon non-public information from prior engagements to support his respective work in this case. Instead, as part of the qualifications listing required by Rule 26(a)(2)(B), Mr. Laurinaitis listed several of his "more notable publicly disclosed assignments" on page 8 of his report. In an August 17 email, the UCC responded by unreasonably demanding "all Laurinaitis reports and backup materials" for the assignments listed on page 8 of the PJT Report under the subheading "Oil & Gas / Energy." The UCC's letter ignores the obvious fact that page 8 of Mr. Laurinaitis's report is a CV, not a list of documents that he relied upon. There is no basis for requiring him to turn over reports and back-up materials relating to past engagements listed on his CV. Materials that

---

[2] The bullets listed below generally are quoted from the bullets in the UCC's letter. On Monday, August 22, however, the UCC filed a proposed order (Dkt. 1091) seeking additional documents that were not requested in the initial letter. In an effort to resolve these complaints once and for all, this response addresses both the letter and the new requests in the proposed order, without objecting to the proposed order's inclusion of requests not presented in the letter.

Mr. Laurinaitis cites on pages 28 and 31 of his report already were produced and are addressed separately below.

The UCC's request for additional Opportune materials was not included in its discovery letter, but instead was added to the later-filed proposed order.  In any event, pages A-5 and A-6 of the Opportune Report are titled "David Baggett's Resume" and describe Mr. Baggett's work history dating back to 1997 (including a five-year stint as an executive of a residential plumbing and mechanical company).  Putting that example aside, there is simply no legal basis to require the disclosure of all reports and all back-up materials for all of Mr. Baggett's previous engagements.  As for page A-3, titled "Sources of Information," the company-provided information has already been produced and the other information is publicly available or available for purchase.  Nothing more from page A-3 is required to be produced under the Rules.

- **The investor presentations and press releases and Capital IQ/Bloomberg data identified on page 9 of the PJT Report**

Links to the referenced investor presentations and press releases were produced before the UCC's letter was filed.  Capital IQ and Bloomberg are subscription services.  If the UCC wants access to subscription-only data, it should obtain it from its own financial experts, who are likely to have the relevant subscriptions.

- **All reports for the engagements referenced on pages 28 and 31 of the PJT Report**

PJT Report pages 28 and 31 cite disclosure statements that were publicly filed.  PJT obtained them from the relevant court dockets and the Debtors produced them before the UCC filed its letter.  PJT did not rely in this case on material that was redacted from the publicly filed versions of these documents.  There is no basis for requiring PJT to turn over material from previous engagements that it is not relying on in this case.  *See* FED. R. CIV. P. 26(a)(2)(B)(ii) (requiring disclosure of "the facts or data considered by the witness in forming [his opinions]").

3

- **All back-up materials for the referenced PJT engagements in Halcon Resources, Magnum Hunter Resources Corporation, and Venoco**

The referenced engagements are the same engagements addressed under the prior bullet. Again, PJT is not relying on back-up materials from these engagements to support its valuation in this case. The Debtors are unaware of any precedent suggesting that if an expert quotes a sentence from a publicly filed valuation document, all back-up materials for the prior engagement consequently must be produced. Financial experts could not keep client data confidential if this were the law. Thankfully, it is not.

- **Any reports (including the PJT report from Sabine) from the matters referenced on pages 29 and 32 of the PJT Report**

The cited materials are publicly filed disclosure statements containing valuation analyses performed by experts other than PJT. Again, these were produced before the UCC filed its letter (and, like the other cited disclosure statements, they were publicly available and the UCC could have obtained them for itself instead of asking the Debtors to do so). PJT did not rely in this case on material that was redacted from the publicly filed versions of these documents or the disclosure statements themselves, but cited them to show that the methodology employed by PJT is widely followed. PJT did not cite its own report (if any) from Sabine, but instead a publicly filed disclosure statement from that case, where Lazard was investment banker for the debtors. *See* PJT Report at 29.

- **The "Business Plan" cited in the PJT Report footnote on page 45.**

The referenced business plan is simply the forecast attached to the Debtors' disclosure statement. PJT also considered the gross G&A figures contained in data room file 15.54.1.5 (which was in the data room before the UCC filed its letter). There is nothing more to produce.

- **Notes and memos, if any, regarding "Interviews with Business Planning and Development Team" cited in the Opportune Report p. A-3**

Experts are not obligated to turn over all of their notes under the Federal Rules. *See* FED. R. CIV. P. 26(b)(4) (Draft reports and communications with counsel are work product.). More importantly, this request should be addressed after Mr. Baggett's deposition when the UCC can learn whether any such notes exist.

- **The working papers, supporting documents, analysis and spreadsheets that were prepared for, relied upon or included in the reports of PJT and Opportune**

This request is far too vague for a motion to compel, and draft expert reports are protected from disclosure as work product. *See* FED. R. CIV. P. 26(b)(4) (Draft reports and communications with counsel are work product.). In addition, the UCC already sought PJT's and Opportune's internal communications at the July 25 hearing, and its request was overruled. The "working papers" / internal communications issue was not re-urged to the Court until this eleventh hour. It should be overruled now a second and final time.

### Deposition Length

The Objecting Parties have, from time-to-time, requested multiple days with a witness before his deposition had even started. The Debtors unsurprisingly have objected. Tellingly, until after the UCC filed its discovery letter, ***no party*** complained about a lack of time at the end of the single-day depositions to which the Debtors have agreed—including the depositions of Messrs. Busmire and Menown, who were 30(b)(6) witnesses on multiple topics. The Debtors thus continue to object to preemptively extending the deposition time limits beyond a single day.

The deposition-length complaint in the discovery letter appears to be directed principally at Mr. Laurinaitis, whom the UCC and other parties have deposed thrice already and questioned live in Court on more than one occasion. The Debtors respectfully disagree that Mr.

Laurinaitis's *third* deposition that lasted in excess of eight hours on the record should have spanned more than a single day.

### Debtor Documents[3]

- **The Debtors' reconciliation of its Aries database reserve cases from 2014 to 2015, identified by witness Lee Williams, Director of Reserves as explaining some 400 EPL properties missing from the 2015 database as compared to the 2014 database**

This request was made for the first time by the Equity Committee in an email sent at 4:37 P.M. on Thursday, August 18.  The Debtors are locating the requested document and will identify it in the production if it has already been produced, or produce it if it has not.[4]

- **Documentation of the quarterly impairment testing performed by the Debtors' accounting group and its auditors, identified by Mr. Williams**

These documents first were requested by the UCC on Monday, August 15 after Mr. Williams's deposition that same day.  The Debtors confirmed that these documents already had been produced and sent Bates-numbered copies to the requesting UCC attorney by email on Thursday, August 18.

- **The documents regarding evaluation of potential acquisitions, identified by witness Bruce Busmire, Chief Financial Officer**

These documents first were requested by the UCC on Wednesday, August 17 after Mr. Busmire's deposition.  The Debtors are attempting to locate responsive documents but, to date, have only located documents that: (a) relate to a transaction no longer under consideration, and (b) are subject to a non-disclosure agreement under which they cannot be produced without providing the counterparties notice and an opportunity to object to the disclosure.

---

[3]     The bullets listed below are quoted from the bullets in the UCC's letter, except where the UCC appears to have amended its requests in its proposed order.

[4]     Mr. Williams's testimony indicated that the referenced document already was produced.

- **The Debtors' internal valuations of its East Bay assets sold and M21K transaction, identified by Mr. Busmire**

These documents first were requested by the UCC on Wednesday, August 17 after Mr. Busmire's deposition.  The Debtors have now confirmed that the referenced documents are already in the data room (see folders 15.47 and 15.11, respectively).

- **The Debtors' estimation, as part of its insurance claim, of the value of its unencumbered tort claims, identified by Mr. Busmire**

These documents first were requested by the UCC on Wednesday, August 17 after Mr. Busmire's deposition.  The Debtors are attempting to locate the responsive documents and will produce non-privileged documents to the extent they have not already been produced.

- **Documents related to the Debtors' insurance, including presentations and summaries by the Debtors' hurricane insurance broker**

This request is impermissibly vague and ambiguous for any motion to compel.  The insurance documents previously requested in this case are already in the data room.

- **Communications between the Debtors and BOEM**

Again, this request is vague and ambiguous.  To the extent the requesting parties actually want all communications between the Debtors and BOEM, it also is grossly overbroad.  As for footnote 4 in the UCC letter—which requests a deposition of Ben Marchive II, the Debtors' Vice President of Land—the Debtors will obtain a list of dates on which Mr. Marchive is available and provide it to the requesting parties.

- **Monthly 2015 financial statements for EPL (P&L, balance sheet, and cash flow)**

EPL's financial statements are prepared quarterly, not monthly—and are publicly filed in forms 10-Q.

- **Stand-alone financial statements for EGC for Dec 31, 2015, March 31 and June 30, 2016.**

The Debtors do not prepare stand-alone financial statements for EGC, and this fact has been communicated to the requesting parties and their advisors on multiple occasions.

- **Unredacted minutes of the Board of Directors of EXXI, EPL and EGC for the period after April 2016 reflecting any discussions involving the Debtors' financial advisor, PJT Partners.**

The Debtors object to this request because the unredacted minutes contain privileged information reflecting PJT's and V&E's advice to the Debtors' respective Boards on the bankruptcy and litigation strategy and status.  This request erroneously ignores that PJT was retained to provide "investment banking services to [V&E], for the benefit of the [Debtors] . . . and [to] assist [V&E], for the benefit of the [Debtors], in analyzing, structuring, negotiating and effecting the Restructuring . . . ."  *See* Dkt. 243 at 31 (PJT Engagement Letter).  More importantly, this request ignores the present litigation between the Debtors and the Objecting Parties and suggests that the Objecting Parties have a right to view the Debtors' privileged information in real time.  Again, the UCC's request is baseless and should be rejected.

Dated: August 22, 2016
Houston, Texas

**VINSON & ELKINS LLP**

By:     */s/ David S. Meyer*
        Harry A. Perrin (TX 15796800)
        Bradley R. Foxman (TX 24065243)
        Reese A. O'Connor (TX 24092910)
        First City Tower
        1001 Fannin Street, Suite 2500
        Houston, TX 77002-6760
        Tel:  713.758.2222
        Fax:  713.758.2346
        hperrin@velaw.com; bfoxman@velaw.com;
        roconnor@velaw.com

        - and -

        Paul E. Heath (TX 09355050)
        Trammell Crow Center
        2001 Ross Avenue, Suite 3700
        Dallas, TX 75201
        Tel:  214.220.7700
        Fax: 214.999.7787
        pheath@velaw.com

        - and -

        David S. Meyer (admitted *pro hac vice*)
        Jessica C. Peet (admitted *pro hac vice*)
        Lauren R. Kanzer (admitted *pro hac vice*)
        666 Fifth Avenue, 26th Floor
        New York, NY 10103-0040
        Tel:  212.237.0000
        Fax: 212.237.0100
        dmeyer@velaw.com; jpeet@velaw.com;
        lkanzer@velaw.com
        **ATTORNEYS FOR THE DEBTORS**

9

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 22, 2016, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Reese A. O'Connor  
One of Counsel

US 4579359