UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


| | | |
|---|---|---|
| IN RE: | ) | CASE NO: 16-31928 |
| | ) | CHAPTER 11 |
| | ) | |
| ENERGY XXI, LTD, ET AL., | ) | Houston, Texas |
| | ) | |
| | ) | Monday, November 14, 2016 |
| Debtors. | ) | (4:30 p.m. to 5:26 p.m.) |
| | ) | (5:51 p.m. to 5:59 p.m.) |


HEARING

BEFORE THE HONORABLE DAVID R. JONES,
UNITED STATES BANKRUPTCY JUDGE


<u>APPEARANCES</u>:            (Continued on page 2)


For Debtors:              REESE A. O'CONNOR, ESQ.
                          HARRY A. PERRIN, ESQ.
                          Vinson Elkins, LLP
                          1001 Fannin St., Suite 2500
                          Houston, TX 77002

                          DAVID S. MEYER, ESQ.
                          JESSICA C. PEET, ESQ.
                          Vinson Elkins, LLP
                          666 Fifth Avenue, 26th Floor
                          New York, NY 10103

Courtroom Deputy/ECRO:    Diyana Staples

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXHIBIT A

2

<u>**APPEARANCES FOR:**</u>          (CONTINUED)


Debtors:                  MATTHEW W. MORAN, ESQ.
                          JORDAN W. LEU, ESQ.
                          Vinson & Elkins
                          2001 Ross Avenue, Suite 3700
                          Dallas, TX 75201


Wilmington Trust Company  TODD C. MEYERS, ESQ.
As EGC Unsecured Notes    Kilpatrick Townsend
Trustee:                  1100 Peachtree Street NE, Suite 2800
                          Atlanta, GA 30309


Jim Latimer:              JOHN F. HIGGINS, IV, ESQ.
                          AARON POWER, ESQ.
                          Porter Hedges
                          1000 Main St., Suite 3600
                          Houston, TX 77002


Independent Director of   ASHLEY L. HARPER, ESQ.
Energy XXI Gulf Coast:    Andrews Kurth
                          600 Travis, Suite 4200
                          Houston, TX 77002


Delaware Trust            PHILIP D. ANKER, ESQ.
as Indenture Trustee,     Wilmer Cutler Pickering, et al.
et al.:                   7 World Trade Center
                          250 Greenwich Street
                          New York, NY 10007


Official Committee of     DEIRDRE C. BROWN, ESQ.
Equity Security Holders:  EDWARD L. ROTHBERG, ESQ.
                          Hoover Slovacek
                          Galleria Tower II
                          5051 Westheimer, Suite 1200
                          Houston, TX 77056


Ad Hoc Group of EGC       HARRISON DENMAN, ESQ.
Unsecured Noteholders:    White & Case
                          1155 Avenue of the Americas
                          New York, NY 10036


Wells Fargo:              ANA ALFONSO, ESQ.
                          Willkie Farr Gallagher
                          600 Travis St., Suite 2310
                          Houston, TX 77002

<u>**APPEARANCES FOR:**</u>          (CONTINUED)


Ad Hoc Committee of          SAMUEL KHALIL, ESQ.
Second Lien Lenders:         Milbank Tweed Hadley & McCloy
                             28 Liberty Street
                             New York, NY 10005


                             ANDREW M. LE BLANC, ESQ.
                             Milbank Tweed Hadley & McCloy
                             1850 K Street, NW, Suite 1100
                             Washington, DC 20006

Official Committee of        ADAM S. RAVIN, ESQ.
Unsecured Creditors:         Latham & Watkins
                             885 Third Ave.
                             New York, NY 10022


                             TRISTAN E. MANTHEY, ESQ.
                             WILLIAM H. PATRICK, III, ESQ.
                             Heller Draper, et al.
                             650 Poydras St., Suite 2500
                             New Orleans, LA 70130


Exxon Mobil:                 KELLI NORFLEET, ESQ.
                             Haynes & Boone
                             1221 McKinney St., Suite 2100
                             Houston, TX 77010


Wilmington Savings           PAUL J. RICOTTA, ESQ.
Fund Society:                Mintz Levin, et al.
                             One Financial Center
                             Boston, MA 02111


Cheramie Marine:             MARK HILL, ESQ. (via phone)
                             Waits Emmet Popp & Teich
                             1515 Poydras St., Suite 1950
                             New Orleans, LA 70112


Equity Committee:            CYNTHIA SPARACINO, ESQ. (via phone)

4

1          **Houston, Texas; Monday, November 14, 2016; 4:30 p.m.**

2                          **(Call to Order)**

3          THE COURT:  Good afternoon, everyone.  Please be

4   seated.

5          All right.  The next matter on this afternoon's

6   docket is Case Number 16-3128 [sic], <u>Energy XXI, Ltd.</u>  I'll

7   take appearances first in the courtroom, please.

8          MR. MEYER:  Good afternoon, your Honor.  David Meyer

9   of Vinson and Elkins on behalf of the debtors; joined at

10  counsel's table by Matt Moran, Harry Perrin, Jordan Leu, Reese

11  O'Connor and Jessica Peet.

12         THE COURT:  All right.  Good afternoon, folks.

13         MS. ALFONSO:  Good afternoon, your Honor.  Ana

14  Alfonso from Willkie Farr and Gallagher, counsel for Wells

15  Fargo which is the First Lien Agent.

16         THE COURT:  Got it.  Thank you.  Good afternoon.

17         MR. PATRICK:  Your Honor, William Patrick, Heller

18  Draper, for the Unsecured Creditors' Committee, along with my

19  partner, Tristan Manthey, and Adam Ravin of Latham and Watkins.

20         THE COURT:  All right.  Good afternoon, gentlemen.

21         MR. KHALIL:  Hello, your Honor.  Sam Khalil of

22  Milbank Tweed on behalf of the Ad Hoc Committee of Second Lien

23  Lenders.  I'm with my partner, Andy LaBlanc.

24         THE COURT:  All right.  Thank you.  Good afternoon,

25  gentlemen.

1          Mr. Rothberg?

2          **MR. ROTHBERG:**  Good afternoon, your Honor.  Ed

3   Rothberg and Deirdre Brown for the Official Equity Committee.

4          **THE COURT:**  All right.  Good afternoon.

5          Ms. Stevenson?

6          **MS. NORFLEET:**  Good afternoon, your Honor.  Kelli

7   Norfleet from Haynes and Boone on behalf of Exxon Mobil.

8          **THE COURT:**  I'm dating myself.  Thank you.

9          **MR. ANKER:**  Good afternoon, your Honor.  Philip

10  Anker, Wilmer Cutler Pickering Hale and Dorr, for the Ad Hoc

11  Group of EPL Noteholders and Delaware Trust as the Indenture

12  Trustee for those notes.

13         **THE COURT:**  All right.  Thank you, sir.  Good

14  afternoon.

15         **MR. MEYERS:**  Good afternoon, your Honor.  Todd

16  Meyers, Kilpatrick Townsend, on behalf of Wilmington Trust as

17  the EGC Unsecured Notes Trustee.

18         **THE COURT:**  All right.  Thank you, sir.  Good

19  afternoon.

20         **MR. DENMAN:**  Good afternoon.  Harrison Denman, White

21  and Case, for the Ad Hoc Group of EGC Unsecured Noteholders.

22         **THE COURT:**  All right.  Thank you.  Good afternoon.

23         **MS. HARPER:**  Good afternoon, your Honor.  Ashley

24  Harper from Andrews Kurth on behalf of the Independent Director

25  of Energy XXI Gulf Coast.

1          **THE COURT:**  All right.  Say that again.  I've got to

2  get used to that.  "Harper"?

3          **MS. HARPER:**  Harper.

4          **THE COURT:**  Harper.  All right.

5          **MS. HARPER:**  Yeah.

6          **THE COURT:**  That's going to take me -- it's like I

7  still called Ms. Northrup [sic] Ms. Stevenson so then that's

8  been what?  Five or six years then?  So that's going to take

9  some getting used to.

10          **MS. HARPER:**  Me too.

11          **THE COURT:**  Congratulations again.

12          **MR. RICOTTA:**  Good afternoon, your Honor.  Paul

13  Ricotta of Mintz Levin Cohn Ferris Glovsky and Popeo.  I'm

14  counsel for Wilmington Savings Fund Society, the Indenture

15  Trustee for the Three Percent Convertible Noteholders.

16          **THE COURT:**  All right.  Thank you, sir.  Good

17  afternoon.

18          **MR. HIGGINS:**  Good afternoon, your Honor.  John

19  Higgins, Aaron Power, for Jim Latimer.

20          **THE COURT:**  All right.  Thank you.  Good afternoon.

21          **MR. MANTHEY:**  Judge, I know Mr. Patrick introduced me

22  but apparently no one is hearing anything on the phone and I

23  wanted to raise that with the court.

24          **THE COURT:**  Is that right?  So no one can hear

25  anything?

1          **MR. MANTHEY:**  No one can hear anything as of yet.

2          **THE COURT:**  Ask the --

3          **MR. MANTHEY:**  (indiscernible).

4      **(Pause)**

5          **THE COURT:**  Ask those folks if you --

6          **MR. HILL:**  Judge, this is Mark Hill with Waits Emmet

7  Popp and Teich, New Orleans.  I can hear you fine on the phone.

8          **THE COURT:**  All right.  Well thank you.

9      **(Voices on phone overlapping)**

10          **MS. SPARACINO:**  Judge, this is Cynthia Sparacino, a

11  member of the Equity Committee, and I can hear you perfectly.

12          **THE COURT:**  Terrific.

13          Folks, and I -- this may be hard if they can't hear

14  anything, but to the extent that you folks are communicating by

15  text or email, perhaps we had a problem with the dial-in

16  number, perhaps you saw it earlier, we got a work-around number

17  and we've gotten the original number reactivated again.  So if

18  you'd communicate, ask those folks to simply hang up, dial back

19  in on the old number,

20          **MR. SPEAKER:**  Okay.

21          **THE COURT:**  -- and hopefully that will correct the

22  problem.  If not, let me know and I'll do the best I can.  All

23  right, folks on the telephone, there are 73 callers currently

24  on the line.  I'm going to activate the hand-raise feature.  If

25  you wish to make an appearance, you'll need to use the star-

1  five feature on the telephone.  And I can't activate the

2  feature.  Oh, that's interesting.  All right, evidently I'm not

3  going to activate the hands-raise feature.  If you need to

4  speak, you may be talking over someone, just try and be

5  courteous.  Is there anybody who wishes to make an appearance

6  that is on the telephone?

7          **MR. HILL:**  Yes, Judge, Mark Hill for creditor

8  Cheramie Marine, LLC.

9          **THE COURT:**  All right.  Mr. Hill, let me ask you,

10  which number did you dial in on?

11          **MR. HILL:**  I dialed the 1-7-1-2-7-7-0-8-0-7-1 with

12  the code 6-9-2-2-7-3.

13          **THE COURT:**  Wow, that's the new number, that's the

14  work-around number, interesting.  They called in on the old

15  number, on the 3100 number.  All right, anyone else wish to

16  make an appearance?

17          **(No audible response)**

18          All right, well, are the news reports that are flying

19  around accurate?

20          **MR. MEYER:**  I guess you always have to be careful

21  with the way to answer a question like that, make sure you know

22  the right news reports.  But --

23          **THE COURT:**  Right, fair enough.

24          **MR. MEYER:**  Your Honor, we have great news today

25  coming out of extensive discussions that we previewed for you

1   and told you where we hoped we'd get at the last time we were

2   here on a status conference.  We have global agreement among

3   all of our creditor groups.  And shortly before this hearing we

4   filed an amended plan, disclosure statement supplement, plan

5   support agreement, and a scheduling motion that ties to that

6   agreement.  We ran up to the wire coming in to today's hearing,

7   and we really needed every available minute to get this done.

8   This reflects a tremendous amount of hard work by all of the

9   parties and professionals, and I'd like to extend my thanks to

10  all those parties.  A couple of other thank you's out of the

11  box, your Honor, just on behalf of the company, wanted to make

12  sure to thank all of the company's hardworking and loyal

13  employees for their significant contributions to the enterprise

14  throughout this case.  This helped us get to today.  As well as

15  thank Judge Clark again for his hard work during mediation that

16  in no question helped steer us and assist us to getting to a

17  fantastic result today.  And lastly, your Honor, I'd like to

18  thank your Honor and your staff.  This is an understatement

19  here to say that the negotiations are complex and these were

20  very hard-fought discussions and negotiations among all of the

21  groups, and your flexibility with hearing times and dealing

22  with our scheduling modifications, if you will, along the way

23  here has been very much appreciated, and thank you for that as

24  well.

25           Your Honor, I'll give a quick overview of some of --

1    in part the plan modifications that were reflected.  At bottom,

2    it's largely a similar plan in many respects to what we

3    originally we filed with -- and that is a massive deleveraging

4    of the company's capital structure and eliminating an excess of

5    $3 billion in funded debt.  There are, of course, different

6    allocations of equity among other things that are a part of

7    this plan and at -- out of the box what we're looking at is the

8    second lien lenders -- noteholders, excuse me, receiving 84

9    percent of the equity in the reorganized company.  The EGC

10   intercompany notes trust, you may recall we had a settlement

11   provision that contemplated kicking a bunch of the intercompany

12   litigation down the road.  That's been eliminated from this

13   version of the plan.  All of those issues are settled and the

14   independent directors each -- support each of those

15   settlements.  In addition to all those intercompany issues

16   being resolved, the repurchased bonds that are held by EGC are

17   not receiving any recovery under this plan.

18          The EGC unsecured noteholders will receive 12 percent

19   of the equity under the reorganized company along with 60

20   percent of the warrant package.  The EPL unsecured noteholders

21   will receive four percent of the equity along with 40 percent

22   of that warrant package.  The convertible noteholders, their

23   distribution is changed into a form of cash, a $2 million pot

24   for those folks, and the GUC distribution for general unsecured

25   creditors is increased from $850,000 to $1.47 million,

1    reflecting an increase from 4.3 percent to about seven and a

2    half percent on account of those claims, based on our

3    estimates.

4          Your Honor, the plan support agreement was an

5    important part of this as well, just given how complex and

6    challenging this case has been from -- under the negotiations

7    as well.  The one thing I'd really flag as part of that plan

8    support agreement that I anticipate we'll be talking about with

9    you today is timing and how that's important.  All the creditor

10   groups believe that emerging, the company emerging this year is

11   very important.  And in line with that, the plan support

12   agreement has a milestone for confirmation hearing to commence

13   on December 15th.  In addition, the first lien agent has agreed

14   to extend the use of cash collateral through the end of the

15   year to December 31st.  And I'd note that while the indentured

16   trustees are not signatories to the plan support agreement,

17   they are plan support parties.

18          The one major constituency that we do not have an

19   agreement with right now, your Honor, is the Equity Committee.

20   We have continued to keep the Equity Committee in the loop on

21   all the discussions.  We have shared documents with them as we

22   go here.  We've shared copies of the disclosure statement and

23   the deal documents with them last week to try to help

24   facilitate their ability to comment and provide -- potentially

25   resolve issues associated with adequacy of disclosure.  My

1   understanding right now from talking in the hallway with

2   Ms. Brown and Mr. Rothberg shortly before this hearing is we

3   have resolved all of their disclosure-related objections but

4   for a couple I'll highlight right now, which is first they want

5   to make sure that the management incentive plan is disclosed in

6   advance of confirmation, and we intend disclosing those

7   documents as part of the plan supplement that would be filed on

8   November 23rd.  They also want to make sure that the identity

9   of the directors and officers are disclosed prior to

10  confirmation.  I've confirmed and can confirm for the record as

11  well that consistent with 1129(a)(5) that's exactly what we'll

12  do.

13         And there are two additional points that are

14  disclosure-related.  The first is they would like an addition

15  to the disclosure statement believing that -- stating that the

16  disclosure statement should contain additional information

17  associated with the causes of action to be released pursuant to

18  the plan.  But they've also agreed that we can say that we

19  don't believe any further disclosure is necessary on this point

20  and that will resolve that concern from their standpoint.  And

21  the second being the Equity Committee filed a motion this

22  afternoon, they wanted that also to be referenced in the

23  disclosure statement as well, and we're fine making that

24  modification as well.  We'll be meeting with the Equity

25  Committee this week.  And we do not have an agreement with this

1    time as I said.

2          And the scheduling motion, of course, needs to tee-up

3    what a confirmation process would look like to the extent that

4    we're going to be having a contested confirmation hearing.  I

5    think that the one most important part of that schedule from

6    our standpoint, your Honor, is there's no need for additional

7    time her to discuss any further discovery or any additional

8    depositions that will need to be taken.  There have been 46

9    depositions in this case, 20 depositions involved Debtors'

10   current and former personnel.  We had ten depositions of

11   experts, three depositions each for Debtor consultants, third

12   parties, and the second lien noteholders.  And with the Equity

13   Committee being the -- at this point the only major

14   constituency that's objecting to confirmation, we really view

15   this being a limited dispute revolving around valuation.  The

16   plan and disclosure statement recoveries from our standpoint

17   provide a pretty clear picture that the second lien noteholders

18   are receiving recovery between 19 and 27 and a half cents on

19   their claims; the EGC unsecured noteholders between 6.9 and

20   10.7 percent; and the EPL unsecured noteholders recovering

21   approximately 8.1 to 13.4 percent on those claims.  At bottom

22   we think Equity is way out of the money.  And they've certainly

23   had an opportunity to participate in the many depositions that

24   have already gone on during this case associated with other

25   issues.

1          On that valuation, what we envision this looking like

2    going forward, by November 23rd as part of the scheduling order

3    we proposed we provide an updated expert report that would roll

4    forward, assuming that we have an effective date of December

5    31st.  The Equity Committee thereafter will have a little over

6    a week to depose our experts and can issue a supplemental

7    report from their expert, Mr. Johnson, to the extent they elect

8    to.  We think this is plenty of time.  And really nothing from

9    a methodology standpoint is changing at this point.  It's

10   really rolling the reserve report two months and strip

11   pricing's around the same, if not lower, based on the time the

12   last PJT report was submitted.

13          I would also add, your Honor, that the global

14   agreement between the creditors, that all came out of mediation

15   in which the Equity Committee participated in and had an active

16   role in here, so they're really -- they've been at the table on

17   that for -- and we'll see where we get on a going forward

18   basis.

19          So what are we asking for today?  I realize it's a

20   little bit unorthodox.  What we're hoping today, your Honor, is

21   that we can have the -- a finding from the Court that the

22   disclosure statement supplement contains adequate information.

23   We also would ask the Court to approve our scheduling order.

24   What this tees up is we have December 8th currently with you

25   already, your Honor, for a proposed confirmation hearing, and

1  we would allow them to have approximately three weeks for

2  revoting and for parties to evaluate the new plan and vote by

3  that December 2nd date.  And in connection with that disclosure

4  statement, your Honor, Mr. Schiller, the company's present

5  Chief Executive Officer, is in the courtroom to the extent that

6  you would like testimony as to the adequacy and the accuracy of

7  the disclosure statement.

8       **THE COURT:**  All right, let me hear from everybody

9  else and then we'll come back to that, all right?

10      **MR. MEYER:**  Thank you.

11      **THE COURT:**  Thank you.  Anyone else wish to make

12  comments?  Mr. Patrick?

13      **MR. PATRICK:**  Your Honor, William Patrick for the

14  Creditors Committee.  We are pleased to be here today in

15  support of the Debtors' new plan and the plan support agreement

16  on the terms stated therein.  It has been a long process.

17  Where we are today I think is the direct result of a line of

18  questions that your Honor initiated on September 13 of the

19  status conference.  When you asked the major parties' attorneys

20  if they thought that mediation would be helpful, you received I

21  think the appropriate responses, appointed Judge Clark, there

22  was mediation.  At the start of the mediation there were no

23  viable, good lines of communications between the parties,

24  notwithstanding efforts, but Judge Clark did establish lines of

25  communication.  Even after sort of the end of the face-to-face

```
 1    mediation he -- those lines of communication remained opened

 2    and allowed this case to become settled.  And so we're

 3    particularly pleased that everybody, all the creditors' groups,

 4    have agreed to it, that the independent directors have agreed

 5    to the settlement, and we on the Creditors Committee, having

 6    opposed the original plan, intend to send a letter, subject to

 7    approval of the disclosure statement, of course, in support of

 8    this plan.

 9              THE COURT:  All right, thank you.  Mr. Rothberg or

10    Mr. Anker?

11              MR. ROTHBERG:  If you could wait for me to be last --

12              THE COURT:  Fair enough, all right.

13              MR. ANKER:  Good afternoon, your Honor, Philip Anker,

14    Wilmer, Cutler, Pickering, Hale, and Dorr for the EPL

15    noteholders and the indentured trustee.  As Mr. Meyer said,

16    this settlement was the product of enormously long, lengthy,

17    difficult, arms' length to say the least, negotiations.  It is

18    not a settlement that leaves everyone happy and thrilled, but

19    that's the way most settlements should work.  I think it's fair

20    to say in the interest of full disclosure that one of the big

21    issues here is valuation, and we probably think we're getting a

22    higher recovery than the Debtor might say based on its

23    valuation because we have a more robust view of value.  But

24    nevertheless, no one on our side thinks we're getting par plus

25    accrued.  And given the absolute priority rule, that says
```

1  something about unfortunately the position of equity here.  I

2  should also say the settlement reflects heavy negotiations over

3  the validity of a series of intercompany disputes, sounding and

4  preference liability, a re-characterization, equitable

5  subordination, you name the theory, we talked about it, sought

6  standing for it, posed it, and discussed it at great length,

7  and this is the product of very heavy negotiations relating

8  thereto.

9          **THE COURT:**  All right, thank you.

10         **MR. ANKER:**  Thank you.

11         **THE COURT:**  Anyone else?

12         **MS. ALFONSO:**  For the record, Ana Alfonso for the

13  first lien agent.

14         **THE COURT:**  Yes, ma'am.

15         **MS. ALFONSO:**  Your Honor, we were very glad to hear

16  that these creditor groups have finally reached agreement on

17  how to whack up the equity here.  Wells cut its deal about six

18  months ago now, and without meaning to assign any blame or

19  throw a wet blanket on the proceedings, it did cost a lot of

20  time and expense to get where we are right now, unfortunately

21  for all of us.  We were asked to extend cash collateral and we

22  have agreed that we -- well, we don't have an order today,

23  we'll get one in tomorrow.  I forgot it runs out tomorrow.

24         **THE COURT:**  Right.

25         **MS. ALFONSO:**  But we will extend it through December

1  31st.  However, I just want to caution the Court and the

2  parties that extending past December 31st would be a problem.

3  When we agreed to the first lien's treatment, there were

4  expectations regarding the liquidity that the company would

5  have on emergence and that was based on where we were

6  financially in September.  We are concerned.  There was a

7  minimum liquidity requirement under our proposed treatment and

8  we would just want to make sure that that doesn't get

9  jeopardized as a result of any delay.  So while I do understand

10  that the Equity Committee has every right to be heard, I would

11  just urge the Court to please hold the parties to December 31

12  emergence, thank you.

13          **THE COURT:**  All right, thank you.  Yes, sir?

14          **MR. SPEAKER:**  Your Honor, on behalf of the EGC

15  unsecured ad hoc group, we would just reiterate that there --

16  as you heard, there is a deal and our ad hoc group is

17  supportive.  It's reflected in the PSA that has the support of

18  most of the bonds comprising our group, and to that point we

19  are supportive of what the Debtors are seeking today.

20          **THE COURT:**  All right, thank you.

21          **MR. SPEAKER:**  Thank you.

22          **MR. MEYERS:**  Briefly, your Honor, Todd Meyers with

23  Kilpatrick, Townsend for the EGC notes trustee.  As Mr. Meyer

24  mentioned, for various procedural reasons trustees don't

25  typically sign plan support agreements.  But we have no present

1    intent to object to the deal that's on the table, and we are

2    treated as a plan support party as long as we don't solicit

3    against the plan or object.  And obviously we need to continue

4    to hear from holders, but the holders that have been active in

5    the case are certainly happy with the deal and we have no

6    reason to think that it's not a good deal, so --

7              **THE COURT:**  All right, got it.

8              **MR. MEYERS:**  -- thank you.

9              **THE COURT:**  Thank you.  All right, Mr. Rothberg, I

10   think that leaves you.

11             **MR. ROTHBERG:**  Thank you, your Honor.  I think the

12   primary issue that I'm seeing that kind of overlays this entire

13   thing is that when we were here at the last status conference

14   and we were all talking about timing and confirmation and we

15   were talking about a global deal, okay, the global deal was

16   supposed to include the Equity.  I can tell you, Judge, from

17   glancing at the papers that have been filed, every single

18   creditor constituency group has received an increase in their

19   treatment, I guess except the two L's who got -- took a little

20   bit less, and the treatment of the Equity has remained exactly

21   the same.  We participated in the mediation.  There has been

22   absolutely no attempt to include Equity in anything regarding

23   the case.  Now, of course, the big bogey, so to speak, and what

24   everybody's pointing to is valuation and the absolute priority

25   rule.  And we have our experts and they have their experts and

1   we know we'll have a trial and you'll decide the valuation.

2   But that's not the only issue.

3           We have two other primary issues that we have been

4   tasked with by the Court to deal with.  One of those issues is

5   the potential for discrimination between old equity and the --

6   any officers or directors who are insiders and what they might

7   receive under a management incentive plan.  Okay, that's one of

8   our specific charges to look at.  And we have not -- we have a

9   -- essentially a one-paragraph description of the management

10  incentive plan.  And that was going to be our objection to the

11  disclosure statement today, that they need to disclose that,

12  but Mr. Meyer has told us that they will disclose the actual

13  management incentive plan itself, a document that describes it,

14  by November 23rd; plus, in order to evaluate that and whether

15  or not those officers and directors who will be subject of the

16  management incentive plan are receiving equity either on the

17  basis of their prepetition equity or because of their future

18  work, we need to know who the officers and directors are going

19  to be.  And so far we only have one name, Mr. Schiller.  And I

20  just asked Mr. Meyer for clarification.  He said they would be

21  disclosing the names of the officers and directors, but I'm

22  hoping he meant that by the same deadline, November 23rd, so

23  that we have an opportunity to know who we're talking about.

24          **THE COURT:**  Is that going to be a problem, Mr. Meyer?

25          **MR. KHALIL:**  So, your Honor, the way the plan -- Sam

1    -- for the record, Sam Khalil from Milbank and Tweed on behalf

2    of the second lien lenders.  The way the plan works is there is

3    a -- the second lien holders select the board members.  There's

4    a consultation right with respect to one of those board members

5    with the EGC and the EPL ad hoc groups.  That selection process

6    is underway.  I don't know if the selection process as well as

7    the consultation process will be completed by November 23rd.

8    It will be completed before confirmation, understanding that's

9    a requirement, but exactly when that happens I don't know.

10          **THE COURT:**  But those two directors don't participate

11   in the management incentive plan, do they?

12          **MR. KHALIL:**  The way the management incentive -- now,

13   I'll clarify that, and I think this should hopefully address

14   Mr. Rothberg's concern.  The management incentive plan will be

15   determined by the new board.  There is a requirement to

16   distribute some portion within I believe it's 120 days, but

17   that -- whether it's stock or options, all determined by the

18   new board.  Who gets it, how much of it, how it's structured,

19   all determined by the new board.  I think that the creditors

20   wanted to have a clean sort of separation and they structured

21   it in -- with this in mind, that we will select a new board of

22   independent parties and they will be tasked with the job of,

23   you know, creating a MIP (phonetic) and allocating an --

24          **THE COURT:**  But with those two appointees, could they

25   potentially be recipients under the management incentive plan?

1          **MR. KHALIL:**  The board members themselves?

2          **THE COURT:**  Uh-huh.

3          **MR. KHALIL:**  I don't think that the board --

4          **THE COURT:**  That was my --

5          **MR. KHALIL:**  The --

6          **THE COURT:**  -- question and it --

7          **MR. KHALIL:**  Yeah.

8          **THE COURT:**  -- seems to me if we can answer that,

9   then Mr. Rothberg's complaint about those two nominees becomes

10  moot.

11         **MR. KHALIL:**  Right.  John Schiller is CEO, and the

12  rest of the board, they may be compensated and -- but I don't

13  expect them to participate in it but I -- again, it's the board

14  who --

15         **THE COURT:**  Well, you know, Mr. Meyer, can you help

16  us with that?

17         **MR. MEYER:**  Sure.  Just to make sure I understand the

18  question, your Honor, the --

19         **THE COURT:**  The question is, are any of the members

20  of the board of directors going to be participants other -- in

21  their capacity as directors, are they going to be participants

22  in the management incentive plan?

23         **MR. MEYER:**  My expectation would be no.  But right

24  now, again, all that's laid out as part of the management

25  incentive plan right now is that three percent will be

```
 1  allocated at 120 days.  Who it goes to will be a decision for
 2  the new board.  My expectation would be consistent with
 3  Mr. Khalil's.
 4          THE COURT:  Right, but that would be unusual for
 5  constituent board member appointees to actually participate in
 6  that plan, wouldn't it?
 7          MR. MEYER:  In my experience, I agree with that, it
 8  would be unusual because the board more likely than not's going
 9  to want that to be allocated to other individuals.
10          THE COURT:  Okay, so expect for board members that
11  are being appointed pursuant to that agreement, can we identify
12  management by the 23rd?
13          MR. MEYER:  (No audible response)
14          THE COURT:  Doesn't mean it can't change but I don't
15  know why the reluctance --
16          MR. MEYER:  I think what we can say, and we'd have to
17  talk to some of the other plan support parties about this, of
18  course, particularly given the way our deals come together and
19  it's currently structured, but I do think that we would be in a
20  position more likely than not to be able to disclose to
21  Mr. Rothberg and the Court and others where we sit and where we
22  anticipate being on the 23rd.  And then, of course, if it gets
23  revised, it could be amended.  But I think that that would be
24  something that should be able to happen.
25          THE COURT:  All right, that wasn't the warm fuzzy I
```

1    was hoping for.  I don't know why that's so tough.  What am I

2    missing?  I mean, why is it that tough to say here's my CEO,

3    here's my vice president of this, my vice president of that,

4    with the understanding that those things could change?  Does

5    the deal involve --

6             MR. MEYER:  I'll go first and then I'll turn it to

7    Mr. Khalil, I think that we can -- his clients, of course, are

8    going to have a very important voice in that and so we'll

9    continue to work with them and --

10            THE COURT:  Right.

11            MR. MEYER:  -- I would like to be in a spot where we

12   can disclose all those folks.

13            THE COURT:  But you know who they are today, right?

14            MR. MEYER:  I sure do, yes.

15            THE COURT:  And so you can say here is the Debtors'

16   current management, you can describe rights of input that other

17   constituents may have based upon the agreements that you've

18   been -- that you've reached, but you can say with clarity on

19   today who management is and who it's anticipated to be subject

20   to whatever other rights and inputs that you've agreed to

21   consider as part of your deal, right?

22            MR. MEYER:  That works from my standpoint, your

23   Honor.

24            MR. KHALIL:  I was going to say the (indiscernible)

25            THE COURT:  Okay, thank you.  All right, so,

1  Mr. Rothberg, I mean, that's probably about as much certainty

2  as you're ever going to get.

3           **MR. ROTHBERG:**  Well, here's the problem, your Honor,

4  and I'm -- we're not objecting on that basis to the disclosure

5  based on the representation that --

6           **THE COURT:**  Right.

7           **MR. ROTHBERG:**  -- Mr. Meyer said that they're going

8  to do that.

9           **THE COURT:**  Right, but you're --

10          **MR. ROTHBERG:**  But --

11          **THE COURT:**  -- teeing it up for your 1129 fight.

12          **MR. ROTHBERG:**  Right, exactly.

13          **THE COURT:**  Yeah.

14          **MR. ROTHBERG:**  And so in order for us to be prepared

15  in any discovery we need to do, --

16          **THE COURT:**  Right.

17          **MR. ROTHBERG:**  -- we need to know who those people

18  are and with respect to -- if any of them are insiders, we have

19  to know what their proposed compensation is.  That's what

20  1129(a)(5) requires.

21          **THE COURT:**  Right.

22          **MR. ROTHBERG:**  So if we wait until the 23rd, --

23          **THE COURT:**  Okay.

24          **MR. ROTHBERG:**  -- which is okay, we run -- we're

25  going to run into a problem with the scheduling to start at

1   December the 8th because --

2           **THE COURT:**  Why?

3           **MR. ROTHBERG:**  Well --

4           **THE COURT:**  Well, let -- actually let me help you

5   there.  We will not -- we are not going to run into a problem

6   on December the 8th.  On December the 8th, we're going to start

7   confirmation.  So you probably -- as you think through this,

8   probably need to work backwards and tell me what it is you

9   need, you know.  If you need from me to order the Debtor by

10  tomorrow to tell you who their management is, subject to

11  change, I'll certainly contemplate that.  But December the 8th,

12  we're going to start confirmation.

13          **MR. ROTHBERG:**  Your Honor, at the last status

14  conference I think it was acknowledged by you that you couldn't

15  do December 8th without a global deal.

16          **THE COURT:**  Uh-huh, well, I've changed my mind.

17          **MR. ROTHBERG:**  Okay.  Your Honor, the other point

18  with respect to the timing is that as you remember, there's

19  been a litigation hold, and so we have essentially stopped

20  working on discovery.  And as you remember, we -- or you may

21  remember, you may not, we had a subpoena out to BDO (phonetic)

22  for documents.  And how that relates to the other -- one of the

23  other charge of the committee was is, what causes of action

24  exist that are being released?

25          **THE COURT:**  Okay.

1     **MR. ROTHBERG:**  And we have done a substantial amount

2  of discovery on that.  And with respect to the disclosure

3  statement, as Mr. Meyer indicated, we're going to agree that

4  they can put a provision in that the committee believes there

5  are causes of action that are not disclosed and that there's no

6  consideration being paid in exchange for those causes of

7  action.  That's fine for the disclosure.

8     **THE COURT:**  Okay.

9     **MR. ROTHBERG:**  But once we get those BDO documents,

10  which I think we're supposed to start getting something this

11  week, we have to review them obviously, and obviously we may

12  have to take depositions to develop the evidence to bring to

13  the Court at the confirmation hearing about the causes of

14  action that exist that are not being released.  And, your

15  Honor, I just don't see that we're -- with Thanksgiving holiday

16  in between -- and I'm going to go over some of the scheduling

17  dates in their order -- that that's really feasible.

18     **THE COURT:**  Okay.

19     **MR. ROTHBERG:**  And, your Honor, I would like to

20  comment on the statement about the milestones with the December

21  31 deadline.  We've had in this case, your Honor, multiple

22  milestones missed.  The original restructuring support

23  agreement, if I remember, had a milestone for plan to be

24  confirmed I believe in August or September.  And every time

25  there was a dispute, it was pushed off so that there could be

1   negotiations.  I don't -- originally, if you recall, your

2   Honor, the reason for the rush was the hurricane season.  Well,

3   that's gone, the hurricane season is over.  And now the reason

4   for the rush is, well, December 31st, the first lien lender

5   might not -- there might -- says there might be liquidity

6   problems.  Last monthly operating report I looked at had $300

7   million in cash on the balance sheet, plus.  And there's no

8   magic to December 31st.  The first lienholder, I believe after

9   they've been paid down principal on their debt, setting aside

10  the letters of credit for the P and A obligations, maybe owe

11  about $60 million.  And I think even the Debtors' valuation of

12  this company is at least ten times that, if even more, so I

13  don't see that expiration of cash collateral is really an issue

14  with December 31st.  So --

15          **THE COURT:**  So what is it that you're asking me to

16  do?

17          **MR. ROTHBERG:**  Well, your Honor, I think the -- to be

18  fair, I think with respect to the process -- at least it was my

19  belief that if there was no global deal, you could start a

20  confirmation hearing in early January.  That was kind of my

21  (indiscernible) because you've got Thanksgiving, you've got

22  Christmas in between, you've got prep work to do, and you could

23  start about that time and maybe finish by the end of January,

24  or maybe sooner, I don't know.  And, of course, if they want to

25  make -- if they want to include us in a global settlement, we

1    could be done a lot quicker.  But that's up to them, that's not

2    our issue.  We've participated in negotiations.

3            So a couple of points, your Honor, with respect to

4    their proposed deadlines.  If you look in their proposed order,

5    they have an overall discovery cutoff of December 2nd --

6            **THE COURT:**  I saw that.

7            **MR. ROTHBERG:**  -- but an objection to confirmation

8    deadline of November 28th.  So it's -- normally you have your

9    objection to confirmation after your discovery deadline.

10           **THE COURT:**  All right.

11           **MR. ROTHBERG:**  So we would object to that date.  We

12   also have in paragraph nine where they're talking about

13   additional depositions, limited to depositions of the Equity

14   Committee members, which that's the first time we've heard that

15   they wanted to take any depositions of Equity Committee

16   members, we have Equity Committee members all over the country

17   and so if they really did want to do that, they would -- it --

18   that would take time to organize that.

19           **THE COURT:**  So let me ask you this.  What deposition

20   discovery do you think that the Equity Committee needs?

21           **MR. ROTHBERG:**  I think we're going to need -- well,

22   there was a deposition of the PJT valuation that was canceled

23   in view of all of the discussions --

24           **THE COURT:**  Okay.

25           **MR. ROTHBERG:**  -- so that will have to be taken.

1          **THE COURT:**  Right.

2          **MR. ROTHBERG:**  We will have to -- it really depends,

3    your Honor, on what the documents that we get from BDO tell us

4    in terms of what additional depositions we need to work on the

5    causes of action issue so --

6          **THE COURT:**  So give me a range, if you can.

7          **MR. ROTHBERG:**  In terms of the number of depositions?

8          **THE COURT:**  Yeah.  So you get documents.  I don't

9    know what you're going to get from BDO.  I mean, I -- I mean,

10   are you looking for evidence of payments or transfers?  What is

11   it that you're looking for?

12         **MR. ROTHBERG:**  Can I get Ms. Brown to address that?

13   Because she's been the one --

14         **THE COURT:**  Sure.

15         **MR. ROTHBERG:**  -- primarily working with that --

16         **THE COURT:**  Certainly.

17         **MR. ROTHBERG:**  -- issue.

18         **THE COURT:**  Ms. Brown?

19         **MS. BROWN:**  It deals with a variety of issues --

20         **THE COURT:**  Okay.

21         **MS. BROWN:**  -- including the changes in valuation

22   over time and what was reported to the auditors for valuation

23   purposes.  Also, the stock purchase share agreements.

24         **THE COURT:**  Right, let me start over because I asked

25   a bad question.  So you've got to go depose a representative of

1    PJT, right?  Who else do you anticipate needing to depose?

2           **MS. BROWN:**  The BDO documents may show

3    inconsistencies which may lead to other depositions.

4           **THE COURT:**  Let's assume --

5           **MS. BROWN:**  So I would --

6           **THE COURT:**  -- they do.

7           **MS. BROWN:**  If it does, then it would be somebody

8    probably from the company who's -- has experience in that area.

9    I don't think anybody deposed the HR representative.

10   Mr. Menown didn't know any information about some of those

11   issues when he was deposed.

12          **THE COURT:**  Okay.

13          **MS. BROWN:**  Could be multiple people.  It could be

14   the reserve director from the company.  Again, he was scheduled

15   before and then was not held for the second deposition.

16          **THE COURT:**  Okay.

17          **MS. BROWN:**  Other than that, Mr. Schiller I guess

18   would be probably -- or it could actually be V and E counsel

19   because as I understand it, V and E counsel dealt directly with

20   auditors on the audit reports and advised or dealt directly

21   with different issues.

22          **THE COURT:**  All right, that's probably going to be a

23   fairly fruitless depo so --

24          **MS. BROWN:**  It could be but it --

25          **THE COURT:**  -- a couple of corporate reps and PJT

32

1    representative, is that --

2            **MS. BROWN:**  Most likely.

3            **THE COURT:**  -- kind of where you see it?  Now,

4    Mr. Meyer, I saw that and I raised my eyebrow when I saw it.

5    Given the schedule that you're asking for, what would be the

6    purpose in taking the depos of the Equity Committee members?

7            **MR. MEYER:**  Your Honor, I'm not sure that we will.  I

8    think that of the many depositions that have occurred during

9    this case, we have not taken any depositions of the Equity

10   Committee members.  I think that as I mentioned at the outset,

11   our view is there's no need for additional time and I think

12   sort of to focus on the depositions that they may need, think

13   that the facts and circumstances surrounding kind of where we

14   are, where we're going may inform do we need to do depositions

15   or not, and more than happy as I mentioned to Ms. Brown in the

16   hallway before this to work with them on any logistics.  And I

17   do not anticipate we would be deposing every Equity Committee

18   member.

19           **THE COURT:**  Well, walk through with me if you will,

20   give me a set of circumstances, given the remaining issues that

21   are on the table, with the understanding that you may not have

22   great clarity but at least with what you think is on the table,

23   give me one good reason why you would take an Equity Committee

24   depo other than just to beat them up a little bit.

25           **MR. MEYER:**  I don't think that we would do it to beat

1    them up, your Honor.  I think that as we continue to have

2    discussions with them, as I mentioned, we're having a meeting

3    this week, I --

4            THE COURT:  Okay.

5            MR. MEYER:  -- don't know that --

6            THE COURT:  So --

7            MR. MEYER:  -- we will be in that spot.

8            THE COURT:  -- let me help you.  If you really want

9    an accelerated schedule like the one you're talking about,

10   you're going to agree not to take the Equity Committee members'

11   depos absent a showing of compelling cause.  Fair enough?

12           MR. MEYER:  I'm happy to work with that, your Honor.

13           THE COURT:  All right.

14           MR. ROTHBERG:  Your Honor, if I could just --

15           THE COURT:  Let me -- hold on, let me --

16           MR. ROTHBERG:  Sure.

17           THE COURT:  -- also ask you, further on at paragraph

18   ten there's a deadline to exchange deposition counter

19   designations.  Given my proclivity regarding depos and

20   affidavits, what's the purpose of that deadline?

21           MR. MEYER:  I'm -- hold on one second, your Honor,

22   I'd like to talk to my partner, Mr. Moran.

23           THE COURT:  Sure.

24       (Pause)

25           MR. MEYER:  And Mr. Moran's confirmed it's not our

34

1    plan to call people in that circumstance as counter

2    designation.

3            THE COURT:  It's not your plan to call people by

4    designation?

5            MR. MEYER:  Did I say that correctly?

6            THE COURT:  So if you're going to call somebody,

7    you're not going to argue they're not available, you're going

8    to have them here if you're going to call them, correct?

9            MR. MORAN:  Our intention, your Honor, based on your

10   prior instructions and your known preference for live testimony

11   would be to call our people live.  However, if someone --

12           THE COURT:  And perhaps the Federal Rules.  I mean,

13   it's not just something I made up, right?

14           MR. MORAN:  As well, your Honor.  And we just put

15   that if somebody else had designated someone who was perhaps

16   unavailable and was able to be called, that there would be an

17   opportunity for us to counter designate (indiscernible)

18           THE COURT:  Fair enough.  But I think that if

19   somebody is not available, I think that requires a motion so

20   you know that's going to be coming, right?  Okay.

21           MR. ROTHBERG:  So -- and, your Honor, I want to point

22   out we're not trying to extend out the discovery period for a

23   lengthy, lengthy period of time and take a lot of depositions.

24   That's not our goal.  We're trying to focus on what the issues

25   are that we're supposed to deal with.  And so I could see, your

1    Honor, we would also -- depending on what the list of officers

2    and directors and their compensation is, and what the

3    management incentive plan is, we may have to take a deposition

4    regarding the management incentive plan.  We --

5             **THE COURT:**  But who are you going to be deposing?  I

6    didn't ask about subjects, I asked people.  You're going to be

7    taking a 30(b)(6), right?

8             **MR. ROTHBERG:**  Without seeing the document you're

9    asking me to answer a question without having seen the

10   documents in advance so --

11            **THE COURT:**  But the document was created by

12   management so the only person that's going to know anything

13   about it is going to be a 30(b)(6) of the Debtor, right?

14            **MR. ROTHBERG:**  Right, right.

15            **THE COURT:**  So it's a 30(b)(6) of the Debtor.

16            **MR. ROTHBERG:**  Okay, yeah, that's -- I thought you

17   were asking me for a specific name.

18            **THE COURT:**  No.

19            **MR. ROTHBERG:**  So I would suggest, your Honor, that

20   we would need that, we would need one of a BDO rep.

21            **THE COURT:**  For what?

22            **MR. ROTHBERG:**  Well, we get their documents, we may

23   need to get -- if we need to get the documents confirmed so

24   that they're admissible, we may have to take that deposition.

25   There may be issues raised in those documents that we have to

 1   ask the BDO person about, in addition to what Ms. Brown said.

 2   So I'm looking at it maybe five or six at most.

 3           **THE COURT:**  All right.

 4           **MR. ROTHBERG:**  Just -- I'm just trying to give you an

 5   honest -- we're not looking to go do a 25 depositions and

 6   extend this thing out until the spring.  We realize a lot of

 7   money is being burnt in fees and we want to get this over with

 8   as much as everybody else.

 9           **THE COURT:**  No, understood.

10           **MR. ROTHBERG:**  Let's see, the other issue, your

11   Honor, I think that would be helpful for today -- I mean,

12   that's our comments with respect to the schedule.  And as I

13   said, I just don't see how you -- we're being asked in

14   paragraph ten, your Honor, setting aside the counter

15   designation issue, to exchange witness and exhibit lists on the

16   day that they propose is the last day for discovery.  So we're

17   going to be doing discovery and filing exhibit witness lists at

18   the same time and have objected before that.  The time -- the

19   whole timeframe is backwards, if you ask me, but --

20           **THE COURT:**  Ms. Staples, could you ask Mr. Alonzo to

21   come out here, please?  I'm sorry.

22           **MR. ROTHBERG:**  Yeah, no, that's okay, your Honor.

23   Those -- that's our comments on the scheduling order.

24           The other thing we think would be helpful, your

25   Honor, is the motion that we filed today was a motion to

1   temporarily allow a claim as a class 11 claim, which is the

2   general unsecured class.  And that will impact -- if that's

3   allowed, that will greatly impact the confirmation hearings.

4   Normally, you know, with -- we filed a class proof of claim,

5   there was no objection to that claim, so normally it would be

6   allowed to vote.  We wanted to bring this issue to the Court in

7   advance because we anticipate that they would just object to

8   the claim at -- you know, at a later date and then force us to

9   file a motion to temporarily allow the claim.  So we think it

10  would be helpful to have a hearing on that motion in advance of

11  the confirmation hearing, and really the confirmation objection

12  deadline, so that we could, you know, properly phrase our

13  confirmation objection.

14          **THE COURT:**  All right.  Anything else we need to talk

15  about?

16          **MR. ROTHBERG:**  No, that's it, your Honor, thank you.

17          **THE COURT:**  All right.  Mr. Meyer?

18          **MR. MEYER:**  Your Honor, as to that last part, we

19  agree with Mr. Rothberg.  We do think to the extent you have

20  availability, it would be helpful to have a hearing on his

21  motion.  I do anticipate we will be objecting to that pleading

22  as he said.  And I think in talking with the Creditors

23  Committee we share that view, that having a hearing based on

24  your availability would be helpful on that particular item.

25          **THE COURT:**  So, Mr. Rothberg, let me ask you, let's

1    assume that the Debtor has, you know, picked something

2    reasonable, three or four days to file a response.  How quickly

3    would you be available for a hearing?

4          **MR. ROTHBERG:**  On that motion, I think fairly

5    quickly.  Ms. Brown?  So you're saying -- let me pull my

6    calendar out just so I'm working along.  So if they objected by

7    Friday, for instance, next week is a bad week, it being

8    Thanksgiving, but maybe the --

9          **THE COURT:**  Yeah.

10         **MR. ROTHBERG:**  -- following week.  I think we already

11   have a hearing set on the 29th at 9:00 o'clock on our motion to

12   certify the class proof of claim.

13         **THE COURT:**  Yeah, I don't see that.

14         **MR. ROTHBERG:**  No?  Oh.

15         **THE COURT:**  It's not on --

16         **MS. BROWN:**  It was a proposed date.

17         **MR. ROTHBERG:**  Oh, that was -- okay.

18         **THE COURT:**  How long do you think that will take?

19         **MS. BROWN:**  How long it'll take, the --

20         **THE COURT:**  And I'm not going to put a stopwatch on

21   you.  I'm just trying to -- I'm looking at blocks of time

22   looking for something.

23         **MS. BROWN:**  Yeah, on the temporary allowance most of

24   the arguments will be legal arguments.  They'll just be -- I

25   mean, unless we can stipulate to some of the facts that were

39

1    asserted.

2              **THE COURT:**  Do you think an hour?

3              **MS. BROWN:**  I'd say an hour to two hours at most.

4    You disagree with that?

5              **MR. ROTHBERG:**  Yeah.  No, no, I think --

6              **THE COURT:**  Let me --

7              **MR. ROTHBERG:**  -- if we can stipulate to facts, it

8    should be pretty easy, it should be an hour.  If not, then I

9    would say two hours.

10             **THE COURT:**  Let me give you options.  And they aren't

11   great, but on the 28th I could start you at 9:00 o'clock.  I

12   have a confirmation hearing at 10:00 in a small -- in just a

13   small manufacturing case.  It shouldn't take -- you know, it

14   shouldn't take more than hour.

15             **MR. ROTHBERG:**  Yeah.  We -- the 28th is out for us,

16   your Honor.

17             **THE COURT:**  The 28th is out for you.

18             **MR. ROTHBERG:**  Yeah.

19        **(Pause)**

20        **(Judge/Mr. Alonzo confer)**

21             **MR. ROTHBERG:**  Your Honor, I think we could do the

22   30th and the 1st and the 2nd, any time that you have.  And if

23   you have to split it up, that's okay, too.

24             **THE COURT:**  The 30th is a Corpus Christi day.  The

25   1st, there's already a hearing on 1618, which is just a motion

1  for relief.  Is that -- Mr. Meyer, do you anticipate that

2  taking up a significant amount of time, or do you know?  It's a

3  motion for relief filed by a gentleman by Sherwin Joseph.

4         **MR. MEYER:**  I do not anticipate that will take up a

5  significant amount of time.

6         **THE COURT:**  Okay, so we could just set it concurrent

7  with that.  There are a couple of CJ Holding matters.  I have

8  no idea if they're going forward or not, but you would be

9  first, we could just start you at 2:00 o'clock and sort of look

10 at it as we go, if that works.

11        **MR. ROTHBERG:**  Yeah, I think that works, your Honor.

12 I think -- but obviously that kind of keys into the

13 confirmation objection deadline being the -- in the order as

14 the 28th because the whole --

15        **THE COURT:**  No, but I'm going to --

16        **MR. ROTHBERG:**  You're going to change --

17        **THE COURT:**  I'm going to deal with that.

18        **MR. ROTHBERG:**  Okay.

19        **THE COURT:**  All right, so we all agree that we set --

20 now I lost the motion number.

21        **MR. ROTHBERG:**  And did you say 2:00 o'clock, your

22 Honor?

23        **THE COURT:**  That is when the current setting is, yes.

24        **MR. ROTHBERG:**  Okay, because I see I have a

25 disclosure statement hearing with Judge Isgur which will not

41

1   last 15 minutes, I wouldn't think.

2        **THE COURT:**  At 2:00 o'clock as well?

3        **MR. ROTHBERG:**  At 2:00 o'clock on the same.

4        **THE COURT:**  I'm perfectly happy to set you at 2:30 --

5        **MR. ROTHBERG:**  Yeah.

6        **THE COURT:**  -- with the understanding that if the CJ

7   Holding folks who are going to go at 2:00, if they go past

8   2:30, you're just going to wait.

9        **MR. ROTHBERG:**  Yeah, that's fine, your Honor.

10        **THE COURT:**  Okay, then we'll set the amended motion

11  for expedited consideration motion of the official committee of

12  equity security holders to temporarily allow class proof of

13  claim for voting purposes at Docket Number 1639 for hearing on

14  December the 1st, 2016, at 2:30.  Does that work?

15        **MR. ROTHBERG:**  Yes, your Honor.

16        **THE COURT:**  Mr. Meyer, you okay with that?

17        **MR. MEYER:**  I am, your Honor.

18        **MR. ROTHBERG:**  Do you want to set for them a

19  deadline --

20        **THE COURT:**  I'm going to.

21        **MR. ROTHBERG:**  -- to respond?  Yeah, okay.

22        **THE COURT:**  Yeah, if we're going to set a hearing for

23  the 1st, Mr. Meyer, my thoughts about an answer date would be

24  close of business on the 28th.  That hopefully won't interfere

25  too much with Thanksgiving holiday.

42

1          **MR. MEYER:**  We're happy to do that, your Honor, that

2   works for us.

3          **THE COURT:**  All right, so we'll look for responses by

4   5:00 o'clock Central Time on the 28th; does that work?

5          **MR. ROTHBERG:**  That works, your Honor.

6          **THE COURT:**  All right.  So let's talk about -- and if

7   I'm undoing something that's been negotiated in the agreement

8   that I haven't seen or had a chance to read through, I want

9   somebody to tell me.  Currently have -- here is what I am

10  inclined to do.  I am inclined to -- I will move my Victoria

11  docket on December the 13th, start you at 9:00 o'clock.  You

12  will have the entire day.  And what my suggestion would be is

13  to give you that day for commencing confirmation.  I would set

14  the objection deadline for December the 9th.  And I understand

15  that that forces folks to work over the weekend, but you're

16  kind of asking for this so I think that's going to be -- I

17  think that's an acceptable amount of pain to bear, is to give

18  you those two dates, step down for a couple of minutes and let

19  you work backwards with respect to the other deadlines.  I will

20  tell you again, if we're going to do this, I want it agreed,

21  absent a motion setting forth compelling cause, no depos of the

22  Equity Committee members.  I'm also looking at the deposition

23  schedule and thinking about what Mr. Rothberg and Ms. Brown

24  have said.  I am thinking about limiting the discovery, absent

25  an emergency motion, to a -- what I'm going to call a PJT depo

1    and no more than two Debtor 30(b)(6) depos.  I haven't really

2    heard a good reason why anything more than that is needed.

3    Mr. Rothberg, it certainly gives you the right to come back and

4    say, when you said that, --

5            **MR. ROTHBERG:**  Right.

6            **THE COURT:**  -- you couldn't possibly have been

7    thinking about A, B, and C, and I will certainly take that up

8    on an emergency basis, if that comes up.

9            **MR. ROTHBERG:**  Yeah, no, no, no, that's fine, your

10   Honor.  I think we need to see what they're producing and then

11   if the two isn't enough, we'll come back and ask for another

12   one.

13           **THE COURT:**  Got it.

14           **MR. ROTHBERG:**  Your -- can I ask, is the -- a

15   question in terms of if it's not finished that week, what

16   you're doing with the holiday weeks?  Because --

17           **THE COURT:**  I -- honestly, Mr. Rothberg, I don't

18   know.

19           **MR. ROTHBERG:**  Okay.

20           **THE COURT:**  Because I will tell you CJ Holding starts

21   later in the week so I -- and I don't know where that's going.

22   I -- you know, there are things going on outside the courtroom

23   that I don't yet fully appreciate.  So I've got blocks of time

24   reserved for different things, and as we sit here today, I

25   don't have the foggiest notion if all of them or none of them

1    are going to proceed.  The only thing I can give you today that

2    I know with certainty is I can give you -- if I move the

3    Victoria docket, I can give you all day on the 13th, so that

4    ought to be a good starting point.  And if it's -- if the

5    issues really come down to valuation, I can't imagine that

6    takes a day.  If it's valuation and the management incentive

7    plan, again, I don't know where that's going but, again, I

8    don't think that's too terribly complex.  If it gets beyond

9    that, yeah, then I may be surprised.

10        **MR. ROTHBERG:**  Well, we are going to have ample

11   evidence on causes of action that are not disclosed and that

12   are being released under the plan, so we anticipate having

13   witnesses and exhibits on those issues.

14        **THE COURT:**  No --

15      **(Loud screech from speakerphone; pause)**

16        Finally, I got that back.  All right, sorry about

17   that, folks.  All right -- again, and I'm not trying to limit

18   you, Mr. Rothberg.  I just -- you know, I honestly don't

19   know --

20        **MR. ROTHBERG:**  No, no, I --

21        **THE COURT:**  -- how to answer the question.  I can

22   give you all day that day, we'll go as far as we can, and then

23   we'll reassess when we get to the end of the day.  I mean, if

24   Mr. Meyers (sic) plays super lawyer and he puts on his case in

25   20 minutes and then turns it over to you, then you've got --

1    you know, you've got a fairly long day.  If he takes all day

2    long to present his case in chief, then I understand I'm going

3    to have to start looking for other days.

4             **MR. ROTHBERG:**  Yeah.  I mean, that's -- and that's

5    fine if he wants to take 20 minutes.  I think we will finish it

6    that week.  But -- and just in fairness of disclosure, I'm out

7    the following two weeks after that.

8             **THE COURT:**  Yeah, but you've got an ample substitute.

9             **MR. ROTHBERG:**  I do have a good substitute.

10            **THE COURT:**  Yeah, all right.

11            **MR. ROTHBERG:**  Thank you.

12            **THE COURT:**  Not that Ms. Brown is a substitute.

13   Maybe it's the other way around.  I didn't intend anything by

14   that.

15            **MS. BROWN:**  You redeemed yourself.

16            **THE COURT:**  Thank you.  All right, Mr. Meyer?

17            **MR. MEYER:**  Your Honor, just one point in response to

18   Mr. Rothberg that I wanted to make sure was very clear is that

19   the Equity Holders are not giving any release as part of this

20   plan.  The plan is very, very clear on that front.

21            **THE COURT:**  Yeah.  I -- this, again, I'm -- all I'm

22   doing today is scheduling.  I'm trying to balance.  I am driven

23   in large part by Wells' good citizenship, if you will, but

24   always politely reminding me that I'm taking too long, which

25   she does exquisitely.  I mean, she gets up and she smiles at me

1    and she tells me something funny and she gives me a new legal

2    term that I've never heard of before, and then she politely

3    says and, judge, you're taking too long, it's our money.  I

4    hear that.  So I'm doing the best I can juggling dates.  If I

5    give you -- if I -- having given you those two dates with the

6    conditions that I have given you, do you think that you can

7    agree to a scheduling order or at least narrow the disputes?

8    And then I'm perfectly happy to pick days if you can't.

9            **MR. MEYER:**  I think that we can and appreciate your

10   continued flexibility on all those points, your Honor.

11           **THE COURT:**  Sure. Think we can do that in say maybe

12   the next 15 minutes or so?

13           **MR. MEYER:**  I would hope so.

14           **THE COURT:**  Okay.  Mr. Rothberg?

15           **MR. ROTHBERG:**  Yeah.  Just, your Honor, if it's okay

16   if I can be excused and leave Ms. Brown, my able trial lawyer,

17   to deal with the rest of the issues?

18           **THE COURT:**  All fine, thank you.

19           **MR. ROTHBERG:**  Thank you.

20           **THE COURT:**  All right, anyone else need to make a

21   comment before we take a break?

22       **(No audible response)**

23           All right.  Then, if you would, Ms. Staples will turn

24   off the microphones back into chambers so you can have a

25   conversation in the courtroom.  Folks on the telephone

1    obviously will be able to hear but chambers will not.  If you'd

2    just let Ms. Staples know when you're ready, then I'll be back

3    out, all right?

4              **MR. MEYER:**  Thank you, your Honor.

5              **THE COURT:**  All right, thank you, we'll be adjourned.

6              **THE CLERK:**  All rise.

7         **(Recess taken from 5:26 p.m. to 5:51 p.m.)**

8              **THE COURT:**  All right, thank you, everyone, please be

9    seated.  Mr. Meyer gave up?

10             **MR. MORAN:**  Temporarily I think, your Honor.

11             **THE COURT:**  Just joking, all right.

12             **MR. MORAN:**  For the record, Matt Moran with Vinson

13   and Elkins for the Debtors.  Your Honor, I think we've worked

14   out all the dates and have agreed with the Equity Committee for

15   a schedule that works based on the dates that your Honor gave

16   us, just with two things that I wanted to call to the attention

17   of the Court.

18             **THE COURT:**  Sure.

19             **MR. MORAN:**  On the deposition front we have in

20   addition to the depositions that we discussed earlier,

21   consistent with what we have in the order, to the extent the

22   Equity Committee supplements an expert report we have agreed

23   that we could take their expert's deposition.

24             **THE COURT:**  Of course I never intended to limit that.

25   I just didn't see the -- you know, I just didn't see the need

1  for deposing the Equity Committee members.

2          **MR. MORAN:**  Understood, your Honor.  And then the

3  only other issue to flag for your Honor is that on December 1

4  at 2:30, in addition to hearing Docket Number 1549, we would

5  ask that we also hear Docket 1637 that was filed this

6  afternoon, which is the temporary allowance motion that would

7  relate to Docket 1549.  I think --

8          **MS. BROWN:**  Just for clarity, 1549 was originally set

9  to be heard with confirmation.  That's the motion for the

10  allowance of the claim as a class claim; and then 1637 is the

11  motion for temporary allowance of the claim at a certain

12  amount --

13          **THE COURT:**  Do you want to have them heard together?

14          **MS. BROWN:**  I think they can be heard together.

15          **THE COURT:**  Okay, that's fine by me.

16          **MR. MORAN:**  Okay.

17          **MS. BROWN:**  And with the stipulation that we do

18  understand that the evidence requirements are going to be

19  higher with the class claim motion --

20          **THE COURT:**  Right.

21          **MS. BROWN:**  -- and may take more time and may --

22          **THE COURT:**  That's why I was asking.

23          **MS. BROWN:**  Okay.  And so I'm glad you asked.

24          **THE COURT:**  Okay.

25          **MS. BROWN:**  And that's why -- we did discuss that it

1   may have to -- it may not conclude on December 1st because of

2   that, but the effort is to work on stipulation of facts because

3   the Debtors, at least as to the Equity holders' interest,

4   wouldn't be disagreeing as to those facts.  And I well know the

5   Court's lack of preference for affidavits, so we would have

6   intended to have Equity Committee members and testimony to

7   support that class claim at confirmation.

8           **THE COURT:**  I'll leave it up to you all.  You've got

9   the time.  I do not have time on Friday.  I agreed to mediate a

10  case for one of the big dogs upstairs so my guess is I should

11  show up for that.  So you've got the time on the 1st, and if

12  you --

13          **MR. MORAN:**  Okay, we'll try.

14          **THE COURT:**  -- need additional time, I mean, it's

15  going to be the following week some time.

16          **MR. MEYER:**  That's fine, your Honor.

17          **THE COURT:**  That's fine?  Okay, then we'll set both

18  matters on the 1st.

19          **MR. MORAN:**  Thank you, your Honor.

20          **THE COURT:**  All right.  And how do you intend on --

21  are you going to upload a scheduling order, what are you

22  proposing to do?

23          **MR. MORAN:**  We would intend to revise this order,

24  circulate it to everyone, get their sign-off, and then upload

25  an agreed order tomorrow probably.

1          **THE COURT:**  Fair enough.  As always, if you would let

2   Mr. Alonzo know the moment it's been uploaded, that way I can

3   reach out and grab it.  If you have problems, somebody rethinks

4   this or there's simply a misunderstanding as to what the dates

5   are, I want you to contact Mr. Alonzo tomorrow because I simply

6   want to get this issue resolved so everybody can move forward,

7   all right?

8          **MR. MORAN:**  Absolutely.

9          **THE COURT:**  All right.

10          **MR. MORAN:**  Thank you, your Honor.

11          **THE COURT:**  Thank you.  Anything else we need to

12   address, Mr. Meyer?

13          **MR. MEYER:**  Your Honor, briefly I think just a

14   similar point that I mentioned a couple of the disclosure-

15   related items that I've talked about with Mr. Rothberg and

16   Ms. Brown.  I would envision a similar process on the

17   disclosure statement supplement but we will -- I'll work with

18   Ms. Brown to address the points that I highlighted on the

19   record and we would submit that similarly tomorrow for

20   approval.

21          **THE COURT:**  I am perfectly happy to do that with this

22   one caveat.  Since it was filed today, and I didn't have an

23   opportunity to read it until I took a break, is I don't mind

24   going ahead and approving it by agreement with the

25   understanding that it is -- what I'd like to do is just give it

1    conditional approval and then just take it up at the beginning

2    of confirmation.  If anyone else, you know, gets it today and

3    has a problem with it, wants to raise an issue, I simply -- I

4    think that's appropriate.  Do you have any problem with

5    proceeding that way?

6         **MR. MEYER:**  I think we're going to get there with

7    Ms. Brown on her comments and so I'm fine with that approach,

8    your Honor.

9         **THE COURT:**  Ms. Brown, it actually gives you all the

10   way to confirmation essentially to continue to deal with the

11   issues.  Do you have any issue with doing it as a conditional

12   approval by agreement subject to raising objections at

13   confirmation, if you think they still exist?  Debtors' taking

14   the risk.  I don't see the downside for you.

15        **MS. BROWN:**  No, but the issue with respect to having

16   the two motions heard together on the 1st, --

17        **THE COURT:**  Yes?

18        **MS. BROWN:**  -- it's going to affect all the other

19   deadlines then if we don't conclude on the 1st.  So what I

20   would suggest is that we -- I might need to revisit with the

21   Debtors on that.

22        **THE COURT:**  Fair enough.  I don't know why you'd do

23   them both together.  I just genuinely don't.  I didn't raise it

24   just for the sake of raising it, but --

25        **MS. BROWN:**  Yeah.

1          **THE COURT:** -- if that's what you all want to do,

2     I'll do my best but --

3          **MS. BROWN:** I was trying to be compromising, which

4     isn't normally my trait, --

5          **THE COURT:** True, which you shouldn't get outside

6     your box.

7          **MS. BROWN:** -- however, because of the way the

8     deadlines will work out, I don't think it's going to work with

9     having them set together.

10         **THE COURT:** I'll --

11         **MS. BROWN:** I think we have to (indiscernible)

12         **THE COURT:** I'll leave that up to you all.  If you

13    think you can get it done, then I'm perfectly happy to try.  If

14    you decide that perhaps we ought to just do the estimation

15    motion, leave the other for confirmation or some other time,

16    then I am perfectly happy to do that.  If you would just simply

17    in a joint communication let Mr. Alonzo know that you've

18    changed your mind, we'll make a docket entry if you all change

19    your mind, so that everybody will get notice of the change;

20    does that make sense?

21         **MR. MEYER:** We're happy to do that, your Honor.

22         **THE COURT:** All right.

23         **MS. BROWN:** And that's all I can agree to at this

24    point so --

25         **THE COURT:** Fair enough.  But are you okay with

53

1    simply doing a conditional approval --

2              **MS. BROWN:**  Yes, I have no issue with that.

3              **THE COURT:**  -- by agreement, subject to raising the

4    issue at confirmation?

5              **MS. BROWN:**  Yes, your Honor.

6              **THE COURT:**  All right.  And did Ms. Harper leave, did

7    I lose her?  There you are.  As I understand it, you had your

8    motion to extend the scope of the employment arrangement.  It

9    seemed to me to be pretty straightforward, you just got more

10   than you thought you were getting and now you want to be

11   included in the interim comp order as well.  Did I read that

12   correctly?

13             **MS. HARPER:**  Right.  Our client's role has expanded

14   during these cases.

15             **THE COURT:**  Don't disagree.  It makes sense to me.  I

16   didn't see any objections.  Anyone wish to raise an issue?

17        **(No audible response)**

18             All right, I will sign the order when I step down,

19   all right?

20             **MS. HARPER:**  Thank you, your Honor.

21             **THE COURT:**  Anything else, anybody?

22        **(No audible response)**

23             All right, thank you, everyone, we'll be adjourned.

24        **(This proceeding was adjourned at 5:59 p.m.)**

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____          November 15, 2016_


                    TONI HUDSON, TRANSCRIBER